RECORD NO. 13-1708

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**BEST MEDICAL INTERNATIONAL, INC.,**
a Virginia Corporation;
**BEST VASCULAR, INC.,** a Delaware Corporation,

*Plaintiffs-Appellants,*

v.

**ECKERT & ZIEGLER NUCLITEC GMBH,**
a German corporation, successor to
**QSA Global GmbH,**

*Defendant-Appellee.*

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

James Michael Brady (VSB No. 80002)
Shawn R. Weingast (VSB No. 33259)
BEST MEDICAL
 INTERNATIONAL, INC.
7643 Fullerton Road
Springfield, Virginia 22153
(703) 451-2378 (Telephone)
(703) 451-8421 (Facsimile)
james@teambest.com
sweingast@teambest.com

Counsel for Plaintiffs-Appellants -

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fourth Circuit Local Rule 26.1, Plaintiff-Appellant, Best Medical International, Inc., by its attorneys, states that it has no parent corporation. Best Medical International, Inc. does not issue stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the participation of Best Medical International, Inc.

Best Vascular, Inc. is a qualified subsidiary of Best Medical International, Inc. Best Vascular, Inc. does not issue stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the participation of Best Vascular, Inc.

/s/_____,
JAMES M. BRADY, ESQ.

i

# TABLE OF CONTENTS

I.  JURISDICTIONAL STATEMENT.......................................1

II.  STATEMENT OF ISSUES...........................................3

III.  STATEMENT OF THE CASE........................................3

IV.  STATEMENT OF FACTS...........................................4

V.  SUMMARY OF THE ARGUMENT.......................................5

VI.  ARGUMENT......................................................7

    A.  STANDARD OF REVIEW.......................................7

    B.  DID THE DISTRICT COURT PROPERLY EVALUATE THE
        NUMBER OF HOURS REASONABLY EXPENDED BY EZN'S
        COUNSEL?.................................................8

        i.  Excessive Time was Spent Performing Legal Tasks.........10

        ii.  EZN's Counsel Performed Unnecessary Work...............15

        iii.  The District Court Did Not Reduce the Fee Award to
            Account for Duplicative Effort by EZN's Counsel...........16

    C.  DID THE DISTRICT COURT PROPERLY FIND THAT THE
        TIME AND LABOR EXPENDED JUSTIFIED 100% OF THE
        REQUESTED FEES AND COSTS?...............................18

        i.  Does EZN's Change of Counsel Weigh in Favor of the Fee
            Award?..................................................19

        ii.  Why Does Opposing Best's TRO Before Being Formally
            Served with Process Justify the Fee Award?.....................20

        iii.  Was Discovery in This Case Overly Time Consuming?......22

      iv.    **Did EZN's Attorneys Spend a Reasonable Number of Hours Preparing for Trial?**................................................................23

      v.    **Does Best's Compliance with the ECF Rules Justify EZN's Fee Award?**...............................................................................25

      vi.    **Why Did EZN's Attorneys Have to be Especially Adept to Collect Their Judgment in This Case?**...................................28

      vii.    **Does Multi-Tasking Justify a Fee Award?**...........................29

  **D.**    **DID THE DISTRICT COURT PROPERLY EVALUATE THE ATTORNEYS' OPPORTUNITY COSTS IN PRESSING THE INSTANT LITIGATION?**................................................................30

  **E.**    **DID THE AMOUNT IN CONTROVERSY AND RESULTS OBTAINED BY EZN JUSTIFY THEIR FEE AWARD?**.............33

  **F.**    **DO ATTORNEYS' FEES AWARDED IN OTHER BREACH OF CONTRACT CASES THAT DID NOT SURVIVE SUMMARY JUDGMENT JUSTIFY THE FEE AWARD IN THIS CASE?**...39

  **G.**    **IS EZN ENTITLED TO ATTORNEYS' FEES FOR UNSUCCESSFUL BUT RELATED CLAIMS WHERE THE FEES CAN BE IDENTIFIED AND EXCLUDED?**........................42

  **H.**    **WHAT CONSTITUTES INADEQUATE DOCUMENTATION IN THE FOURTH CIRCUIT?**.......................................................48

  **I.**    **IS ATTORNEY TRAVEL TIME COMPENSABLE AT THE FULL HOURLY RATE?**....................................................................51

  **J.**    **IS EZN ENTITLED TO ATTORNEYS' FEES FOR CLERICAL TASKS?**........................................................................................55

**CONCLUSION**..................................................................................................64

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)**..........66

**CERTIFICATE OF SERVICE**.....................................................................67

# I.    JURISDICTIONAL STATEMENT

The United States District for the Eastern District of Virginia possessed subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1291 which grants the district courts of the United States jurisdiction over any civil action where there is complete diversity of citizenship and the amount in controversy is at least $75,000.00. *28 U.S.C. § 1291 (2011)*. In this case, there is complete diversity of citizenship because Best Medical International, Inc. ("BMI") is a Virginia corporation and Best Vascular, Inc. ("BVI"; collectively BMI and BVI are referred to as "Best") is a Delaware corporation. APP39 (Amd. Comp. ¶¶ 1, 2) Eckert & Ziegler Nuclitec, GmbH (hereafter "EZN") is a German corporation with its principal place of business in Braunschweig, Germany. *Id* at ¶ 3.

Following the Honorable Claude Hilton's grant of both Bests' Motion for Summary Judgment as to EZN's counterclaims and EZN's Motion for Summary Judgment as to Best's claims on September 7, 2011, both parties appealed. APP240 (Mem. Op.); APP257; APP258; APP463.  Subsequently, on January 6, 2012, the District Court granted EZN's motion for attorneys' fees and costs, and awarded EZN $584,735.08 for attorneys' fees and $32,892.61 in costs.  APP586. Best appealed the District Court's decision. APP675. This appeal was consolidated with Best's appeal from the grant of summary judgment in favor of EZN and EZN's cross-appeal related to the grant of summary judgment in favor of Best on

EZN's counterclaims.  APP678.  After hearing oral arguments and reviewing the parties' briefs, on January 22, 2013, this Court issued a Memorandum Opinion affirming the District Court's grant of summary judgment in favor of both Best and EZN and further holding that EZN was the prevailing party. APP899.  However, this Court vacated the award of attorneys' fees stating that the fees awarded "might be unreasonably excessive in the absence of an analysis of the applicable factors identified in Johnson v. City of Aiken, 278 F.3d 333 (4th Cir. 2002)."  APP898-899.  Upon remand, the District Court was instructed to "reevaluate EZN's claim in light of the Johnson factors."   APP899. Instead, the District Court simply awarded EZN 100% of their requested fees and provided additional justifications for the award but apparently conducted no evaluation regarding the reasonableness of either the initial fee request or the fees and costs awarded on EZN's supplemental petition for fees. APP1112-1128, 1129, 1130. Best timely appealed this Order on May 24, 2013 and this Court now has proper jurisdiction of this appeal pursuant to 28 U.S.C. § 1291, as the decision in this matter constituted a final decision of the District Court.  APP1131.

2

## II.    STATEMENT OF ISSUES

1.    Did the District Court Properly Evaluate the Number of Hours Reasonably Expended by EZN's Counsel?

2.    Did The District Court Properly Find That the Time and Labor Expended Justified 100% of the Requested Fees and Costs?

3.    Did the District Court Properly Evaluate the Attorneys' Opportunity Costs in Pressing the Instant Litigation?

4.    Did the Amount in Controversy and Results Obtained by EZN Justify Their Fee Award?

5.    Do Attorneys' Fees Awarded in Other Breach of Contract Cases Justify the Fee Award in this Case?

6.    Is EZN Entitled to Attorneys' Fees For Unsuccessful Claims Where the Fees Can Be Identified and Excluded?

7.    What Constitutes Inadequate Documentation in The Fourth Circuit?

8.    Is Attorney Travel Time Compensable at the Full Hourly Rate?

9.    Is EZN Entitled to Attorneys' Fees for Clerical Tasks?

## III.    STATEMENT OF THE CASE

Following the grant of summary judgment to both Best and EZN, Best appealed and EZN cross-appealed. APP257, 258, 463. These appeals were assigned case numbers 11-2089 and 11-2141. Thereafter, the District Court entered an Order on January 6, 2012 granting EZN's motion for attorneys' fees and costs and denying Best's petition for attorneys' fees and costs.   APP586-589. Best timely appealed that ruling which was assigned case number 11-1121.  APP675.

3

All three appeals were consolidated under 11-2089. APP678. This Court subsequently vacated the award of attorneys' fees to EZN and instructed the District Court to reevaluate the award of fees to EZN in light of the *Johnson* factors. APP898-899. Following remand, the District Court issued a subsequent opinion on April 29, 2013 awarding EZN 100% of their requested attorneys' fees for both the initial litigation and the first appeal. APP1112-1128. The District Court set forth several justifications for the award that essentially adopt nearly verbatim EZN's arguments. The Order granting EZN's initial and supplemental fee petitions was vacated by the District Court and a new Order was entered on May 3, 2013 reducing the fee award to correct an error in the calculation of the final attorneys' fees figures. APP1130. In total, the District Court awarded EZN $871,414.49 in attorneys' fees and $55,249.76 in costs. APP1130.

## IV.    STATEMENT OF FACTS

Best filed suit against EZN on July 21, 2010 alleging breach of the parties' Settlement Agreement ("SA"). APP55-66. The SA resolved a prior lawsuit against Best by EZN's predecessor. *Id.* Best's lawsuit invoked the doctrine of equitable estoppel to prevent the destruction of Best's valuable production line which was housed in EZN's facility in Germany. APP47-48 (Amd. Comp. ¶¶ 1-31, 32-39). EZN answered and filed a counterclaim against Best for breach of contract, fraud, and declaratory relief. APP201 (Answer); APP214 (Counterclaim). Following the

4

completion of discovery, the District Court granted both parties' Motions for Summary Judgment and entered an Order dated September 7, 2011. APP257. Thereafter, on January 6, 2012, the District Court entered judgment in favor of EZN for attorneys' fees in the amount of $584,735.08 and $32,892.61 in costs and subsequently awarded EZN $10,499.90 in their Bill of Costs. APP586-589, 703, 890. After granting EZN's supplemental fee petition, on May 3, 2013, the District Court increased the fee award to $871,414.49 for attorneys' fees and $55,249.76 in costs. APP1130.

Best timely appealed the initial award of attorneys' fees to EZN and was partially successful in that this Court vacated the award of attorneys' fees concluding that the fees awarded "might be unreasonably excessive in the absence of an analysis based on the applicable factors identified in Johnson v. City of Aiken, 278 F.3d 333 (4th Cir. 2002)." APP898-899. Best has filed this second appeal to determine whether EZN's attorneys' fees in this matter are reasonable for this case and whether EZN is entitled to the full amount of the fees and costs awarded given their very limited success in the underlying litigation.

## V.   SUMMARY OF THE ARGUMENT

The District Court awarded EZN 100% of their requested attorneys' fees, costs and expenses despite the fact that EZN achieved very little success and was awarded none of their requested damages. APP890, APP1112 (Mem. Op.). The

5

District Court also awarded EZN attorneys' fees and costs for claims on which there were not successful. APP.1112. While EZN's attorneys voluntarily eliminated the hours for their unsuccessful fraud claim, they did not eliminate the hours they spent working on their unsuccessful letter of credit claim or the time they spent on their failed request for declaratory relief regarding the SA's arbitration provisions although the time can be easily identified and eliminated. The District Court essentially adopted in their entirety, and nearly verbatim, EZN's arguments in support of their fees and costs without performing any independent evaluation. The District Court's justification for the attorneys' fee award and costs is not supported by precedent and was therefore an abuse of discretion.

Nor did EZN's attorneys exercise good billing judgment. EZN's attorneys billed at their full hourly rate for travel time and frequently commingled their travel time with the hearing or deposition attended so that it is impossible to accurately ascertain their travel time. EZN's attorneys' lack of billing judgment is also apparent in the unreasonably excessive amount of time they spent performing legal tasks and in the duplication of effort between the attorneys. Additionally, the District Court failed to recognize that EZN improperly included clerical tasks in their request for attorneys' fees.

Pollard's bills are inadequate to support any award of attorneys' fees due her block billing of tasks with no indication of the amount of time spent on each task.

6

Additionally, there are many inconsistencies between Pollard's time sheets and those submitted by MRC that call into question the reliability of Pollard's time sheets. Finally, many of Pollard's time entries are descriptively vague such that it is impossible to determine whether the task was either necessary or reasonable.

## VI.    ARGUMENT

### A.    STANDARD OF REVIEW

The Fourth Circuit reviews a district court's decision to award attorneys' fees for abuse of discretion. *Johnson v. City of Aiken,* 278 F.3d 333, 336 (4th Cir. 2002)(additional citations omitted).  The Court's discretion is "not unlimited" and "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination." *Reaching Hearts Int'l, Inc. v. Prince George's County,* No. 11-1399, 478 Fed. Appx. 54, 58 (4th Cir. Apr. 25, 2012) *citing Perdue v. Kenny A.,* 130 S. Ct. 1662, 1676 (2010). "In reviewing such discretionary rulings, we have adhered to the proposition that discretion has been abused if a court has failed adequately to consider judicially recognized factors constraining its exercise of discretion, or in relying on erroneous factual or legal premises." *Doe v. Chao,* 435 F.3d 492 (4th Cir. Va. 2006) *quoting Mid Atl. Med. Servs., LLC v. Sereboff,* 407 F.3d 212, 221 (4th Cir. 2005) (internal quotation marks omitted).   A district court's award of attorney's fees will be reversed only "if under all the facts and circumstances [the award] is clearly wrong." *Hetzel v.*

*County of Prince William,* 89 F.3d 169, 173 (4th Cir. 1996). A "court by definition abuses its discretion when it makes an error of law." *Brodziak v. Runyon,* 145 F.3d 194 (4th Cir. 1998) *quoting Koon v. United States,* 518 U.S. 81 (1996); see *Daly v. Hill,* 790 F.2d 1071, 1085 (4th Cir. 1986). A district court abuses it discretion if its conclusion "is guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." *Citicorp U.S.A., Inc. v. Edwards,* No. 03-2172, 118 Fed. Appx. 698, 699, n.1 (4th Cir. Md. 2004) *citing Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir. 1999).

## B.  DID THE DISTRICT COURT PROPERLY EVALUATE THE NUMBER OF HOURS REASONABLY EXPENDED BY EZN'S COUNSEL?

Calculating the number of hours reasonably expended is the most difficult part of the fees computation.  *Espinoza v. Hillwood Square Mut. Ass'n.,* 532 F. Supp. 440, 446 (E.D. Va. 1982). In determining the amount of fees to award, the Court is precluded from simply accepting as reasonable the number of hours reported by counsel. *Rehab. Ass'n. v. Metcalf,* 8 F. Supp.2d 520 (E.D. Va. 1998) *citing Espinoza,* 532 F. Supp. at 446 (citation omitted). However, that appears to be just what the District Court did in this case.  Once the Court arrives at the lodestar figure, the Court must then adjust the lodestar on the basis of the 12 *Johnson* factors. *Espinoza,* 532 F. Supp. at 449. The *Johnson* factors are not a justification for the lodestar figure but should be used by the district court to adjust

8

the lodestar and eliminate fees that are excessive, duplicative, or unnecessary. *See, e.g., Signature Flight Support Corp. v. Landow Aviation L.P.,* 730 F. Supp.2d 513, 527 (E.D. Va. 2010), *aff'd* 2011 U.S. App. LEXIS 16470 (4th Cir. Va. Aug. 9, 2011); *Espinoza,* 532 F. Supp. 440 (E.D. Va. 1982).

In *Western Insulation,* this Court held that even if awarding fees is mandated by a contractual provision, as it is in this case, the amount awarded must still be reasonable. *Western Insulation, LP v. Moore,* 08-2106, 362 Fed. Appx. 375, 380 (4th Cir. Va. 2010) *citing Mullins v. Richlands Nat'l Bank,* 403 S.E.2d 334, 335 (Va. 1991). To determine the reasonableness of an award, the Fourth Circuit requires the district court to make "detailed findings of fact with regard to the factors considered." *Western Insulation,* 362 Fed. Appx. at 380 *citing Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978). These factors must include "the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Western Insulation,* 362 Fed. Appx. at 380 *citing Mullins,* 403 S.E.2d at 335 (*citing Beale v. King,* 132 S.E.2d 476, 478 (Va. 1963)). From its consideration of those factors, the court should determine how many hours were reasonably required for the litigation and then calculate the lodestar amount using a reasonable hourly rate. *Western Insulation,* 362 Fed. Appx. at 380 *citing McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640 (4th Cir. 1998). The lodestar rate may then be adjusted for the particular factors and difficulties of the case at

9

hand. *Western Insulation,* 362 Fed. Appx. at 380.

>    i.    **Excessive Time was Spent Performing Legal Tasks.**

In this case, the District Court apparently did not review the hours expended to determine if the time spent on the litigation was necessary, duplicative, or excessive because even a cursory review of the time billed by EZN's counsel reveals excessive amounts of time were spent performing ordinary legal tasks as shown below:

| BEST'S MOTION FOR TRO | BILLER | HOURS BILLED | TOTAL CHARGED* |
|---|---|---|---|
| Teleconferences, emails, and meetings with co-counsel, client and others. | CDL[1] | 4.0 | $1,060.00 |
| | CP | 2.2 | $495.00 |
| | JPR | 3.5 | $682.50 |
| | VMD | 2.9 | $362.50 |
| **Subtotal** | | 12.6 | $2,600.00 |
| Review TRO and Complaint. | CDL | .5 | $132.50 |
| | CP | 5.0[2] | $1,125.00 |
| **Subtotal** | | 5.5 | $1,257.50 |
| Analyze/Research issues re TRO. | | | |
| | CDL | 3.1 | $821.50 |
| | CP | 3.5 | $787.50 |
| | JPR | 2.4 | $468.00 |
| | MH | 2.3 | $402.50 |

[1] Best has used the same initials used in Moran Reeves & Conn's ("MRC") bills. C. Dewayne Lonas = CDL; MH= Matthew Hundley; JPR = J.P. Roemmich; VMD = V. Douglas; SP=S. Proffitt; CFO=C.F. Onder. Christine Pollard is identified as "CP." Susan Salen, Best's counsel, is identified as "Salen."

[2] Pollard's time entry for this date states: "Review complaint and motion for TRO. Discuss proposed response with client and co-counsel." There is no indication how much time was spent on each of these tasks so the entire time has been included here.

| | | VMD | .2 | $79.50 |
|---|---|---|---|---|
| **Subtotal** | | | 11.5 | $2,559.00 |
| Prepare opposition to TRO | | CDL | 55.9 | $12,879.00 |
| | | CP | 23.0 | $5,175.00 |
| | | JPR | 13.3 | $2,593.50 |
| | | VMD | 1.1 | $137.50 |
| **Subtotal** | | | 83.2 | $20,785.00 |
| Review Reply & evidence provided in connection w/TRO | | CP | 3.0 | $675.00 |
| Prepare for hearing | | CDL | 9.0[3] | $2,385.00 |
| | | JPR | 7.6[4] | $1,482.00 |
| **Subtotal** | | | 19.6 | $4,542.00 |
| **TOTAL** | | | **132.4** | **$31,743.50** |

See SVAPP4-8; SVAPP229[5]. Nor was the excessive time spent responding to Best's request for a TRO an isolated incident. As shown below, EZN's counsel spent excessive amounts of time performing ordinary legal tasks:

- Preparing EZN's Answer and Counterclaims: 123.1 hours ($28,972.00 in fees). SVAPP8-31; SVAPP230-235.

---

[3] Lonas' time entry states: "Argue motion for temporary restraining order; travel to and from Alexandria, Virginia and prepare en route." Since it normally takes two hours to travel from Richmond to Alexandria, Best can only speculate that two of the 6.4 hours billed were spent on preparation enroute so only two hours have been included here.

[4] This time does not include attending hearing as EZN stated they have eliminated charges for associates accompanying Lonas to hearings.

[5] "SVAPP" refers to the sealed volume appendix.

11

- Discussing whether to waiver service under the Hague Convention – 11.6[6] hours ($2,653.00). SVAPP13-21. It is difficult to understand why a basic issue such as whether to waive service of process would require over three hours of discussion and over four hours of analysis given that FRCP 4(d)(1) clearly provides that a party subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. *FED. R. CIV. P. 4(d)(1)*. While such analysis may be necessary for an inexperienced litigator, the District Court deemed these hours reasonable although both Lonas and Pollard's affidavits stated they had extensive experience litigating complex commercial matters. Lonas stated he was a board member of the Richmond Chapter of the Federal Bar Association and claimed to have litigated cases in nearly every division of the Eastern District of Virginia. Yet EZN's attorneys spent the equivalent of more than an entire day discussing, researching, and analyzing waiver of service issues.

MRC spent inordinate amounts of time performing other routine legal tasks as shown below:

-Motion to amend scheduling order – 7.3 hours ($1,521.50); SVAPP16-21.

---

[6] Pollard's time entry for 7-16-10 states "Review pretrial conference order and accompanying orders, and forward to client; contact A. Howard regarding file, review memo regarding waiver of service requirements and discuss with co-counsel, review court docket regarding service of process issues." The entire 2.0 hour block has been included here.

12

-Joint Motion to Extend Discovery Deadlines – 2.8 hours ($522.00). SVAPP45-55;

-Preparing Initial Disclosures – 6.1 hours ($1,448.50). SVAPP32-36;

- Rule 16(b) conference - discussions, review, revise, prepare for and attend: 9.4 hours ($2,427.00). SVAPP16-34.

-Opposition to Best's Motion to Extend Discovery Deadlines – 4.6 hours ($1,093.00). SVAPP33-34.

-Discussing, drafting, reviewing, and responding to written discovery (not including drafting expert discovery, meet and confer letters, privilege issues, preparation of documents for production by legal assistants and preparation of indexes) – at least 175.1 hours ($33,703.50). SVAPP33-81.

-Responding to Best's Motion to Dismiss EZN's counterclaims – 54.6 hours ($13,726.00). SVAPP37-42.

Perhaps the best example of excessive time spent performing ordinary legal tasks is the time spent preparing the fee petition in this case. EZN's counsel spent 298.2 hours and billed $78,008.50 in fees for discussing, researching, drafting, and revising EZN's initial fee petition and supporting affidavits. SVAPP107-138; SVAPP250-255. Courts in the Eastern District of Virginia, Alexandria Division, have reduced fees by as much as 50% when the time spent preparing the fee petition was unreasonable. In *Capital Hospice v. Global One Lending, LLC,* No.

08cv221, 2009 U.S. Dist. LEXIS 56673 at *12 (E.D. Va. July 1, 2009), Judge Liam O'Grady held that 12.7 hours of an attorney's time preparing a fee petition was excessive and reduced the hours by 50% to 6.35 hours. In *Ebersole v. Kline-Perry,* No. 1:12cv26, 2012 U.S. Dist. LEXIS 138659 at *27 (E.D. Va. Sept. 26, 2012), Judge Cacheris found that a total of 51.1 hours was excessive given counsel's familiarity with the case and also found a 50% reduction of those hours to be appropriate. In *Bland v. Fairfax County,* 1:10cv1030, 2011 U.S. Dist. LEXIS 128522 at *25 (E.D. Va. Nov. 7, 2011) Judge Cacheris found that 23.6 hours spent in preparing the fee petition and attending oral argument for attorneys' fees was excessive based on the attorneys' familiarity with the case and found a 50% reduction appropriate.

Nor is the Alexandria Division alone in reducing attorneys' fees for excessive time spent on preparing fee petitions. In *Randle v. H&P Capital, Inc.,* No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994 at *31-32, (E.D. Va. July 21, 2010), the Court found 55.5 hours was excessive and imposed a 10% reduction. In *Am. Canoe Ass'n. v. EPA,* 138 F. Supp.2d 722, 746 (E.D. Va. 2001), the Court reduced the fee award by 45% where the fee applicant expended 177.8 hours in preparing the fee petition. The Court noted that a fee award for fee preparation work must be reasonable in the circumstances. *EPA,* 138 F. Supp.2d at 746 *citing Commissioner v. Jean,* 496 U.S. 154, 163 n.10 (1990). In this case, EZN's attorneys, who were

14

intimately familiar with the case, expended nearly 300 hours discussing, researching, and preparing the fee petition and bill of costs, and gathering and organizing the supporting materials.    See SVAPP107-138; SVAPP250-255. Precedent in this District strongly supports Best's argument that the District abused its discretion in finding that nearly 300 hours for preparing a fee petition and bill of costs was reasonable.

### ii.    EZN's Counsel Performed Unnecessary Work.

The District Court also awarded EZN attorney's fees for a motion to dismiss that was never filed by EZN.  MRC billed 8.4 hours and $1,576.00for analyzing, discussing, and drafting a memo regarding the motion to dismiss. [7] SVAPP8-21. The District Court appears to have simply adopted EZN's argument that reviewing the prior case files was necessary but gave no reason why it was necessary particularly since (1) the lawsuit that resulted in the award of attorneys' fees in this case is based on events that occurred *after* the QSA lawsuit was settled; and (2) the QSA lawsuit was based on the Source Manufacturing Agreement whereas the instant lawsuit was based on the SA. EZN's attorneys spent an enormous amount of time acquiring, reviewing, and discussing those irrelevant files as shown in the summary below:

---

[7] This total does not contain any billings by Pollard as it is impossible to ascertain the amount of time she spent performing any tasks related to this motion.

| PRIOR QSA v. BEST LAWSUIT | ATTORNEY/ PARALEGAL | HOURS BILLED | TOTAL CHARGED |
|---|---|---|---|
| Review of documents and analysis of lawsuit | CDL | 12.6[8] | $3,339.00 |
| | VMD | 1.5 | $187.50 |
| | MH | 7.4 | $1,443.00 |
| | CP | 34.7 | $7,807.50 |
| **Subtotal** | | **56.2** | **$12,777.00** |
| Communicating re the prior lawsuit | CDL | 2.3 | $609.50 |
| **TOTAL** | | **58.5** | **$13,386.50** |

See SVAPP21-57, 195, 233-245. While it may have been necessary for one attorney to spend some time reviewing some of the prior case files, there can be no justification for three attorneys spending over 54 hours reviewing a prior case file that concerned events that occurred prior to the parties entering into the SA that formed the basis of this lawsuit. Not only was this work unnecessary but also shows that multiple attorneys were performing the same work.

### iii. The District Court Did Not Reduce the Fee Award to Account for Duplication by EZN's Counsel.

EZN's counsel billed numerous hours for reviewing each other's work, communicating with each other, whether by email, telephone or in person, and performing the same tasks. The chart below illustrates the duplication between attorneys but is not an exhaustive list of their duplicative efforts:

---

[8] This figure does not include the time Lonas spent reviewing depositions from the prior lawsuit in preparation for depositions in this case.

16

| DATE | DESCRIPTION | TIME/ CHARGE |
|---|---|---|
| 6/3/2010 | Teleconference with CP and others re: facts of case, responses to pleadings and strategy | CDL: 1.2/$318.00 JPR: 1.5/$292.50 CP: 5.0 Block billed |
| 6/7/2010 | Call between CDL and CP re: opposition to motion for temporary restraining order and supporting affidavits | CDL: .9/$238.50 JPR: .9/$175.50 CP: block billed 23 hours over three days. |
| 6/11/2010 | Teleconference re hearing on TRO | CDL: .3/ $79.50 CP – 1.0[9] - $225.00 |
| 6/14/2010 | Teleconference re next steps, assertion of counterclaims and settlement overtures to Best | CDL - .5/ $132.50 CP – None provided. |
| 6/16/2010 | Teleconference about entry of court order, potential 12(b)(6) motion, letter of credit issues and notices of 30(b)(6) deposition | CDL - .6/$159.00; CP – none provided |
| 6/24/2010, 6/25/2010 | CDL review and comment on letter drafted by CP | CDL - .4/ $106.00 CP - 3.5 /$787.50 |
| 7/30/2010 | MH drafted motion to amend scheduling order; CDL reviewed and revised; CP reviewed. | MH – 3.1/$604.50 CDL - .7/$185.50 CP – 2.0 - $450.00 |
| 10/19/10 | Teleconference re Best's discovery responses | CDL - 2.0/ $530.00 CP: None provided. |
| 10/25/10 to 10/28/10 | MH drafted objections to Best's interrogatories and request for production; CDL reviewed and revised the objections; MH made the revisions; CDL and MH both "finalized" the objections; CP reviewed the objections. | MH – 4.1/$799.50 CDL – 3.5/$927.50 CP – unknown due to block billing. |
| 12/14/10 | Teleconference re upcoming deadlines and case strategy | CDL - 1.1/ $291.50; MH – 1.2/$234.00 CP –entry for this date does not specify time for this call. |

See SVAPP4-10, 17, 34-37, 52, 229, 231, 234, 239.

_____

[9]This is just one of numerous discrepancies between MRC's bills and Pollard's bills.

EZN's attorneys routinely drafted a document, sent it around for comment, review and revisions, made the revisions, and then repeated the process – often more than once. After one or more rounds of revisions, the document was "finalized," which usually took as long as or longer than the initial set of revisions. For instance, when Lonas "finalized" EZN's response to the TRO on June 9, 2010, it took him eleven (11) hours to do so. SVAPP7. When EZN filed their Answer and Counterclaim in October 2010, Lonas again had to "finalize" the documents which took 3.5 hours to accomplish. SVAPP31.  When EZN submitted their fee petition, Lonas required 9.7 hours on September 27, 2011 to "finalize initial draft of fee petition."  SVAPP128. This system is inefficient and unnecessary.  While review by a partner may be prudent, a partner should not have to review everything at least twice, and frequently three or more times, before it goes out.  This system benefits MRC because it maximizes their billable hours but is inefficient and does not add value to the client or result in any litigation benefit other than to firm's coffers.

## C.     DID THE DISTRICT COURT PROPERLY FIND THAT THE TIME AND LABOR EXPENDED JUSTIFIED 100% OF THE REQUESTED FEES AND COSTS?

The District Court found the first *Johnson* factor, the time and labor expended, justified the fee award because (1) the MRC attorneys were not involved in the prior lawsuit and "had to become familiar with the facts and discovery in the

previous litigation as well as the difficult subject matter"; (2) EZN was required to defend against Best's motion for temporary restraining order before they were served with the complaint and was successful in defending against both the TRO and Best's motion to dismiss the counterclaims; (3) discovery was time consuming since most of the witnesses were outside this District; (4) EZN's attorneys' spent a reasonable number of hours preparing for trial; (5) after the initial award of attorneys' fees, Best filed over a dozen motions which EZN was required to defend; (6) EZN spent much time, money and effort attempting to collect the judgment; and (7) EZN had to defend against two appeals, prosecute its cross appeal, and litigate over its right to collect judgment at the same time. The District Court concluded that since EZN has spent over two years litigating this case and defending against various motions and provided sufficient documentation of the hours worked, they were entitled to 100% of their requested fees and costs.

### i. Does EZN's Change of Counsel Weigh in Favor of the Fee Award?

It is unclear why the District Court found that the time and labor expended was reasonable because EZN's attorneys were not involved with the first lawsuit and had to become familiar with the case. This would be true of any attorney hired by a new client and should present no particular hardship. If changing counsel from a prior litigation justifies a fee award, many clients will likely make such a change simply to increase their ability to recover fees. Nor is it clear why a history

19

of previous litigation between the parties supports a fee award, much less an excessive fee award, particularly since the previous litigation had no bearing on this case which was based on events that occurred *after* the prior case was settled. Even if this factor does somehow justify the number of hours MRC attorneys spent reviewing the prior case, it does not explain why Pollard, who was EZN's attorney during the prior litigation, needed to spend over 34 hours reviewing the prior case files. The District Court further did not clarify what the "difficult subject matter" was that justified EZN's attorneys spending over 58 hours reviewing files from a prior lawsuit that had no connection to this case.  The District Court recognized that this case was a fairly commonplace breach of contract action that involved no novel or difficult issues. APP1119.  Moreover, Pollards' time records show that MRC was retained in April 2010 so they had more than a month prior to the filing of the lawsuit to familiarize themselves with the parties' litigation history.  SV227. Nevertheless, the District Court appears to have simply adopted EZN's counsel's arguments that they had to get familiar with the prior case without evaluating whether or to what extent it was actually necessary to do so. See EZN'S Memo in Support - APP280-282.

### ii.    Why Does Opposing Best's TRO Before Being Formally Served with Process Justify the Fee Award?

The District Court found the time and labor expended reasonable because EZN had to defend against the TRO before being served with process.  However,

the time records submitted by both MRC and Pollard show that they were provided with a copy of the complaint and the motion on June 3, 2010, the same day those documents were filed. While EZN had not yet been formally served with process, it is unclear why failure to be formally served supports EZN's fee request when it is undisputed that EZN's counsel had a copy of the Complaint at least one week prior to the hearing on the TRO, which was scheduled for June 11, 2010. If this timeframe presented a hardship for EZN's counsel, they could have requested that the Court or Best's counsel provide them with more time to respond or they could have asked the Court to delay the hearing until service of process was completed but they did neither. The District Court's opinion acknowledged there was no evidence of specific time constraints with respect to time limitations imposed by EZN or the circumstances. APP1121 (Mem. Op). Nor is it extraordinary for an attorney to have to defend against a request for injunctive relief prior to formal service of process, particularly where the party being served is located outside the United States and service has to be completed pursuant to the Hague Convention, which is a lengthy process. Moreover, MRC had been representing EZN for over a month when the Complaint and motion for TRO were filed and should have been familiar with the facts of the case.

The District Court also found that EZN's success in defending against the TRO and Best's motion to dismiss EZN's counterclaims justified the fee award.

21

While prevailing on a <u>claim</u> can be the basis for a fee award, Best has been unable to find any precedent in this Circuit holding that successfully defending against a TRO and motion to dismiss justifies the time and labor expended over the course of the entire litigation or that success on some motions justifies a full fee award where the prevailing party recovers none of the damages sought. Moreover, precedent establishes beyond dispute that the fee award is to be based on successful claims, not successful motions practice. *See, e.g., Signature Flight Support,* 730 F. Supp.2d at 528.

### iii. Was Discovery in This Case Overly Time Consuming?

While some of Best's corporate representatives were located in this District, most of the fact witnesses and EZN's corporate representatives were located outside the District, which is not surprising given the basis of jurisdiction in this case is diversity of citizenship. The District Court stated that "discovery was time consuming" in this matter but did not clarify what discovery was "time consuming." The initial Rule 16(b) Scheduling Order issued on October 26, 2010 provided that discovery would be concluded by January 14, 2011, a mere 2.5 months from the date of the Scheduling Order. APP231. The parties subsequently filed a Joint Motion requesting an extension of the expert disclosure deadlines, which was granted by the Court on December 6, 2010. APP234, 237. The parties filed a joint motion to extend the discovery deadlines which was granted and

22

extended discovery from January 14, 2011 to February 14, 2011. APP238. Given the relatively short period of time in which discovery was conducted, it is unclear why the District Court concluded that discovery was time consuming in this matter or how that justifies both MRC's and Pollard's excessive, duplicative, and unnecessary time spent on the litigation.

Written discovery in this case was not overly burdensome. Best, the party with the burden of proof, served EZN with a total of 47 interrogatories, 77 requests for production, and 98 requests for admissions. EZN served 32 interrogatories, 61 requests for production, and 48 requests for admissions. Neither were depositions particularly burdensome given that only nine individuals, including corporate representatives and experts, were deposed in this matter. This is not an unusual amount of discovery for a case involving competing claims. The District Court has simply accepted EZN's statement that discovery was time consuming without really evaluating that statement and uses it to justify or explain the Court's award of excessive fees in this matter.

### iv. Did EZN's Attorneys Spend a Reasonable Number of Hours Preparing for Trial?

The District Court also adopted EZN's argument that since the summary judgment hearing was held close to the April 25, 2011 trial date, EZN's attorneys spent a reasonable number of hours preparing for a multi-day trial. APP1117; APP333 - n. 4. The hearing on both parties' motions for summary judgment was

23

held on April 11, 2011, two full weeks prior to trial. According to the Rule 16(b) Scheduling Order entered in this case, the parties were required to submit proposed jury instructions and voir dire five (5) days prior to trial, which would have given EZN's counsel a full week after the hearing on the motions for summary judgment to draft their jury instructions. Rather than exercising billing judgment and waiting to perform this work until after the summary judgment hearing, EZN's attorneys began drafting proposed jury instructions nearly two weeks prior to the summary judgment hearing. EZN's attorneys spent nearly ten hours preparing the jury instructions and nearly twenty (20) hours preparing motions in limine prior to the summary judgment hearing. At the same time, EZN's attorneys began to "brainstorm evidentiary motions in limine" (SVAPP99) to file before trial and draft those motions as shown below:

**JURY INSTRUCTIONS (SVAPP98-105):**

| 3/31/2011 | Coordinate preparation of jury instructions, witness notebooks, impeachment materials for trial | CDL | .4 | $106.00 |
|---|---|---|---|---|
| 4/1/2011 | | | 1.7 | $450.50 |
| 4/7/2011 | | | .3 | $79.50 |
| 3/31/2011 | Draft proposed jury instructions | MH | 2.4 | $468.00 |
| 4/1/2011 | | | 2.7 | $526.50 |
| 4/7/2011 | | | 2.1 | $409.50 |
| | **TOTAL** | | **9.6** | **$2,040.00** |

**MOTIONS IN LIMINE (SVAPP99-105):**

| 3/31/2011 | Brainstorm evidentiary motions in limine to file before trial | CDL | .3 | $79.50 |
|---|---|---|---|---|
| 4/1/2011 | Outline motions in limine and other pretrial motions | CDL | 1.3 | $344.50 |
| 4/4/2011 | Coordinate drafting motion in limine | CDL | .4 | $106.00 |

24

| 4/4/2011 | Draft motion in limine to exclude evidence of EZN as a vendor of decontamination and decommissioning (D&D) services | MH | 10.5 | $2,047.50 |
|---|---|---|---|---|
| 4/5/2011 | | | 1.3 | $253.50 |
| 4/6/2011 | | | 1.2 | $234.00 |
| 4/7/2011 | | | 4.1 | $799.50 |
| 4/8/2011 | | | .6 | $117.00 |
| | **TOTAL** | | **19.7** | **$3,981.50** |

While some trial preparation was likely justified prior to the summary judgment hearing, the billing records show that EZN's counsel billed as many hours as possible prior to the hearing since they left very little trial preparation to be completed after the summary judgment hearing which is indicative of a lack of billing judgment.

### v. Does Best's Compliance with the ECF Rules Justify EZN's Fee Award?

The District Court further justifies EZN's excessive hours stating that "Best filed over a dozen motions and accompanying memorandums which EZN was required to defend." These words are taken nearly verbatim from EZN's Supplemental Fee Petition, which states "Best burdened this Court's docket with over a dozen motions and briefs...." APP909-910. This statement is hyperbole by EZN's counsel and is factually incorrect. After the District Court awarded EZN attorneys' fees in January 2012 in the amount of $584,735.08 plus $32,892.61 in costs, Best filed a motion to stay execution and enforcement of the judgment for attorneys' fees pending appeal (APP590-598) based on EZN's cross-appeal and controlling precedent holding that EZN's cross-appeal prevented them from

25

collecting on their judgment for attorneys' fees. It is well-settled law that a litigant may collect or enforce part of a judgment and simultaneously appeal other portions where the portions are separate and divisible and the results of appealing some portions cannot affect the portions sought to be collected and enforced. *Johnson v. Port Security Int'l, LLC,* 642 F. Supp.2d 533, 536 (E.D. Va. 2009). In the District Court's Memorandum Opinion dated April 29, 2013, the District Court held that other than EZN's fraud claim, all the claims made by Best and EZN "were united by a common core of facts that focused on the Settlement Agreement and the duties and rights extending from it." APP1124. Accordingly, the District Court erred in reversing its decision to stay EZN's collection activities pending appeal.

Since EZN would have been able to start collecting on their attorney fee judgment prior to having this motion heard on the Court's normal hearing docket, Best was compelled to file a motion to expedite along with an accompanying memorandum in support. APP607-613. Best also filed their motion to alter judgment pursuant to Rule 59(e) and asked the Court to stay enforcement of the judgment for attorneys' fees. APP614-638, 639-640. Best also filed a separate motion to stay enforcement of the judgment pending appeal and while Best's Motion to Amend or Alter Judgment was pending. APP641-648, 649. As required by the ECF rules, Best filed their motion, accompanying memorandum, and notices of hearing separately which resulted in three docket entries for each

26

motion, which is how EZN reaches the "dozen" filings they claim support their award for fees.

EZN filed *two* oppositions – one to Best's expedited motion to stay enforcement of the judgment pending disposition of motions and one to Best's motion to alter or amend judgment. APP651, 661. The Court granted Best's motion to stay enforcement of the judgment pending appeal on January 20, 2012. APP671. Based on the Court's quick response, Best withdrew their motion to stay. APP673. EZN then filed a Motion to Alter Judgment and brief in support. APP679-699, 700. Best opposed EZN's motion. APP706-734. On February 21, 2012, the Court lifted the stay it had previously granted pending appeal and held that the stay would take effect as such time as Best posted a supersedeas bond or equivalent security in the amount of $620,000.00. APP735. Best then filed another motion to alter or amend judgment pending appeal. APP736, 738, 744. Best also filed a motion to expedite along with the motion. APP746, 748. EZN predictably opposed the motion. APP750. The Court ordered execution on the judgment stayed until the Court ruled on Best's motion to amend or alter the judgment. APP753. The Court later denied Best's motion. APP755. By the time this matter was finally decided, EZN had filed three opposition motions and one motion to alter or amend. EZN was not required to, nor did they, defend against more than one dozen motions filed by Best as the District Court stated.

Accordingly, the District Court abused its discretion in relying on hyperbole rather than facts in justifying the fee award.

### vi.  Why Did EZN's Attorneys Have to be Especially Adept to Collect Their Judgment in This Case?

The District Court again adopts verbatim EZN's arguments when it states that EZN's counsel had to be "especially adept at methods of collecting a federal judgment" due to Best's resistance to providing security. APP918.  Prior to Best's tender of the entire judgment in cash in July 2012, EZN's entire collections work consisted of filing a Request for Writ of Execution against BMI, filing a Suggestion for Garnishment for one bank where BMI had an account, which netted EZN $55,014.87 and was unopposed by Best, and serving interrogatories, request for production, and notices of deposition on Best. APP775-835. The depositions never occurred because Best tendered the entire judgment amount prior to the date the depositions were scheduled to occur. Best answered the interrogatories and produced over 1,100 pages of documents responsive to EZN's document requests. The only motion filed relative to EZN's collection activities was Best's motion to quash the notice of deposition of Krishnan Suthanthiran, who is not a judgment debtor in this case but is owner and sole shareholder of the corporate judgment debtors, and the interrogatories and requests for production served on BMI. APP756. The Court denied the motion to quash and Best answered written discovery before tendering the full amount of the judgment to EZN. APP889.

28

There simply was no "lengthy and difficult judgment collection process" that justifies the fee award in this case. The District Court obviously accepted EZN's self-serving arguments in this matter without evidence of any lengthy or difficult collection process.

### vii.    Does  Multi-Tasking Justify a Fee Award?

The District Court further found the fee award justified because EZN's counsel were "required to defend against two appeals, prosecute its cross-appeal and continue to litigate over its right to collect judgment or obtain security for the judgment at the same time." APP1118; APP919.   The District Court is again simply accepting EZN's counsel's arguments without further evaluation.   If responding to Best's appeals of the summary judgment and attorneys' fee awards presented a problem for EZN's counsel, they could have requested additional time to submit their briefs but did not do so. It was EZN who elected to commence collection of their judgment at the time they were responding to Best's appeals and prosecuting their cross-appeal. Best repeatedly informed EZN's counsel that security was being obtained but that it would take some time. Rather than exercise some patience, EZN opted to be aggressive and commence collections.

Moreover, it is not unusual in litigation to have to prosecute one action while defending against another in the same case so it is unclear why EZN's decision to commence collections while responding to Best's appeal justifies the fee award in

29

this case. After Best filed their appeal to the attorneys' fee order, this Court consolidated the appeals and ordered Best to submit their supplemental opening brief on February 17, 2012 and EZN to submit their opening/response brief on both issues on March 21, 2012. Therefore, Best was required to defend against EZN's motion to amend or alter judgment at the same time they were preparing their supplemental appellate brief on the attorneys' fee judgment. Moreover, EZN had filed their opening/response brief nearly one week *before* they commenced collecting on their judgment. The only appellate brief EZN filed after they commenced collecting on their judgment was their 15 page Reply brief. Again, the District Court has simply accepted EZN's self-serving arguments without further evaluation. *See* APP916-927.

### D.    DID THE DISTRICT COURT PROPERLY EVALUATE THE ATTORNEYS' OPPORTUNITY COSTS IN PRESSING THE INSTANT LITIGATION?

The District Court adopted EZN's argument that the fourth factor, the attorneys' opportunity costs in pressing the instant litigation, justified the fee request because when the Court entered judgment in favor of EZN in January 2012, EZN was scheduled for an eight day trial beginning on July 9, 2012 – more than seven months after the judgment was entered. APP1119; APP948-949. If this is the standard, it is hard to imagine a litigation attorney who could not justify a fee award based on trial dates alone. Accordingly, in considering opportunity costs,

30

courts often look to the drain of resources on a firm during the litigation, the length of the litigation, and, in some cases, the unpopularity of the case. *Bland,* 2011 U.S. Dist. LEXIS 128522 at *33 (holding that lost opportunities due to potential conflicts with pending litigation is inevitable and is not pertinent to the attorneys' fee award).    Opportunity costs are also referred to as "preclusion of other employment opportunities" by some courts in the Fourth Circuit because it is typically applied in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-02992, 2013 U.S. Dist. LEXIS 15188 at *9 (D.S.C. Feb. 5, 2013) *quoting Uhlig, LLC v. Shirley*, 895 F. Supp.2d 707, 716 (D.S.C. Sept. 25, 2012) (*citing Daly*, 790 F.2d at 1082 n.15 (4th Cir. 1986).

Accordingly, Courts in the Eastern District have found this factor to be irrelevant when counsel was retained on a fixed fee basis, as MRC and Pollard were in this case, because even if counsel was precluded from taking other employment, counsel has been compensated for the time spent on this case. *See, Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.,* No. 1:07-cv-491, 2009 U.S. Dist. LEXIS 98742 at *15 (E.D. Va. Oct. 16, 2009); *Uhlig,* 895 F. Supp.2d. at 716. Similarly, where the case presented counsel an opportunity to perform considerable work for a client with the ability to pay, lost opportunities were not a factor in calculating the proper fee. *See, Lorillard Tobacco Co. v. California*

31

*Imports, LLC,* No. 3:10cv817, 2012 U.S. Dist. LEXIS 159255 at *8 (E.D. Va. Nov. 6, 2012).    In this case, Lonas' initial affidavit attempted to justify EZN's outrageous fee request based on the fact that Lonas was defending a deposition for another client whose case was set for trial in September 2010 when EZN received notice of the lawsuit on June 3, 2010. Since Lonas was retained more than a month prior to lawsuit being filed and there were eight days between the filing of the Complaint and motion for TRO and the hearing on the TRO, it is difficult to understand how the loss of eight days more than three months before trial justifies the fee award in this case.    Lonas' affidavit does not even allege that this case in any way interfered with the trial of that matter. APP322.

In his supplemental affidavit, Lonas' asserts that he had to divert time away from another case that was scheduled for trial in July 2012 to attend a hearing on Best's motion to quash in June.    However, an attorney can only work on one case at any given time and Lonas was paid for the time he spent working on this case as was his law firm, MRC, so there was no loss of compensation.    Neither Lonas nor Pollard have submitted any evidence that they had to turn down work because of this case or that this case presented a drain on MRC's ten attorney law firm's resources. Attorneys always have other cases to work on so if having another case to work is the standard for satisfying this *Johnson* factor, then every fee award would be justified.    The District Court simply accepted EZN's arguments that the

32

fees requested were reasonable without further evaluation.

### E. DID THE AMOUNT IN CONTROVERSY AND RESULTS OBTAINED BY EZN JUSTIFY THEIR FEE AWARD?

The most critical factor in calculating a reasonable fee award is the degree of success obtained. *Brodziak,* 145 F.3d at 196 (4th Cir. 1998). When a party seeking an award of attorneys' fees "...has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* The United States Supreme Court has held that a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983). Accordingly, the Supreme Court has held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Hensley,* 461 U.S. at 436. The Fourth Circuit has held that after subtracting fees incurred for unsuccessful, unrelated claims, the District Court should award some percentage of the remaining amount, depending on the degree of success. *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 244 (4th Cir. 2009). In this case, the District Court awarded EZN 100% of their requested fees and costs although EZN achieved very limited success in comparison to the litigation as a whole. As shown below, the only thing EZN obtained by way of their counterclaims was a finding that Best defaulted in failing to perform the D&D of the production line.

| BEST CLAIMS | RESULT | EZN CLAIMS | RESULT |
|---|---|---|---|
| Breach of SA re: the production line | Lost | Breach of SA re: performance bond | Lost |
| Breach of SA re: source train purchase | Lost | Breach of SA for failure to D&D the production line | Partially successful in that the Court found Best had defaulted but denied EZN's requested relief. |
| Equitable estoppel | Lost | Fraud | Lost |
| | | Declaratory relief | Denied as moot. |

APP240-256.

Accordingly, the District Court made an error of law in awarding EZN 100% of their requested attorneys' fees. Where a party only partially succeeds or has limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. *Hensley*, 461 U.S. at 436. Here, the District Court accepted EZN's argument that they were entitled to 100% of their requested fees because they were the prevailing party. Precedent in this Circuit holds that "[w]here recovery of private damages is the purpose of ... litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Doe v. Chao*, 435 F.3d at 505 *quoting Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

The Fourth Circuit further reiterated in *Chao* that when a district court determines what fee is reasonable, the "most critical factor" in that determination "is the degree of success obtained." *Chao*, 435 F.3d at 505 *citing Hensley*, 461 U.S.

at 436. Thus, if a party does not triumph completely, it should be awarded fees in proportion to the results obtained. *Imaginary Images Inc. v. Evans,* No. 3:08-CV-398, 2009 U.S. Dist. LEXIS 73193 at *7 (E.D. Va. Aug. 12, 2009) *citing Hensley,* 461 U.S. at 440. In this case, the District Court justified the award by finding that EZN "obtained favorable results on the merits" and awarded EZN 100% of their fees despite their very limited success on their counterclaims. APP1121. Both Best and EZN successfully defended against the other party's claims and neither party obtained any damages as a result of the claims asserted by the other party. Although EZN was only marginally more successful than Best, EZN has been awarded over $900,000 in attorneys' fees and costs for a simple breach of contract claim that never made it to trial. Accordingly, EZN's attorneys' fees should be substantially reduced or eliminated entirely.

While this Court has affirmed the District Court's ruling that EZN was the prevailing party that does not establish that EZN is entitled to 100% of their requested fees. Both EZN and the District Court seem to assume that since EZN has been found to be the prevailing party, EZN is entitled to all their requested fees. While it may be appropriate to award some fees to EZN, precedent dictates that the amount of fees should be proportionate to EZN's very limited success in this matter. In *Johnson v. City of Aiken,* this Court held that no attorneys' fees were justified where the plaintiff recovered $.35 in nominal damages because

"when the recovery of monetary damages is the purpose of the claim, a plaintiff who receives only nominal damages has succeeded only in a technical sense." *Johnson,* 278 F.3d 333, 338 (4th Cir. 2002). Nevertheless, the District Court awarded EZN 100% of its initial fee request as well as 100% of their supplemental fee request because the Fourth Circuit affirmed the grant of summary judgment for both parties and further affirmed that EZN was the prevailing party.

It is beyond dispute that the purpose of EZN's counterclaims was the recovery of monetary damages. See APP214-230. EZN sought at least €200,000 for Best's alleged failure to post security in their first counterclaim. APP218, ¶¶ 23-27. EZN lost on this claim because the District Court held that EZN had not established that they had suffered any damages as a result of Best's provision of a letter of credit in lieu of a performance bond. APP253. In Count II, EZN sought an unspecified amount of damages for (1) performing the D&D; (2) disposal of the production line; and (3) loss of use of the portion of their facility where the production line was located in an amount equal to €50,000 per month beginning in April 2009. APP219-220. At the time the District Court granted Best's motion for summary judgment on EZN's counterclaims, the amount of damages EZN sought for loss of use alone would have been at least $1.2 million. EZN obtained none of their requested damages, although the District Court agreed that Best defaulted on their D&D obligation, because the SA required EZN to submit the costs of the

36

D&D to Best and if there was a dispute as the costs of the D&D, the parties had to submit that dispute to arbitration as required by the SA. APP254. Count III was EZN's fraud claim for which EZN sought over $1.8 million in addition to attorneys' fees and costs and other damages. APP220-222. EZN lost on this claim as well. APP255-256. In Count IV, EZN sought declaratory relief asking the Court to relieve EZN of the need to arbitrate any dispute arising from their D&D of the production line and to declare that "a Best default of the Settlement Agreement has occurred." APP222-223. The Court denied EZN's claim for declaratory relief as moot. APP256. Like Best, EZN was not awarded damages despite having claimed damages of at least $3 million in addition to the unspecified costs of the D&D[10].

Nevertheless, the District Court found that EZN "obtained favorable results on the merits throughout the litigation in this Court and at the Fourth Circuit as this Court's findings and conclusions of law and liability were affirmed." APP1121. The District Court overlooks the fact that (1) Best was as successful in obtaining summary judgment on all of EZN's counterclaims as EZN was in obtaining summary judgment on Best's claims; and (2) as *Johnson v. City of Aiken* teaches, the fact that EZN was found to be the prevailing party does not necessarily entitle EZN to 100% of their requested attorneys' fees. Instead the District Court appears to be keeping a scorecard based on motions practice since EZN had very little

---

[10] On July 10, 2013, EZN's conservative estimate of the costs of the D & D was €915,000.00.

success on the merits.    The District Court appears to equate claims with successful

motions practice and then finds EZN's fee award is justified because they obtained

favorable results on the merits throughout the litigation. Established precedent,

however, dictates that the Court should look at successful claims and the amount of

damages awarded to the prevailing party.   In *Nigh v. Koons Buick Pontiac GMC,*

*Inc.,* 478 F.3d 183 (4th Cir.  2007), Koons argued that Nigh's fee award should be

reduced by 85% or eliminated altogether because Nigh enjoyed very little success

after his verdict was reduced to comply with the statutory cap. *Id.* at 190. The

Fourth Circuit agreed with Koons, in part, stating:

> "We do consider the extent of the relief obtained by the plaintiff to be
> particularly important when calculating reasonable fees, *see Mercer v.*
> *Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005), and *Barber* requires
> district courts to weigh the amount in controversy and the results
> obtained before deciding upon a reasonable fee, 577 F.2d at 226 n.28.
> Looking to the extent of relief permits courts quickly to assess the
> merits of a plaintiff's claims. *See Farrar*, 506 U.S. at 115. The *Barber*
> requirement rests on the idea that a prevailing plaintiff is less worthy
> of a fee award when one or more of his claims lack merit -- that is,
> when he cannot demonstrate that he deserves the compensation he
> demanded in his complaint."

*Nigh,* 478 F.3d at 190.   Accordingly, the District Court improperly considered

EZN's successful defense of the TRO and motion to dismiss because precedent

instructs the District Court to focus on the degree of success EZN enjoyed on their

claims and defenses as a whole.

38

## F.   DO ATTORNEYS' FEES AWARDED IN OTHER BREACH OF CONTRACT CASES THAT DID NOT SURVIVE SUMMARY JUDGMENT JUSTIFY THE FEE AWARD IN THIS CASE?

The District Court cites two cases in support of its finding that the attorneys' fees in this case are reasonable, neither of which are similar to this case. The first case involved a plaintiff who moved for a default judgment based on breach of an agreement to pay for computer design services. *Cynergy Sys. v. Weaver Group, Inc.,* No. 1:12cv498, 2012 U.S. Dist. LEXIS 159103 (E.D. Va. 2012). Defendant failed to appear so judgment was entered in favor of plaintiff for $79,582.57, the amount due for the services performed plus $5,012.00 in legal fees for collection efforts and the default judgment. *Cynergy,* 2012 U.S. Dist. LEXIS 159103 at *7, *9. The District Court seems to have incorrectly combined the amount awarded for the services with the attorneys' fees in reaching the conclusion that attorneys' fees ranged from $84,500 to over $1.1 million because the total awarded equaled $84,594.82. *Cynergy,* 2012 U.S. Dist. LEXIS 159103 at *9. The attorneys' fees in *Signature Flight Support* were not for a simple breach of contract but also included tort claims for intentional interference with contract and with prospective business or economic advantage, accounting and disgorgement, declaratory judgment, and permanent injunctive relief. *Signature,* 730 F. Supp.2d at 517. Defendant counterclaimed seeking a declaratory judgment, and asserting breach of contract. *Id.* at 517. A bench trial was held after settlement efforts failed. *Id.* The District

39

Court found in favor of Defendant although Defendant breached the contract because Plaintiff failed to prove the damage prong of their claim *Id*. However, the Court found in favor of Signature on its request for declaratory judgment and permanent injunction and on Landow's counterclaims. The fees in this case were not based on success in a breach of contract action but on success on Signature's tort claims and permanent injunction. The Court applied a 10% across the board reduction to account for Signature's failure on their breach of contract and accounting and disgorgement claims.

This factor requires the District Court to consider attorneys' fees awarded in *similar* cases. Neither of the cases cited by the District Court is similar to this case which was a simple breach of contract case that was dismissed at the summary judgment stage. A review of precedent in the Eastern District of Virginia for the time period at issue in this case (2010 to 2013) reveals attorneys' fee awards in similar cases are much lower than the award in this case as shown below:

- *Sandbeck v. Reyes,* No. 1:11cv0761, 2012 U.S. Dist. LEXIS 54068 (E.D. Va. 2012) – after a one day bench trial, the Court awarded Sandbeck $76,224.51 on her breach of contract claim. Sandbeck sought attorneys' fees for 58.75 hours of work over one year and 4.25 hours of travel time which the Court found to be reasonable. Total awarded: $21,462.09, including costs.

40

- *Textron Fin. Corp. v. AIC of Manassas, Inc.*, No. 1:09-cv-1202, 2010 U.S. Dist. LEXIS 74543 (E.D. Va. July 23, 2010) – the District Court granted Textron's motion for summary judgment and awarded them $364,777.02 in connection with defendant's default on their contractual obligations arising under the parties' Financing Agreement. Textron moved for attorneys' fees in the amount of $97,268.50 for 380.1 hours of work, which the Court reduced to $93,482.50 because the initial request included fees for detinue and fraudulent conveyance which Textron voluntarily dismissed.

- *Wells Fargo Bank, N.A. v. Walls*, 1:12-cv-664, 2013 U.S. Dist. LEXIS 57415 (E.D. Va. Mar. 4, 2013) – the Bank sued Walls for payment under a defaulted loan. The Court granted the Bank's motion for summary judgment. The Bank sought $99,094.19 in attorneys' fees incurred since 2007. The Court awarded the requested fees.

- *United States ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10cv512, 2011 U.S. Dist. LEXIS 71755 (E.D. Va. July 5, 2011) – Safway filed suit against Tessa for breach of contract and against other defendants for payment pursuant to the Miller Act. The Court granted Safway's motion for summary judgment and awarded Safway $24,889.35. Safway moved for attorneys' fees. The Court reduced the fee award by 10% and awarded $15,292.80 in attorneys' fees for 57.6 hours of work (8.8 hours were disallowed).

41

- *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, No. 1:10cv1407, 2011 U.S. Dist. LEXIS 86049 (E.D. Va. Aug. 3, 2011) – Plaintiff sought fees of $393,261.90, which included attorneys' fees for a bankruptcy proceeding in the amount of $102,408.04. The Court did not award any fees for the bankruptcy proceeding because although plaintiff was entitled to those fees, there was insufficient documentation from which the Court could determine the reasonableness of those fees. The Court awarded fees and costs in the breach of contract case in the amount of $217,414.91.

In this case, Defendants have been awarded $871,414.49 in fees from the commencement of this action through the first appeal. APP1130. Whereas in the similar cases set forth above hours expended on the litigation were in the low hundreds, Judge Hilton found it reasonable that EZN's attorneys' spent a total of 2,561.60 hours through the summary judgment stage which is disproportionate to the hours expended on similar cases. Again, the District Court simply accepted EZN's claims that their fee request was reasonable without question.

### G.    IS EZN ENTITLED TO ATTORNEYS' FEES FOR UNSUCCESSFUL CLAIMS WHERE THE FEES CAN BE IDENTIFIED AND EXCLUDED?

It is beyond dispute that EZN lost on their breach of contract claim based on the letter of credit/performance bond. APP253. Nevertheless, in their fee petition, EZN does not even attempt to exclude the hours they spent on their counterclaim

related to the letter of credit issue although those hours can be easily identified and excluded. In *Buffington v. Baltimore County*, 913 F.2d 113, 126, 128-29 (4th Cir. 1990), the Fourth Circuit provided guidance for those cases in which the fee applicant is unsuccessful on claims which arise from a common core of facts. *Stacy v. Stroud*, 845 F. Supp. 1135, 1141 (S.D. W. Va. 1993). The Fourth Circuit reversed the ruling granting plaintiff's attorneys fees in part on some substantive issues and remanded the case for reconsideration of, among other things, the fee award. *Id.* The Fourth Circuit noted that the district court would first have to decide whether the now unsuccessful claims were separable from the successful claims, or whether they arose from a common core of facts. If the claims were inseparable, the district court would be required to reassess the "'significance of the overall relief obtained ... in relation to the hours reasonably expended on the litigation.'" *Id.* (*quoting Hensley*, 461 U.S. at 435). The Fourth Circuit doubted that a fully compensatory award would be appropriate under the new circumstances, namely, the limited success obtained by the plaintiff. *Id.*

Nevertheless, the District Court in this case made no attempt to reduce EZN's attorneys' fees to account for the time spent on their unsuccessful claims, such as their letter of credit and arbitration claims. The following chart sets forth the easily identifiable time spent by EZN's counsel on their related but unsuccessful claims:

43

| DATE | DESCRIPTION | BILLER | TIME/AMT. BILLED |
|---|---|---|---|
| 6/4/2010 | Review e-mail and follow up re: Judge Hilton and Wachovia letter of credit (SVAPP5) | VMD | .2/$25.00 |
| 6/14/2010 | Discussions with client and co-counsel re status. Prepare letter to Wachovia, memo asking about status of D&D (SVAPP229) | CP | 2.5/$562.50 |
| 6/15/2010 | Analyze issues re: presentment of letter of credit (SVAPP9) | CDL | .4/$106.00 |
| 6/15/2010 | Analyze case re: necessity of original letter of credit and request for payment (SVAPP9) | JPR | 2.1/$409.50 |
| 6/15/2010 | Review letter and related e-mails re: Wachovia letter of credit (SVAPP9) | VMD | .1/$12.50 |
| 6/16/2010 | Teleconference with CP re: entry of court order, potential 12(b)(6) Motion (unfiled), letter of credit issues and notices of 30(b)(6) deposition (SVAPP9) | CDL | .6/$159.00 |
| 6/17/2010 | Teleconference with CP re fate of bond and letter of credit (SVAPP9) | CDL | .2/$53.00 |
| 6/17/2010 | Review Wachovia response, discuss with client, work on investigation of expiration of L/C. Discussion with Wachovia personnel (SVAPP229) | CP | 2.5/$562.50 |
| 6/18/2010 | E-mail from CP re: letter of credit issues (.1 ) and review response to demand for letter of credit from Wachovia (.1) (SVAPP9-10) | CDL | .2/$53.00 |
| 6/18/2010 | Review emails re L/C and discuss with client (SVAPP229) | CP | .25/$56.25 |
| 6/21/2010 | E-mail and teleconference with CP re: bond and letter of credit (SVAPP10) | CDL | .4/$106.00 |
| 6/21/2010 | Review email from Alan Howard, discuss with client and co-counsel. Discussion with KH regarding L/C (SVAPP229) | CP | 1.0/$225.00 |

44

| | | | |
|---|---|---|---|
| 6/21/2010 | Review correspondence and e-mails re: issuance of letter of credit and substitution of letter of credit for bond and analyze legal standards re: rights pursuant to letter of credit (SVAPP10) | JPR | 2.3/$448.50 |
| 6/22/2010 | E-mails from A. Howard and CP re: bond and letter of credit issues (SVAPP10) | CDL | .3/$79.50 |
| 6/22/2010 | Discussions with co-counsel, client re letter of credit (SVAPP229) | CP | 1.5/$337.50 |
| 6/23/2010 | Review e-mails from Menuhr and Howard re: replacement of bond with letter of credit; Analyze e-mails and timeline from CP re: bond/letter of credit issues (SVAPP10) | CDL | .4/$106.00 |
| 6/23/2010 | Review emails from Howard, prepare timeline re letter of credit substitution, discussion with client (SVAPP229) | CP | 3.0/$675.00 |
| 6/24/2010 | E-mail from CP re: letter of credit issues and progress of disassembly of production line (.1); Discussion with CP re: strategy for demanding bond/letter of credit/substitute damages (.6) (SVAPP10) | CDL | .7/$185.50 |
| 6/24/2010 | Draft letter to Salen and circulate for comments. Review provisions of letter of credit and performance bonds (SVAPP229) | CP | 3.5/$787.50 |
| 6/24/2010 | Review and comment on letter to Salen re: bond and damages (SVAPP10) | CDL | .3/$79.50 |
| 6/25/2010 | Review and comment on final version of default letter to Salen re: failure to maintain bond (SVAPP10) | CDL | .1/$26.50 |
| 6/29/2010 | Review letter from Salen, forward to client and co-counsel, discuss with client (SVAPP229) | CP | .5/$112.50 |
| 6/30/2010 | Discussion with co-counsel regarding response to letter, litigation posture (SVAPP229) | CP | 1.0/$225.00 |

| 7/10/2010 | E-mail from Hohn re: fate of bond and letter of credit (SVAPP13) | CDL | .1/$26.50 |
|---|---|---|---|
| 7/12/2010 | Research re motion to require Best to post bond, motion to dismiss v. motion for judgment on the pleadings (SVAPP230) | CP | 1.5/$337.50 |
| 7/14/2010 | Analysis re: security and/or bond requirements in E. D. Virginia for costs (SVAPP13-14) | MH | 2.1/$409.50 |
| 7/16/2010 | Discussion with CP re: waiver of service, bond and discovery issues (SVAPP14) | CDL | .4/$106.00 |
| 9/21/2010 | Review and analyze documents produced by prior law firm re: SA, bond, and letter of credit (SVAPP26) | MH | 3.9/$760.50 |
| 10/5/2010 | Review timeline re: D&D and bond-posting requirements (SVAPP30-31) | CDL | .3/$79.50 |
| 10/29/2010 | Review briefing from underlying case re: motion to compel arbitration (SVAPP37) | CDL | .7/$185.50 |
| 10/29/2010 | Discussions re Best Motion to extend discovery, memos to client. Prepare timeline re performance bond/letter of credit issues (SVAPP235) | CP | 5.0/$1,125.00 |
| 10/29/2010 | Legal analysis re: Federal Arbitration Act and case law (1.5);  Review and analyze SA and arbitration clause (.6)(SVAPP37) | MH | 2.1/$409.50 |
| 11/1/2010 | Finalize timeline, memos to client and co-counsel re Best bond, draft letter to Salen re inventory of JRST's and forward to client for review, review letter to Salen regarding production line, review Best's Motion to Dismiss with co-counsel (SVAPP237) | CP | 5.0/$1,125.00 |
| 12/20/2010 | Draft subpoena duces tecum to Wachovia re: letter of credit and bond (SVAPP54) | MH | .6/$117.00 |
| 12/20/2010 | Review and revise subpoena to | CP | Unknown due |

| | | | |
|---|---|---|---|
| | Wachovia (SVAPP240) | | to block billing |
| 1/12/2011 | Follow-up investigation into Best attempts to post a bond and report to client and co-counsel (SVAPP241) | CP | Unknown due to block billing |
| 3/17/2011 | Analyze letter of credit for issues relevant to lawsuit (.2); Review and analyze documents produced by Best in discovery re: letter of credit (.3) (SVAPP93-94) | CDL | .5/$132.50 |
| 3/22/2011 | E-mail exchange with Hathcock re: Best's mandatory arbitration arguments (.2); Begin drafting portion of response to summary judgment motion re: Best performance bond (.7) (SVAPP95) | CDL | .9/$238.50 |
| 3/30/2011 | Contact Wells Fargo re subpoena (SVAPP249) | CP | Unknown due to block billing |
| 4/6/2011 | Review and discuss documents produced by Wachovia, discussions re motions to compel/motions for summary judgment (SVAPP250) | CP | 4.0/$900.00 |
| 4/12/2011 | Teleconference with CP re: retention of expert witness on attorneys' fees, summary judgment hearing, arbitration issues (SVAPP106-107) | CDL | 1.3/$344.50 |
| 9/8/2011 | Teleconference with CP re: letter to Salen - release of bond and source disposal requirement (SVAPP124) | CDL | .2/$53.00 |
| | **TOTAL** | | $11,743.25 |

In addition to the time set forth above, EZN has also been awarded attorneys' fees for time spent drafting and responding to written discovery regarding the letter of credit issue and the arbitration provision of the SA. In total, 12 of the parties' 79 interrogatories, 14 of the parties 134 requests for production, and 15 of the parties 146 requests for admissions concerned EZN's

unsuccessful the letter of credit and arbitration claims but the District Court did not reduce EZN's attorneys' fees to reflect their lack of success on these claims as required by precedent. Additionally, extensive time was spent on these issues during the witness depositions yet EZN has recovered 100% of that time. Accordingly, EZN's fee should be reduced to reflect their lack of success on these claims.

## H.    WHAT CONSTITUTES INADEQUATE DOCUMENTATION IN THE FOURTH CIRCUIT?

"Block billing" is generally defined as "grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *McAfee v. Boczar*, 906 F. Supp.2d 484 (E.D. Va. 2012) *citing Guidry v. Clare*, 442 F. Supp.2d 282, 294 (E.D. Va. 2006). While counsel need not record their time in "great detail," numerous courts in this circuit and elsewhere have found that block billing results in inadequate documentation. *Ebersole*, 2012 U.S. Dist. LEXIS 138659 at *13 *citing Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d at 716 (*quoting Guidry*, 442 F. Supp.2d at 294) (additional citations omitted).

In this case, the District Court found that the hours expended by EZN's counsel were "properly documented" (APP1127) despite Pollard's entries being descriptively vague and, in several entries, a single time entry spans multiple days

48

of work as shown below:

| DATE | HOURS | DESCRIPTION LOCATION |
|---|---|---|
| 6/7 to 6/9/ 2010 | 23 | SVAPP229 |
| 9/24 to 9/28/2010 | 12.5 | SVAPP233 |
| 10/21 to 10/24/2010 | 10 | SVAPP234 |
| 10/26 to 10/27/2010 | 14.50 | SVAPP234 |
| 11/8 to 11/10/2010 | 17.50 | SVAPP237 |
| 12/8 to 12/9/2010 | 12.50 | SVAPP239 |

There is a lack of consistency in the Fourth Circuit as to what constitutes inadequate documentation although several courts in this Circuit would have clearly found Pollard's bills to be inadequate due to her block billing and the combining of two or more days work into one entry with no specificity as to what work was done on which day or the time spent on each task.    In addition, when compared to MRC's bills, the accuracy of Pollard's bills is called into as question, as shown below:

| DATE | TIME | POLLARD'S BILLS | COMPARISON TO MRC BILLS |
|---|---|---|---|
| 7/22/2010 | 4.5/ $562.50 | Discussions with co-counsel re amended claims. SVAPP230. | No corresponding entry. SVAPP15. |
| 7/28/2010 | 2.0/ $450.00 | Prepare memo, discuss current litigation status with co-counsel. SVAPP230. | CDL billed one hour. SVAPP16 |
| 8/20/2010 | 1.0/ $225.00 | Discussion with counsel re status and prior counsel's files. SVAPP232. | CDL billed .7/$185.50. SVAPP21-22 |
| 8/27/2010 | .75/ $168.75 | Discussions with co-counsel re status, litigation costs. SVAPP232. | CDL - .4/$106.00. SVAPP22. |

49

| | | | |
|---|---|---|---|
| 11/4/2010 | 1.0/ $225.00 | Conferences with client and co-counsel re status. SVAPP237. | No corresponding entry. SVAPP41. |
| 11/17/2010 | 3.0/ $675.00 | Review memos re expert report, and discuss with co-counsel, clients. SVAPP237. | MRC's bills show no discussions for this date; CDL billed .3/$79.50 for reviewing email from Pollard. SVAPP43. |
| 11/29/2010 | 1.5/ $337.50 | Discussions with co-counsel and client re discovery issues. SVAPP238. | CDL billed .8/$212.00 for this discussion; 45 minute discrepancy. SVAPP44. |
| 12/2/2010 | 1.0/ $225.00 | Discussion with co-counsel re motion to extend expert designations, experts. SVAPP239. | CDL billed .4/$106.00 for this discussion – 25 minute discrepancy. SVAPP48. |
| 12/11/2010 | .50/ $112.50 | Review e-mail from Salen re recusing counsel; discuss proposed response with co-counsel. SVAPP239. | There is no corresponding entry for this date which was a Saturday. SVAPP51-52. |
| 1/20/2011 | 2.5/ $562.50 | Discussions re extension of time to file MSJ, hearing on motion for protective order and evidence. SVAPP242. | No corresponding entry. SVAPP67. |
| 2/4/2011 | 2.0/ $450.00 | Discussions with co-counsel and clients re upcoming depositions. SVAPP245. | CDL billed .4/$106.00 for this discussion; over 95 minute discrepancy. SVAPP75. |
| 2/9/2011 | 5.0/ $1,125.00 | Discussions with counsel and client re deposition testimony. SVAPP245. | No corresponding entry. SVAPP77. |
| 2/17/2011 | .50 /$112.50 | Discussion with co-counsel re status. SVAPP245. | No corresponding entry. SVAPP81. |
| 4/12/2011 | 2.5/ $562.50 | Discussions with co-counsel, client re motion for summary judgment, motion for fees. SVAPP250. | CDL billed 1.3/$344.50 for this discussion; over 1.2 hour discrepancy in Pollard's bills. SVAPP106-107 |

While there are other inaccuracies in Pollard's bills as compared to MRC's bills, the foregoing clearly illustrates that Pollard's bills are not reliable as she is billing for discussions that appear not to have occurred and on several occasions billed substantially more time than MRC's attorneys for the same discussion. It seems clear that the District Court did not evaluate Pollard's bills but simply accepted EZN's counsel's arguments that Pollard's time was "properly documented."

## I.    IS ATTORNEY TRAVEL TIME COMPENSABLE AT THE FULL HOURLY RATE?

The District Court did not address the issue of whether EZN's counsel should be compensated at their full hourly rate for travel time to and from Alexandria for Court hearings and depositions. This issue is clouded by the fact that EZN's attorneys' combine travel time with preparing for the hearing or deposition making it difficult for the Court to determine the amount of travel time involved. However, in *Sandbeck,* the Court noted that the reduction of the hourly rate for travel from $350 per hour to $100 was indicative of plaintiff's good faith efforts to apply for a reasonable amount of fees. *Sandbeck,* 2012 U.S. Dist. LEXIS 54068 at *9, n. 2. In *Sandbeck,* plaintiff's attorney sought only 4.25 hours of travel time. *Id.* at 8. In this case, the amount of travel time is much higher as shown below but is impossible to accurately quantify due the manner in which EZN's counsel has block billed their travel time:

51

| DATE | DESCRIPTION | BILLER | TIME/AMOUNT BILLED PLUS COSTS |
|---|---|---|---|
| 6/11/2010 | Travel to/from Alexandria, Virginia and prepare en route. SVAPP8, 11. | CDL | 6.4/$1,696.00 plus $59.00 in mileage |
| 9/15/2010 | Travel to Alexandria -attend pre-trial conference. SVAPP26, 38. | CDL | 5.9/$1,563.50 plus $114.08 in mileage |
| 10/20/2010 | Travel to/from Alexandria - Prepare for and attend Rule 16(b) conference. SVAPP34, 46. | CDL | 4.5/$1,192.50 plus $106.50 in mileage and parking fees |
| 10/29/2010 | Travel to/from Alexandria - Prepare for, argue opposition to Best's motion to amend discovery deadline, SVAPP37, 46. | CDL | 5.0/$1,325.00 plus $107.76 for mileage and meals |
| 11/19/2010 | Prepare for and argue Best's motion to dismiss counterclaim. SVAPP44, 58 | CDL | 6.5/$1,722.50 plus $148.14 for parking, mileage, and meals |
| 11/19/2010 | Travel to Alexandria - hearing on plaintiff's motion to dismiss counterclaims. SVAPP44. | MH | 6.1/$1,189.50[11] |
| 1/5/2011 | Travel to Vienna, VA for Best depositions. SVAPP61. | CDL | 2.0/$530.00 |
| 1/7/2011 | Return travel from Vienna. SVAPP62, 72, 99-100, 244 | CDL | 11.3/$2,994.50 plus $109.65 in mileage, $149.42 in meals, and $707.79 in hotel fees |
| 1/21/2011 | Attend hearing on Best's motion for protective order and argument [sic] EZN's opposition. SVAPP67, 72. | MH | 5.7/$1,111.50 plus $92.70 in mileage and parking |
| 1/30/2011 | Travel to Vienna and prepare Menuhr for deposition. SVAPP71. | CDL | 8.5/$2,252.50 |

[11] EZN stated they eliminated time spent by associates accompanying Lonas to hearings but they did not eliminate the costs associated therewith. The elimination of the word "travel" implies that counsel is trying to disguise the fact that travel time is included in the billing. See also entries for 2/24/2011.

52

| | | | |
|---|---|---|---|
| 2/1/2011 | Defend Menuhr's and Evans depositions and return travel from Vienna. SVAPP74, 85. | CDL | 11.5/$3,047.50 plus $111.37 for mileage and meals |
| 2/2/2011 | Travel to Vienna - depositions of Fritz and Reed and prepare en route. SVAPP75. | CDL | 2.1/$556.50 |
| 2/4/2011 | Return travel from Vienna. SVAPP75, 85. | CDL | 1.5/$397.50 plus $109.65 for mileage |
| 2/4/2011 | Attend hearing on Best's motion for protective order and argue EZN's opposition (motion was uncontested according to Docket Sheet). SVAPP67, 85. | MH | 5.7/ $1,111.50 plus $13.40 for parking and meals |
| 2/8/2011 | Travel to Hilton Head for depositions of Hohn and Hathcock and prepare enroute. SVAPP77. | CDL | 5.5/$1,457.50 |
| 2/10/2011 | Return travel from Hilton Head. SVAPP78, 85. | CDL | 6.0/$1,590.00 plus $7.09 for meals |
| 2/14/2011 | Deposition of Dr. Waksman in Washington, DC. SVAPP79, 85. | CDL | 8.3/$2,199.50 plus $132.96 in mileage, meals and parking |
| 2/24/2011 | Participate in final pretrial conference in Alexandria. SVAPP83, 100 | CDL | 6.0/$1,590.00 plus $105.00 for mileage and parking |
| 2/24/2011 | Attend final pretrial conference in Alexandria. SVAPP83, 85. | MH | 6.0/$990.00 plus $99.96 for mileage |
| 3/18/2011 | Prepare for and argue motions in Alexandria and travel to/from. SVAPP94. | CDL | 7.5/$1,987.50 |
| 3/18/2011 | Attend hearing on Best's motion to exclude Hathcock, EZN's motion to exclude Reed and motion to compel. SVAPP94. | MH | 6.7/$1,306.50 |
| 4/8/2011 | Travel to/from Alexandria re motions to compel. SVAPP105, 111. | CDL | 6.3/$1,669.50 plus $118.80 in mileage, meals and parking |
| 4/10/2011 | Prepare to argue motions for summary judgment, motion to | CDL | 7.0/$1,855.00 plus $143.08 in meals, |

| | | | |
|---|---|---|---|
| | bifurcate, travel to Alexandria. SVAPP106, 111, 114. | | $290.29 for hotel, $102.00 for mileage |
| 4/10/2011 | Travel to Alexandria - summary judgment hearing. SVAPP106, 115. | MH | 1.9/$370.50 plus $256.34 for hotel |
| 4/11/2011 | Return travel from Alexandria. SVAPP106, 115. | CDL | 2.0/$530.00 plus $11.05 in meals |
| 4/11/2011 | Return travel from Alexandria. SVAPP106. | MH | 2.0/$390.00 |

As shown above, it is impossible in all but a few instances to determine the amount of time billed for travel to and from hearings and depositions because EZN's counsel has either eliminated the word "travel" entirely and substituted words like "attend" or has simply combined their travel with preparation. Courts in the Eastern District of Virginia have held that counsel should not recover their full market rate for travel time from their offices and that failure to reduce that time indicates a lack of billing judgment. *Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012). Similarly, in *Abusamhadaneh v. Taylor*, 1:11cv939, 2013 U.S. Dist. LEXIS 7451 at *96-97 (E.D. Va. Jan. 17, 2013) , the Court held that where the travel entry was combined with other legal tasks, i.e., the time counsel expended that related to the hearing, such generalized entry was simply not sufficient, proper documentation because the Court could not determine with sufficient accuracy the amount of time that Plaintiff's counsel actually spent traveling. The Court was unwilling to engage in ascription of time to constituent tasks for which Plaintiff's counsel had block billed, due to lack of assurance that

54

such an endeavor would result in an accurate ascription of time to the respective tasks. *Id.* at 97. The same is true in this case with the entries set forth above which fail to delineate the time spent traveling, the time spent at the hearing, and the time spent preparing for the hearing.   Accordingly, the District Court should have reduced EZN's counsel's attorneys' fees for all entries in which travel was clearly involved but for which counsel has not separated travel time from time spent at the hearing or deposition or from the time preparing for the hearing or deposition.

**J.    IS EZN ENTITLED TO ATTORNEYS' FEES FOR CLERICAL TASKS?**

It is beyond dispute that "purely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated." *Yu Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 815 (E.D. Va. 2008) *citing Meade v. Barnhart*, 218 F. Supp. 2d 811, 813 n.4 (W.D. Va. 2002) (additional citation omitted); *see also, Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) ("Paralegal expenses are separately recoverable only as part of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally performed by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses.").

55

A review of legal bills reveals that EZN's attorneys billed for performing various secretarial/clerical tasks. For example, Pollard billed for obtaining an estimate from Gibson, Moore for preparation of their appeal brief (11/8/2011=.25/$56.25) and calendaring deadlines (11/28/2011=.25/$56.25). An attorney may not bill at his hourly rate for secretarial tasks just because he performs them. *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1027 (E.D. Va. 1994) *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do …. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Yu Zhang,* 537 F. Supp.2d at 814 (additional citations omitted). Moreover, EZN's counsel and their legal staff billed for performing the strictly clerical tasks set forth below:

(1)    Obtaining cases off PACER; online searches for information; review notices of electronic filing; filing documents electronically; calls to the court to obtain information.

BY VMD:

6/4/2010=2.1/$262.50
6/8/2010=.2/$25.00
6/10/2010=.6/$75.00; .2/$25.00
6/11/2010=.4/$50.00

56

6/14/2010=.2$25.00
6/16/2010=.2/$25.00
6/17/2010=.5/$62.50
6/18/2010=.1/$12.50
7/19/2010=.3/$37.50
7/22/2010=.2/$25.00
7/26/2010=.4/$50.00
7/27/2010=.7/$87.50; .1/$12.50; .3/$37.50


8/2/2010=.4/$50.00
8/3/2010=.3/$37.50
9/8/2010=.2/$25.00; .1/$12.50
9/24/2010=.1/$12.50
10/7/2010=.5/$62.50
SVAPP5-10, 14-16, 20-21, 25-27, 31.

By SP:
3/14/2011=1.2/$120.00; .6/$60.00
3/25/2011=.6/$60.00; .8/$80.00
4/11/2011=.3/$30.00
See SVAPP92, 96, 106.

By CFO
10/11/2011=3.1/$403.00
10/17/2011=.5/$65.00
1/6/2012=.3/$40.00
SVAPP135-136, 155.

**TOTAL - $1,858.00**

*See, Pinpoint IT Servs., LLC v. Atlas It Exp. Corp.*, No. 2:10cv516, 2012

U.S. Dist. LEXIS 140687 at *19 (E.D. Va. Sept. 27, 2012)(filing documents with

the Court via CM/ECF is clerical work).

(2)    Preparing materials for attorney review or for hearings, depositions,

57

and/or trial which entails gathering, reviewing or obtaining materials from the file, copying the materials, hole-punching, organizing and putting them in a binder:

BY VMD:

6/10/2010=1.6/$200.00
9/8/2010=.2/$25.00
SVAPP7-8, 25.

BY SP:
6/10/2010=2.4/$96.00
1/4/2011=4.2/$420.00
2/2/2011=3.2/$320.00
2/7/2011=.9/$90.00
2/23/2011=4.9/$490.00
3/8/2011=7.0/$700.00
3/9/2011=3.7/$370.00
3/10/2011=2.0/$200.00
3/15/2011=4.3/$430.00
3/16/2011=1.2/$120.00
3/17/2011=2.5/$250.00
3/23/2011=1.9/$190.00
3/28/2011=1.2/$120.00

4/4/2011=1.8/$180.00
4/4/2011=1.5/$150.00
4/6/2011=2.5/$250.00
4/7/2011=3.2/$320.00
4/8/2011=5.2/$520.00
4/11/2011=4.8/$480.00
SVAPP8, 61, 75-76, 83, 90-97, 103-106.

BY CFO:
2/2/2011=1.5/$195.00
2/7/2011=8.3/$1,079.00
2/23/2011=4.6/$598.00
3/29/2011=.3/$39.00
3/31/2011=1.4/$182.00
4/1/2011=6.4/$832.00

4/4/2011=6.3/$819.00
4/6/2011=8.5/$1,105.00
4/7/2011=6.8/$884.00
4/8/2011=8.7/$1,131.00
SVAPP75-76, 83, 98-99, 103-105.

**TOTAL - $12,785.00**

(3)     Drafting or preparing cover letters enclosing document and preparing

documents for service, review or production:

BY VMD:
7/30/2010=.1/$12.50
10/26/2010=.2/$25.00
11/11/2010=.4/$50.00
11/12/2010=.5/$62.50
SVAPP17, 36, 42-43.

By SP:
11/14/2010=4.5/$427.50
11/15/2010=7.0/$665.00
12/10/2010=2.1/$210.00
12/17/2010=.8/$80.00
1/5/2011=3.5/$350.00; .8/$80.00
1/6/2011=5.2/$520.00
1/10/2011=1.0/$100.00
1/13/2011=.2/$20.00; .6/$60.00
1/14/2011=.7/$70.00
1/18/2011=.5/$50.00; .6/$60.00
1/26/2011=.3/$30.00
1/28/2011=.1/$10.00
2/1/2011=.5/$50.00
2/11/2011=1.0/$100.00
2/15/2011=1.3/$130.00
2/16/2011=.1/$10.00
3/4/2011=.6/$60.00
3/11/2011=.6/$60.00
4/1/2011=.7/$70.00
SVAPP43, 52, 54, 61-62, 64-66, 69-70, 74, 80-81, 89, 91, 103.

By CFO:
3/24/2011=.4/$52.00
SVAPP96.

**TOTAL - $3,414.50**

(4)    Arranging for depositions, making hotel/flight arrangements:

1/28/2011-SP-.3/$30.00
3/22/2011-CFO-.4/$52.00
3/25/2011-CFO-1.2/$156.00
11/4/2011-CP-.75/$168.75
SVAPP70, 95-96, 257.

**TOTAL - $238.00**

(5)    Preparing, reviewing or revising notices of depositions or notices of

hearing:

By VMD:

7/30/2010=.3/$37.50
8/3/2010=.3/$37.50
SVAPP17, 21.

By CDL:
11/18/2010=.2/$53.00
11/29/2010=.4/$106.00
11/30/2010=.6/$159.00
12/2/2010=.1/$26.50
12/30/2010=.1/$26.50
1/13/2011=.4/$106.00
1/14/2011=.3/$79.50
2/2/2011=.1/$26.50
2/17/2011=.1/$26.50
3/3/2011=.1/$26.50
3/15/2011=.1/$26.50
SVAPP42-45, 48, 57, 64-65, 74, 81, 89, 92.

60

By SP:
12/30/2010=.4/$40.00
1/28/2011=.7/$70.00
2/2/2011=.3/$30.00
2/11/2011=1.2/$120.00
2/17/2011=.4/$40.00
3/3/2011=.6/$60.00
3/10/2011=.6/$60.00
3/15/2011=.6/$60.00
3/25/2011=.5/$50.00
3/30/2011=.7/$70.00
SVAPP57, 70, 75, 78, 81, 89, 91, 93, 97-98.

**TOTAL - $1,337.50**

(6)    Preparing timelines, chronologies and/or indexes:

By CP:
6/23/2010=3.0/$675.00
SVAPP229

By SP:
11/19/2010=3.0/$285.00
12/1/2010=2.0/$200.00
12/2/2010=3.2/$320.00
12/3/2010=2.5/$250.00
12/6/2010=2.5/$250.00
12/8/2010=3.0/$300.00
12/9/2010=4.0/$400.00
12/13/2010=3.2/$320.00
2/17/2011=1.2/$120.00
SVAPP44, 48-52, 81.

By CFO:
2/8/2011=2.3/$299.00
2/9/2011=5.8/$754.00
2/10/2011=5.0/$650.00
2/11/2011=8.0/$1,040.00
2/15/2011=3.7/$481.00
2/16/2011=4.6/$598.00

61

2/17/2011=9.2/$1,196.00
3/30/2011=1.1/$143.00
SVAPP77-81, 98.

**TOTAL - $8,281.00**

(7)     Reviewing, preparing or sending correspondence/emails to attorneys,

clients, experts, and others and follow-up:

By VMD:
7/20/2010=.2/$25.00
7/22/2010=.3/$37.50
8/3/2010=.1/$12.50
9/8/2010=.2/$25.00
10/26/2010=.2/$25.00
SVAPP14-15, 21, 25, 36.

By SP:
1/14/2011=.1/$10.00
1/31/2011=.2/$20.00
2/7/2011=.4/$40.00
3/10/2011=.5/$50.00
3/16/2011=1.9/$190.00
4/1/2011=.8/$80.00
4/22/2011=2.0/$200.00
5/13/2011=.7/$70.00
SVAPP65, 71, 91, 93, 102, 109, 114.

By CFO:
10/12/2011=2.3/$299.00 (block billing)
SVAPP136.

**TOTAL - $1,059.00**

(8)     Arranging, reviewing, or organizing materials; obtaining exhibits to

motions:

62

7/23/2010-VMD-.7/$87.50
SVAPP15.

By SP:
3/10/2011=3.5/$350.00
3/11/2011=6.2/$620.00
3/14/2011=5.1/$510.00
3/25/2011=2.2/$220.00
3/25/2011=2.6/$260.00
3/30/2011=1.8/$180.00
SVAPP91-92, 97-98.

By CFO:
3/28/2011=.5/$65.00
4/11/2011=.9/$117.00
4/28/2011=.4/$52.00
6/14/2011=1.3/$169.00
6/15/2011=2.5/$325.00
7/5/2011=1.0/$130.00
7/8/2011=3.0/$390.00
9/9/2011=.5/$65.00
9/13/2011=.1/$13.00
10/4/2011=.6/$78.00
10/5/2011=7.3/$949.00
10/6/2011=1.3/$169.00
10/7/2011=5.2/$676.00
10/9/2011=2.3/$299.00
10/10/2011=10.3/$1,339.00
11/3/2011=2.6/$338.00
11/18/2011=1.0/$130.00
SVAPP97, 106, 110, 117-119, 124-125, 132-134, 143, 146.

**TOTAL - $7,531.50**

(9)   Reviewing/updating calendar and follow-up:

By VMD:
7/16/2010=.7/$70.00
7/27/2010=.1/$12.50
7/28/2010=.1/$12.50

63

7/29/2010=.1/$12.50
7/30/2010=.1/$12.50
8/3/2010=.1/$12.50
9/8/2010=.1/$12.50
9/24/2010=.1/$12.50
9/29/2010=.2/$25.00
10/1/2010=.1/$12.50
10/12/2010=.1/$12.50
10/25/2010=.1/$12.50
10/26/2010=.3/$37.50
10/27/2010=.3/$37.50; .2/$25.00; .1/$12.50
11/3/2010=.1/$12.50
11/11/2011=.4/$52.00 – CFO:
SVAPP14-17, 21, 25-28, 30-36, 40-42.

**TOTAL - $397.00**

Making deliveries to attorneys and others and filing documents are among the types of clerical tasks that should not be included in a fee petition. *See W.A.K. v. Wachovia Bank, N.A.,* No. 3:09CV575, 2010 U.S. Dist. LEXIS 79074 at *17 (E.D. Va. 2010)(reducing requested paralegal fees by 25% to account for clerical tasks). Organizing pleadings binders is a clerical task as is compiling (or obtaining) and preparing documents for production, arranging for depositions, and preparing notices of depositions. *See Abusamhadaneh,* 2013 U.S. Dist. LEXIS 7451 at *111-115. Accordingly, the fee award should be reduced by at least $37,659.75 which represents the amount billed for unrecoverable clerical tasks.

## CONCLUSION

For the reasons set forth herein, Best prays that this Court reverse the District Court's award of attorneys' fees and costs in this matter in its entirety or,

64

in the alternative, reduce EZN's fee award to eliminate fees for travel time and

clerical tasks as well as the duplication of effort and excessive amount of time

spent by EZN's counsel in performing ordinary legal tasks.

Respectfully submitted,

By:    /s/ James M. Brady
       James M. Brady
       Virginia State Bar No. 80002
       *Counsel for Plaintiffs-Appellants*
       Best Medical International, Inc.
       7643 Fullerton Road
       Springfield, VA 22153
       Telephone: (703) 451-2378
       Facsimile: (703) 451-8421
       Email: james@teambest.com

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-01708</u>        **Caption:** <u>Best Medical International, Inc., et. al. v. Eckert & Ziegler Nuclitec GmbH</u>

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☑ this brief contains <u>13,976</u> *[state number of]* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ *[state number of]* lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u> *[identify word processing program]* in
<u>Font size 14, Times New Roman</u> *[identify font size and type style]*; **or**

☐ this brief has been prepared in a monospaced typeface using
_____ *[identify word processing program]* in
_____ *[identify font size and type style]*.

(s) <u>/s/ James M. Brady</u>

Attorney for <u>Plaintiffs-Appellants</u>

Dated: <u>August 22, 2013</u>

04/13/2012
SCC

## CERTIFICATE OF SERVICE

I hereby certify that on AUGUST 22, 2013, I electronically filed the foregoing document with the Clerk of the Court for the Fourth Circuit Court of Appeals using the electronic case filing system of the Court. The electronic case filing system will send notification of such filing to all counsel of record. Counsel may access such document using the Court's system.

/s/ James M. Brady
James M. Brady
Virginia State Bar No. 80002
*Counsel for Plaintiffs/Appellants*
Best Medical International, Inc.
7643 Fullerton Road
Springfield, VA 22153
Telephone: (703) 451-2378
Facsimile: (703) 451-8421
Email: james@teambest.com

Dated:   AUGUST 22, 2013.