**RECORD NO. 13-1708**

In The

# United States Court Of Appeals
### For The Fourth Circuit

**BEST MEDICAL INTERNATIONAL, INC.,**
**a Virginia Corporation;**
**BEST VASCULAR, INC., a Delaware Corporation,**

*Plaintiffs – Appellants,*

**v.**

**ECKERT & ZIEGLER NUCLITEC GMBH,**
**a German corporation, successor to QSA Global GmbH,**

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

_____

**BRIEF OF APPELLEE**
_____

C. Dewayne Lonas
Matthew J. Hundley
MORAN REEVES & CONN PC
100 Shockoe Slip, 4th Floor
Richmond, VA  23219
(804) 864-4820

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1708__     Caption: __Best Medical International, Inc. v. Eckert & Ziegler Nuclitec GmbH__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Eckert & Ziegler Nuclitec GmbH__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
        Eckert & Ziegler AG

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                              ☑ YES ☐ NO
        If yes, identify all such owners:
        Eckert & Ziegler AG

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/C. Dewayne Lonas                    Date:    6/10/13

Counsel for: Eckert & Ziegler Nuclitec GmbH

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on    June 10, 2013    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

James M. Brady
Shawn Russell Weingast
Lauri M. Luxton
Best Medical International, Inc.
7643 Fullerton Road
Springfield, Virginia 22153
Counsel for Best Medical International, Inc.
and Best Vascular, Inc.

s/C. Dewayne Lonas                        6/10/13
(signature)                                (date)

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ................................................................. iii

I.    STATEMENT OF ISSUES ............................................................1

II.   COUNTER-STATEMENT OF FACTS .........................................1

III.  SUMMARY OF ARGUMENT ......................................................7

IV.   ARGUMENT ................................................................................8

    A.    BEST AGAIN IMPERMISSIBLY INTRODUCES NEW EVIDENCE AND ARGUMENTS ON APPEAL THAT WERE NEVER PRESENTED TO THE DISTRICT COURT. .......................8

    B.    THE DISTRICT COURT PROPERLY APPLIED THE *JOHNSON* FACTORS IN AWARDING EZN ITS REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN DEFENDING AGAINST BEST'S CLAIMS. .........10

        1.    Applicable Law and Standard of Review ................................10

        2.    The Hours Expended by EZN Defending Against Best's Meritless Claims Are Reasonable .............................................12

            a.    The time and labor invested by EZN justify its fee award .............................................................................12

            b.    The amount in controversy and the results obtained justify the fee award .......................................................18

            c.    Opportunities lost by EZN's attorneys justify the fee award.........................................................................20

i

d.   Ms. Pollard's longstanding relationship with EZN justifies the fee award. ....................................................21

e.   Awards in similar cases, and the fees paid by Best to its own outside counsel, justify the fee award to EZN.................................................................................21

3.   The District Court Correctly Found that No Further Reduction Was Necessary to EZN's Fees Because EZN Had Already Exercised Billing Judgment in Reducing Its Gross Fee Request. ..................................................28

4.   None of Best's Attacks on the Reasonableness or the Necessity of the Work that Comprised EZN's Defense in This Case Demonstrates Any Abuse of Discretion by the District Court...........................................................30

a.   The District Court did not abuse its discretion by compensating EZN for travel time at the attorneys' normal hourly rate...........................................................30

b.   It was both reasonable and necessary for EZN's lawyers to communicate and collaborate during this lawsuit, and no reduction of EZN's fees is warranted for alleged duplication of effort....................32

c.   EZN's was not compensated for its lawyers and paralegals to accomplish purely administrative or clerical tasks. ...............................................................37

d.   The District Court did not abuse its discretion by awarding fees for blocked but related time entries.........40

V.   CONCLUSION.................................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**PAGE(S):**

*Abusamhadaneh v. Taylor*,
No. 1:11cv939, 2013 U.S. Dist. LEXIS 7451
(E.D. Va. Jan. 17, 2013) ...............................................................31

*Cherry v. Champion Int'l Corp.*,
186 F.3d 442 (4th Cir. 1999) ........................................................11

*Cynergy Sys, Inc. v. Weaver Group, Inc.*,
No. 1:12cv498, 2012 U.S. Dist. LEXIS 159103
(E.D. Va. 2012)..............................................................................21

*Ebersole v. Kline-Perry*,
No. 1:12cv26, 2012 U.S. Dist. LEXIS 138659
(E.D. Va. Sept. 26, 2012.) ............................................................38

*Ellis v. Grant Thornton L.L.P.*,
434 Fed. App'x 232 (4th Cir. 2011) .............................................11

*Grissom v. Mills Corp.*,
549 F.3d 313 (4th Cir. 2008) ........................................................11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................................42

*Hudson v. Pittsylvania County*,
No. 4:11-CV-43, 2013 U.S. Dist. LEXIS 121930
(W.D. Va. Aug. 1, 2013) ...............................................................31

*Hutchinson v. Fidelity Inv. Ass'n*,
106 F.2d 431 (4th Cir. 1939) ..........................................................9

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ...............................................*passim*

iii

*JP v. County Sch. Bd.*,
    641 F. Supp. 2d 499 (E.D. Va. 2009) ............................................................12

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)................................................................................37, 38

*National Ass'n of Concerned Veterans v. Secretary of Defense*,
    675 F.2d 1319 (D.C. Cir. 1982).............................................................32, 42

*Project Vote/Voting For American, Inc. v. Long*,
    No. 2:10cv75, 2012 U.S. Dist. LEXIS 119009
    (E.D. Va. Aug. 22, 2012) ..............................................................................41

*Robinson v. Equifax Info. Servs., L.L.C.*,
    560 F.3d 235 (4th Cir. 2009) ..........................................................10, 11, 29

*Sandbeck v. Reyes*,
    No. 1:11cv0761, 2010 U.S. Dist. LEXIS 54068
    (E.D. Va. 2012)..............................................................................................24

*Signature Flight Supp. Corp. v. Landow Aviation Ltd.*,
    730 F. Supp. 2d 513 (E.D. Va. 2010) ..........................................21, 22, 23, 24

*Tele-Communications, Inc. v. Commissioner*,
    12 F.3d 1005 (10th Cir. 1993) ........................................................................9

*Thyssenkrupp Safway, Inc. v. Tessa Structures, L.L.C.*,
    2011 U.S. Dist. LEXIS 71755 (E.D. Va. July 5, 2011)...............................26

*United States v. Slade*,
    980 F.2d 27 (1st Cir. 1992).............................................................................8

*Vienna Metro L.L.C. v. Pulte Home Corp.*,
    No. 1-10cv-00502 (E.D. Va. Aug. 24, 2011) ..........................................23, 24

iv

*Wells Fargo Bank, N.A. v. Walls*
    No. 1:12-cv-664, 2013 U.S. Dist. LEXIS 57415
    (E.D. Va. 2013)............................................................24, 25

*Wheatley v. Wicomico County*,
    390 F.3d 328 (4th Cir. 2004) .......................................8, 9

*Williams v. Professional Transp. Inc.*,
    294 F.3d 607 (4th Cir. 2002) ..........................................8

*Wright v. Southwest Airlines*,
    319 Fed. App'x 232 (4th Cir. 2009) ...............................9

## STATUTE:

28 U.S.C. § 1920 ...............................................................3

## RULE(S):

Fed. R. Civ. P. 26(a)(1).....................................................24

Fed. R. Civ. P. 26(f).........................................................36

Fed. R. Civ. P. 30(b)(6).....................................................40

Fed. R. Civ. P. 54(d)(1)..................................................3, 11

Fed. R. Civ. P. 54(d)(2)......................................................3

Fed. R. Civ. P. 69 ...........................................................20

# I.    STATEMENT OF ISSUES

The appeal of Appellants Best Medical International, Inc. and Best Vascular, Inc. (collectively, "Best") presents just one issue:

Did the District Court abuse its discretion in awarding EZN its reasonable attorneys' fees and costs as the prevailing party where EZN sought only its fees and costs associated with its successful defense of Best's claims below and on appeal, its work on its original and supplemental fee petitions in the District Court, and its efforts to collect its judgment from Best?

The answer to that question is a resounding "no."

# II.    COUNTER-STATEMENT OF FACTS

In 2006, Best assumed all the liabilities of its predecessor, Novoste Corporation ("Novoste"), under a Source Manufacturing Agreement ("SMA") with AEA Technology-QSA GmbH ("QSA"). (APP68-122.)  These liabilities included an obligation to decontaminate and decommission certain Production Lines in Braunschweig, Germany that were built and used to manufacture sealed sources for Novoste.  Best breached the SMA by failing to complete the decommissioning of the Production Lines.  QSA sued Best in the District Court, and that litigation resulted in a Settlement Agreement, dated April 16, 2008, in which Best reaffirmed its promise to decontaminate and decommission the Production Lines within a one-

1

year period ("the D&D Obligation"). (APP55-66.)  Best breached the Settlement Agreement by failing to timely complete the D&D Obligation.

EZN is the successor-in-interest to QSA.   The Settlement Agreement provided that, if Best failed to complete the D&D Obligation, EZN could undertake that obligation at Best's expense. (APP56-57.)  Thus, EZN gave notice and began this work in early 2010.

The work was barely started when Best filed a lawsuit in the District Court requesting a temporary restraining order, and preliminary and permanent injunctions, to stop EZN's progress in Germany. (APP39-53.)  Best also sought more than $8.2 million in damages from EZN to replace the defunct Production Lines that it had never used.  EZN filed a compulsory Counterclaim against Best for fraud, breach of contract, and for declaratory relief. (APP214-26.)

Within 8 days of filing its Complaint and *ex parte* applications for emergency relief, the District Court denied Best's request for a temporary restraining order and for a preliminary injunction.  And, after nearly a year of costly litigation, the District Court granted EZN summary judgment on the balance of Best's claims. (APP240-57.)  The District Court dismissed EZN's claims on summary judgment as well, although it granted to EZN the most important part of its request for declaratory relief:  a finding that Best had breached the Settlement Agreement. (*Id*.)  The District Court also found that EZN could pursue its damages

2

resulting from Best's breach in an arbitration action once the D&D was completed. (*Id.*)

EZN filed a motion for attorneys' fees and costs as the prevailing party under Paragraph 13 of the Settlement Agreement and Federal Rule of Civil Procedure ("Rule") 54(d)(2), seeking $584,735.08 in fees and $32,892.61 in nontaxable costs. (APP259-89.)  EZN sought only those fees and costs incurred in the defense of Best's claims, voluntarily reducing its gross fees by over 7%. (APP287.)  EZN supported its fee petition with the affidavit of Sean F. Murphy, a commercial litigation partner in McGuireWoods' Tyson's Corner officer, who opined that the rates and hours charged by EZN's lawyers in the litigation were reasonable.  (APP455-62.)  EZN also filed a Bill of Costs which requested an additional $14,845.70 in taxable costs pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920.  Best never opposed EZN's Bill of Costs.

Best also filed a Motion for Attorneys' Fees, based solely on the premise that it had some success in defending against EZN's compulsory Counterclaim. (SUPPAPP1-8.)  Best did not support its fee petition with the affidavit of an independent expert, although it did attempt to buttress its petition with affidavits from Best's litigation counsel, Susan R. Salen of Rees Broomes, P.C., and from its in-house lawyer and current counsel on appeal, James Brady.  (SUPPAPP9-68 ¶ 14.)

3

On January 6, 2012, the District Court denied Best's fee petition, found EZN to be the sole prevailing party, and awarded it $617,627.69 in fees and costs, the precise amount sought by EZN. (APP586-89.) The District Court made no additional reductions to EZN's fees, finding "no duplication involved over and above the effort to defend itself against the claims in the case." (APP589.)

Best appealed the District Court's dismissal of its claims, the District Court's refusal to grant Best its attorneys' fees, and the award of fees to EZN. (APP675-76.) EZN cross-appealed some of the District Court's rulings on its Counterclaim, which was consolidated with Best's appeals. (APP677-78.)

Because Best did not – or could not – post a supersedeas bond, EZN began efforts to collect its judgment, even while the first appeal proceeded.[1] Best attempted to frustrate these efforts at every turn, arguing that EZN could not collect its judgment while simultaneously pursuing a cross-appeal. (APP590-650;

---

[1] EZN knew that it had to move decisively and quickly towards satisfaction of its judgment. Wells Fargo had already obtained a confessed judgment against BMI in the Circuit Court for Fairfax County, Virginia in excess of $12 million, a judgment that Best challenged repeatedly through a series of meritless lawsuits in the District Court below. *Best Medical International, Inc. v. Wells Fargo Bank, N.A.*, Case No. 1:10-cv-988 (remanded to Fairfax County Cir. Ct.); *Best Medical International, Inc. v. Wells Fargo Bank, N.A.*, Case No. 1:11-cv-1277; *Best Medical International, Inc. v. Wells Fargo Bank, N.A.*, Case No. 1:12-cv-957; *Best Medical International, Inc. v. Wells Fargo Bank, N.A.*, Case No. 1:13-cv-378. In addition, when Wells Fargo hired a third party to collect its judgment from Best's creditors, Best asserted frivolous claims against that company in the District Court as well. *Best Medical International, Inc. v. Receivables Control Corp.*, Case No. 1:12-cv-875. Those claims were quickly dismissed.

4

APP738-49.)  When the District Court correctly overruled Best on this score, Best made an unsuccessful plea for relief in this Court. (APP754.)  All told, Best filed 12 motions and supporting briefs in these two courts trying to disrupt EZN's collection efforts, all of which EZN had to contest. (APP651-70; APP750-52.)

After garnishing a small portion of its judgment from one of Best's bank accounts, EZN sought discovery of Best's assets pursuant to Rule 69.  Best resisted this effort by filing a motion to quash in the District Court on grounds that the federal rules did not apply to the collection of EZN's judgment. (APP756-62.)  The Magistrate Judge promptly denied Best's motion, ordering Best to answer all of EZN's written discovery and to produce its corporate representatives and its president and sole shareholder, Krishnan Suthanthiran, for deposition. (APP889.)  Best's document production, which was lacking in many respects, revealed that Best was hurriedly depleting all of its cash accounts and diverting income to nonfunctional sister companies outside the Commonwealth. Cornered and thoroughly beaten, Best agreed to pay the full amount of the judgment into the trust account of EZN's counsel on the Friday before the Monday on which Best's depositions were to begin.[2]   Thus, while EZN was victorious in collecting this

---

[2] Throughout this post-judgment discovery and collection phase, Best repeatedly assured EZN that it would post a supersedeas bond.  EZN did not believe Best, and of course, Best never followed through on its promises.

5

judgment, these efforts took 7-1/2 months and cost EZN $75,000 in fees. (APP981 ¶ 9.)

After full briefing and oral argument, this Court, on January 22, 2013, affirmed the District Court's dismissal of both parties' claims on summary judgment. (APP891-901.)  The Court also affirmed the District Court's finding that Best breached the Settlement Agreement and that EZN was the prevailing party and thus entitled to its reasonable fees and costs incurred in this lawsuit. (*Id*.)  The Court, however, vacated the District Court's award of fees and costs and remanded the case to the District Court for "further analysis that takes into account the applicable Johnson factors."  (APP899.)

On remand, EZN submitted a Motion for Supplemental Fees and Costs comprising EZN's fees and costs incurred since October 2011, the cutoff date for EZN's original fee petition. (APP902-28.)  On April 29, 2013, the District Court issued a 17-page Memorandum Opinion granting anew EZN's original fee petition and its supplemental petition. (APP1112-28.)   In keeping with this Court's mandate, the District Court analyzed EZN's petitions in light of each of the 12 *Johnson* factors, and awarded EZN $893,771.64 in fees and $55,249.76 in expenses.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The District Court entered an Order that same day granting these fees and costs.  (APP1129.)  On May 3, 2013, the  District Court vacated the April 29, 2013

6

Order and entered a new Order reducing the fees awarded to $871,414.49 to account for a mathematical mistake in the District Court's earlier calculation. (APP1130.)  The District Court's award of costs did not change.

Best now appeals from that May 3, 2013 Order. (APP1131.)

### III.    SUMMARY OF ARGUMENT

Best has to show that the District Court abused its discretion in determining the amount of fees and costs to award EZN as the prevailing party in this lawsuit. Best simply cannot meet this burden.  This is because the District Court carefully weighed all 12 of the *Johnson* factors, and then settled on 5 of those factors that justified EZN's fee request.  The District Court took great pains to detail in a written memorandum opinion the facts and legal authorities that supported its decision, giving just consideration to each of the arguments for reduction made by Best.

The primary theme of Best's attack is one of belittlement.  Belittlement of the complexity of the case and the amount in controversy.  Belittlement of EZN's accomplishments at each stage of this lawsuit.  Belittlement of the necessary work undertaken by EZN's lawyers.  And ultimately belittlement of the District Court's effort to discharge its duty under the law and this Court's mandate to determine a reasonable fee award for EZN.

Best's attacks fail.  The District Court's fee award to EZN for winning this lawsuit should be upheld in every respect.

## IV.   ARGUMENT

## A.   BEST AGAIN IMPERMISSIBLY INTRODUCES NEW EVIDENCEAND ARGUMENTS ON APPEAL THAT WERE NEVER PRESENTED TO THE DISTRICT COURT.

As with its first appeal, Best continues to use this Court as a sounding board for new arguments, or old arguments packaged around new evidence.  This is not a proper use of this Court's limited review power.

For example, Best argues now that the District Court abused its discretion by awarding EZN its full hourly rate for travel time, an argument it never raised below.  (*See* Opening Brief of Plaintiffs-Appellants at 51, Aug. 22, 2013.)  Best also contends for the first time that EZN should not be awarded fees for successfully fending off Best's request for a temporary restraining order because this was not a "claim" made by Best.  (*Id.* at 20.)

Arguments "raised for the first time on appeal 'are generally not considered absent exceptional circumstances.'"  *Wheatley v. Wicomico County*, 390 F.3d 328, 334-35 (4th Cir. 2004) (quoting *Williams v. Professional Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002)); *see also United States v. Slade*, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals").  Likewise, the Court

of Appeals "does not consider evidence that was not before the district court." *Wright v. Southwest Airlines*, 319 Fed. App'x 232, 234 n.2 (4th Cir. 2009). This Court has recognized that it "cannot assume the functions of a special master and roam at large over the record . . . and any attempt on its part to do so would probably do a great deal more harm than good." *Wheatley*, 390 F.3d at 335 (quoting *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939)). The Court came to this conclusion for "obvious" policy reasons: "respect for the lower court, an avoidance of unfair surprise to the other party, and the need for finality in litigation and consideration of judicial resources." *Wheatley*, 390 F.3d at 335) (quoting *Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993) (internal citations omitted)).

Best's effort to obtain reversal of the District Court's reasoned judgment by relying on evidence and arguments never presented to the District Court is improper and should be rejected by this Court. This Court should confine Best to the materials on which it relied and the arguments it made below.[3]

---

[3] Similarly, Best's challenges to EZN's first fee petition should be limited to those arguments Best made in the District Court at that time. Best not only raised such arguments in its formal response to EZN's petition, but used its reply brief in support of its own fee petition to raise additional arguments contesting EZN's motion. Thus, Best had two opportunities to preserve issues in the District Court regarding EZN's original fee petition.

9

**B.    THE DISTRICT COURT PROPERLY APPLIED THE *JOHNSON* FACTORS IN AWARDING EZN ITS REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN DEFENDING AGAINST BEST'S CLAIMS.**

**1.    <u>Applicable Law and Standard of Review</u>.**

In determining the fees and costs to award, the District Court is required to undertake a three-step analysis.   First, the District Court must determine the lodestar amount, calculated by multiplying a reasonable hourly rate by the hours reasonably expended in the litigation effort.   *Robinson v. Equifax Info. Servs., L.L.C.*, 560 F.3d 235, 243 (4th Cir. 2009).   The law affords the District Court discretion in deciding the amount of fees and costs to award.   Nonetheless, the "district court's discretion should be guided by the following twelve factors" in arriving at the lodestar:

> (1) the time and labor required; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44 (relying on *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)) (internal quotations & citation omitted).   After determining the lodestar amount, the district court then "subtract[s] fees for hours spent on

10

unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244. The Court may "then award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the [prevailing party]." *Id.* (internal quotations & citation omitted).

Because this Court has already affirmed the District Court's finding that EZN prevailed in this lawsuit, and because Best never challenges EZN's hourly rates, the District Court had only one question to answer: were the hours expended by EZN to defend against Best's claims reasonable? *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see also Ellis v. Grant Thornton L.L.P.*, 434 Fed. App'x 232, 235 (4th Cir. 2011) (discussing Fed. R. Civ. P. 54(d)(1)); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) ("As with any exercise of discretion by the district court, when it is within the bounds of the discretion conferred, [an appellate court] may not question it."). The District Court in this case concluded that they were.

Once the District Court made this decision, its award can only be reversed if the District Court abused its discretion in arriving at it. *Grissom*, 549 F.3d at 320 (holding that the Circuit Court's review of a district court's award is "sharply circumscribed . . . because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered." (internal citations omitted)).

11

Here, the District Court properly exercised its discretion and awarded all those fees and costs requested by EZN that it expended in the defense of Best's frivolous claims.  Of course, the District Court looked closely at EZN's fee request.  It had too, not only because that is what the law requires but because this Court specifically instructed the District Court to make this analysis in light of the *Johnson* factors.  The District Court followed precisely this Court's instructions and its award should be affirmed in every respect.

2.    **The Hours Expended by EZN Defending Against Best's Meritless Claims Are Reasonable**.

a.    **The time and labor invested by EZN justify its fee award.**

The District Court properly held that EZN's attorneys spent an appropriate number of hours in meeting the claims -- and later the obstacles -- thrown at EZN by Best.  For over 3 years, Best has engaged in trench warfare against EZN in the District Court and twice now in this Court.  No one contests Best's right to litigate aggressively, but if it loses, Best must pay for EZN's response to that aggression. *JP v. County Sch. Bd.*, 641 F. Supp. 2d 499, 522 (E.D. Va. 2009) ("HCPS mounted an exceedingly aggressive defense, contesting almost every point.  As noted in *Saleh*, a litigant may choose to defend a case in this fashion and pay its counsel for so doing.  However, if that litigant loses the case and it is prosecuted under a fee-shifting statute, the litigant must be prepared to pay for the plaintiff's reasonable and necessary response to the aggressive defense." (internal citations omitted)).

12

Best maintains this aggressive posture even in this appeal, contesting even some of the most basic tasks EZN's counsel undertook to win this case. Best complains that the District Court should not have awarded fees for reviewing materials from the QSA Litigation because EZN's attorneys were already familiar with the QSA Litigation and because it was irrelevant to the claims made in this lawsuit. Best is wrong on both counts.

First, none of EZN's attorneys were involved in the QSA Litigation.[4] Second, and more importantly, many of the issues in this lawsuit arose out of the prior litigation. In fact, Best's breach of its decommissioning obligation spawned both suits. Best made the SMA the second exhibit to its Complaint, acknowledging the many ties between the QSA Litigation and this lawsuit. Both parties to the QSA Litigation disclosed experts and produced expert reports regarding the cost to decontaminate and decommission the Production Lines. The value of these lines comprised the lion's share of Best's damages in this lawsuit. Krishnan Suthanthiran, Best's president, was deposed in the QSA Litigation, as was Best's assistant general counsel, Shawn Weingast, who was BMI's corporate representative in this case. Although the parties agreed not to reproduce

---

[4] Best alleges in its Opening Brief that Christine Pollard was "counsel of record" for QSA in the prior lawsuit. This is plainly untrue, as is evident from the docket for that case on PACER. The former law firm, Dewey & LeBeoeuf LLP, represented QSA in both the District Court and, very briefly, in this Court. Ms. Pollard has a long history with EZN, QSA's successor, not QSA.

documents generated in the QSA Litigation, Best's counsel apparently discarded hundreds of pages of documents and requested their reproduction by EZN.

Thus, the need for EZN's lawyers to know the QSA Litigation was a demand, not a luxury.[5]  The District Court properly recognized that fact in awarding EZN's fees.

Further, some absorption of the facts from the prior lawsuit had to happen immediately.  Best filed its Complaint, along with a Motion for Temporary Restraining Order and Motion for Preliminary Injunction, on June 3, 2010.  EZN's attorneys had to get up to speed sufficiently to prepare a responsive brief (with supporting affidavits) opposing Best's motions, and to be able to cross-examine witnesses and put on affirmative evidence at a hearing noticed by Best on June 11, 2010.  EZN won that hearing with 8 days' notice, a victory that Best now attempts to diminish.  Yet Best's efforts to restrain EZN from removing Best's defunct Production Lines from its facility were at the heart of Best's lawsuit.  And it lost the ability to halt that work right out of the gate.

---

[5] Best's lawyers also knew the importance of being on top of the prior lawsuit, even though Rees Broome, Best's trial counsel in this case, represented Best in the QSA Litigation.  This is evident from Rees Broome's own invoices, which Best produced to EZN when it was pursuing its own fee petition.  On November 22, 2010, Maureen Carr, Best's lead associate on the case, billed two hours, at $240.00 per hour, for the following work:  "Research available remedies for fraudulent inducement claim; *analyze liability of BMI for value of prior litigation; research admissibility of D. Hall deposition transcript from prior action in this action*."  (SUPPAPP25) (emphasis added).

14

EZN's lawyers also had to invest a substantial number of hours in discovery to disprove Best's claims. This was necessary in large part because Best's lawsuit was <u>not</u> a garden variety breach of contract suit. Virtually all of Best's claims and defenses in this action were based on alleged oral agreements, outside the four corners of the Settlement Agreement, between Best and QSA, or their respective counsel. Best's first cause of action for equitable estoppel alleged that the parties agreed, contrary to the Settlement Agreement, that Best had an unlimited time to complete the D&D Obligation. Best's second cause of action – that EZN "willfully and intentionally" refused to cooperate with Best in the decommissioning of the Production Lines -- necessarily created significant fact discovery into the nature and motive of EZN's actions, and those of its predecessor, QSA. Best's third cause of action, that EZN breached the Settlement Agreement by refusing to refund money to Best because of sources produced by QSA, rested on technical specifications set forth in the SMA, not the Settlement Agreement.

Because of the many issues presented by Best's claims, EZN's attorneys spent several days deposing Best's corporate representatives and other fact witnesses, as well as defending EZN's own deponents. Each side disclosed two experts. Best disclosed Craig Reed, BVI's Radiation Safety Officer and Director of Radiation Science, to opine that sources supplied by QSA fell below

15

specification.  This issue alone opened many avenues of research and inquiry by EZN's lawyers.  Further, Best disclosed Dr. Eberhard Fritz, a German physicist who held one of the design patents on the Production Lines, as its damages expert.  This mandated intense study from EZN's lawyers in preparation for Dr. Fritz's deposition.  Near the end of the lawsuit, Best served 98 requests for admission, supported by over 400 pages of documents.  (APP459.)  Many of these requests dealt with issues and documents produced in the QSA Litigation.

Although the Court eventually dismissed all claims on summary judgment, this did not occur until two weeks before a multi-day jury trial was to commence on April 25, 2011.  Therefore, EZN's attorneys had to spend dozens of hours in trial preparations because of the possibility that all or some claims would survive.  For example, both sides were required under the scheduling order to submit witness and exhibit lists, and to file objections, well before the summary judgment hearing.  In addition, any motions *in limine* required of EZN had to be filed on April 15, 2011, the Friday following the summary judgment hearing, so that they could be heard before trial.  Therefore, these motions had to be well underway before the summary judgment hearing.  In fact, both sides had already filed motions *in limine* that had been ruled upon by the District Court.  EZN won its motion to limit the testimony of Best's expert, Craig Reed; Best lost its motion to exclude the damages testimony of Joseph Hathcock.  Jury instructions were also

16

due on the Friday following the summary judgment hearing, thus necessitating substantial time and effort to that endeavor.[6]

After the District Court made its initial award of fees to EZN, EZN had to defend against appeals by Best on the merits and on the fee award. The outcome of both of those appeals was successful, resulting in this Court's affirmation of a Best default and EZN's status as the prevailing party.

Best also fiercely defended against EZN's collection efforts, first taking the position that EZN could not collect its fee award while prosecuting a cross-appeal, then arguing that EZN was not entitled to any discovery into Best's assets under the federal rules. The Magistrate Judge found Best's stance on all these issues meritless. Best eventually caved out of desperation and paid the judgment to EZN, but only after delaying for 7-1/2 months and increasing EZN's attorneys' fees by $75,000.

EZN's lawyers, of course, also had to spend numerous hours preparing two substantial fee petitions. In both instances, these petitions were supported by lengthy affidavits from Mr. Lonas, lead counsel for MRC, and Ms. Pollard. They were buttressed by substantial affidavits from Sean F. Murphy, EZN's expert witness. EZN also spent several hours preparing and supporting its successful Bill

---

[6] Rees Broome's invoices show that Best's lawyers began work on jury instructions as early as March 24, 2011, a full month before trial. (SUPPAPP34.)

17

of Costs.  Further, EZN had to contest Best's ill-fated fee petition.  Thus, while the total price for the first round of fee petition work was approximately $56,000, $15,000 of this amount was spent defending against Best's petition.

The District Court found that the time and labor expended by EZN's lawyers to be appropriate for the complexity of the case.  The District Court was correct and its finding should be affirmed by this Court.

> ### b.    The amount in controversy and the results obtained justify the fee award.

The District Court also found that the stakes in this litigation and the positive results achieved by EZN's counsel further justified the fee award.  The District Court was right.

Best attempts to devalue the significance of this lawsuit, but it spoke far differently when it was trying to justify its own fee award:

> 12.    Plaintiffs are entitled to the entire amount of their legal fees in this matter because this was a *complex litigation* with *numerous issues* which required significant discovery, numerous depositions, and significant motion practice to prosecute and defend. Specifically, Plaintiffs were required to answer numerous interrogatories and requests for admission propounded by Defendant that were related to their counterclaim on which Plaintiffs prevailed as well as produce hundreds, if not thousands, of pages of emails and other documents in response to Defendant's requests for production. In order to defend against Defendant's counterclaim, Plaintiffs took the depositions of Helmut Menuhr, Hugh Evans, Joseph Hathcock, Fritz Hohn and Michael Cowley, M.D.

13.    While this case did not involve any novel legal issues, ***the issues presented were complex*** which necessitated extensive written discovery and oral depositions to determine the facts.

(SUPPAPP4.)

In truth, much was in play for both sides in this lawsuit. Best, of course, initiated this litigation – a fact it conveniently fails to mention. And it did so to try to stop EZN's important cleanup work in Germany and to obfuscate the unmistakable fact that Best breached its obligation to complete this work in a timely manner. Best failed to obtain any injunctive relief against EZN, although it pursued such relief until the conclusion of the lawsuit. Had it succeeded, EZN would have forfeited hundreds of thousands of euros in cleanup costs and government fees, while being forced to house Best's waste in its valuable manufacturing space instead of using it to produce goods for other paying clients. In addition to injunctive relief, Best demanded more than $8 million in damages from EZN, representing the alleged replacement cost of the Production Lines, and another 100,000 euros for sources Best alleged were of poor quality. The amount of damages sought by Best is substantial for a company of any size, and a judgment of this magnitude was potentially crippling to EZN.

EZN's lawyers not only successfully prevented Best from obtaining injunctive relief and damages, but managed to obtain a finding that Best breached the Settlement Agreement. This is key because is sets the stage for EZN's

19

recovery of its cleanup costs and loss of use damages in an arbitration proceeding once it finishes the D&D Obligation.

The District Court recognized the degree of success enjoyed by EZN in this high-stakes litigation, and appropriately relied on this fact in awarding EZN its reasonable fees and costs.

### c.    Opportunities lost by EZN's attorneys justify the fee award.

In June 2012, just as EZN's attorneys were gearing up for an 8-day jury trial for one of MRC's anchor clients, Best filed a meritless motion to quash post-judgment discovery authorized under Rule 69.  EZN's lawyers could not simply ignore Best's stall tactics:   Best was rapidly depleting its cash accounts and diverting receivables to nonoperational sister companies.  Time was of the essence if EZN was to protect the value of its judgment.

During the month of June, Mr. Lonas was forced to redirect 20 hours of his pretrial preparations to this lawsuit.  Mr. Hundley spent another 7.4 hours in this endeavors.  All of these hours could have been used preparing for trial, but were not.  Moreover, because Best eventually paid the judgment – after losing its motion to quash – none of the hours wrangling with Best were necessary or productive.

Accordingly, the District Court was correct in concluding that opportunities missed by EZN's lawyers because of Best's meritless efforts to avoid post-judgment discovery served to justify EZN's fee award.

20

### d.    Ms. Pollard's longstanding relationship with EZN justifies the fee award.

As the District Court pointed out in its Memorandum Opinion, Ms. Pollard enjoys a long-standing relationship with EZN's parent company, having represented this client in numerous cases over the past 13 years. Her role was pivotal in this lawsuit because she had instant credibility and ability to communicate with fact witnesses and decision makers at EZN. Ms. Pollard's familiarity to the client reduced communication time and allowed EZN's counsel to keep up with the hectic pace of litigation in the Eastern District of Virginia.

The District Court properly considered the longevity of Ms. Pollard's relationship with EZN as a factor that justified EZN's fee request. The District Court's finding on this score should be affirmed.

### e.    Awards in similar cases, and the fees paid by Best to its own outside counsel, justify the fee award to EZN.

The District Court found further support for its award by comparing EZN's request to fee awards in other contract cases in the District, finding that awards "ranged from $84,500 to $1,139,843.60 and beyond." (APP1122-23.) The District Court then cited the two cases, *Cynergy Systems* and *Signature Flight*, that constituted the low and high ends of this range. *Cynergy Sys, Inc. v. Weaver Group, Inc.*, No. 1:12cv498, 2012 U.S. Dist. LEXIS 159103 (E.D. Va. 2012);

*Signature Flight Supp. Corp. v. Landow Aviation Ltd.*, 730 F. Supp. 2d 513, 513 (E.D. Va. 2010).

Best seizes on the District Court's citation of these two cases to argue that the District Court relied on only "two cases in support of its finding that the attorneys' fees in this case are reasonable." (Best's Opening Brief at 40.) This is a clear misreading of the District Court's language. The District considered numerous awards entered by the various courts within the District, thus its reference to a "range[]" of awards. (APP1122-23.)

The District Court was correct in its assessment of EZN's fee award. As the District Court noted, comparison of one breach of contact case with another is fraught with difficulty because "awards in breach of contract cases vary greatly." (APP1123.) Nonetheless, the District Court found that "[l]arger awards have been granted in <u>similar</u> breach of contract cases"; therefore, "[t]his factor justifies the fee request." (*Id*. at 12) (emphasis added). Specifically, the District Court relied on *Signature Flight*, which awarded $1,329,486.70 in attorneys' fees and costs to the prevailing party. 730 F. Supp. 2d 513. The plaintiff in *Signature Flight*, like EZN in this case, did not recover damages for its breach of contract claim, but was found to be the prevailing party because it achieved overall success in the litigation. *Id*. at 519.

22

A recently unsealed opinion in *Vienna Metro L.L.C. v. Pulte Home Corp.* lends further support to the District Court's analysis. *Vienna Metro L.L.C. v. Pulte Home Corp.*, No. 1-10cv-00502 (E.D. Va. Aug. 24, 2011) (ECF No. 263), attached in Addendum.[7] *Vienna Metro*, like this case, was a breach of contract case in which the defaulting party "rarely conceded any issues throughout the lengthy process of litigation." *Id.* After a year of litigation and a four-day bench trial, Vienna Metro obtained a judgment that required Pulte to specifically perform under the contract, but denied Vienna Metro any damages. The District Court, on Vienna Metro's request, then awarded $4,137,345 in attorneys' fees, which included a voluntary reduction of 10% from the lodestar amount.

The procedural complexity of *Signature Flight* and *Vienna Metro* also compares favorably with this case, as evidenced by the number of docket entries in those cases. The *Signature Flight* docket comprises 293 entries; the docket in *Vienna Metro*, 263. The volume of these dockets, like the 287 docket entries in this case, reflect significant motions practice and pretrial discovery.[8] *See* Order on

---

[7] At the time of the District Court's ruling on EZN's fee petitions, Judge Lee's opinion in *Vienna Metro* remained under seal. A petition to lift the seal was later granted.

[8] These are the number of docket entries existing at the time the District Court entered its April 29, 2013 Order granting fees and costs to EZN. The consolidated appeals litigated in this Court in 2011 and 2012 generated an additional 67 docket entries.

23

Motion for Attorney Fees, *Signature Flight*, No. 1:08cv00955 (E.D. Va. July 30, 2010) (ECF No. 293); Mem. Op. & Order, *Vienna Metro*, No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011) (ECF No. 263); (APP1112).

This case is a far cry from any of the "simple breach of contract" cases cited for comparison by Best. The most glaring example of dissimilarity can be found in *Wells Fargo Bank, N.A. v. Walls*, which ended when the District Court granted summary judgment to Wells Fargo for breach of a promissory note against a *pro se* defendant. No. 1:12-cv-664, 2013 U.S. Dist. LEXIS 57415 (E.D. Va. 2013). The defendant in that case did not even oppose the bank's 7-page motion for summary judgment, thus making the matter of liability a non-issue. *Id.*

*Sandbeck v. Reyes*, another case cited by Best, concerned a straightforward claim for breach of a real estate purchase agreement. No. 1:11cv0761, 2010 U.S. Dist. LEXIS 54068 (E.D. Va. 2012). The plaintiff in that case prayed for damages of less than $190,000, and did not ask for a temporary restraining order or injunctive relief. The plaintiff's entire 26(a)(1) disclosures apparently consisted of the four exhibits attached to her Complaint. No evidence exists in the record that either side took a single deposition or served written discovery. The plaintiff obtained a monetary judgment, but no appeal was taken by either party. The plaintiff then filed a fee petition, but the defendant did not oppose it. Five weeks

after the District Court awarded fees to the plaintiff, the defendant paid both judgments. The case thus concluded after 10 months and only 44 docket entries.

In fact, the dockets for all the cases cited by Best show that these matters were substantially less complex than this case. Order on Mot. for Attorneys' Fees, *Textron Fin. Corp. v. AIC of Manassas, Inc.*, No. 1:09-cv-1202 (E.D. Va. July 23, 2010) (ECF No. 80) (including **79 docket entries** prior to Memorandum Opinion and Judgment on attorneys' fees); Order on Mot. for Attorneys' Fees, *Thyssenkrupp Safway, Inc. v. Tessa Structures, L.L.C.*, No. 1:10-cv-512 (E.D. Va. July 5, 2011) (ECF No. 60) (including **59 docket entries** prior to Memorandum Opinion and Order on attorneys' fees); Order on Mot. for Attorneys' Fees, *Walls*, No. 1:12-cv-664 (E.D. Va. Mar. 4, 2013) (ECF No. 64) (including **63 docket entries** prior to Memorandum Opinion and Order on attorneys' fees); Order on Mot. for Attorneys' Fees, *Auto Fin. Corp. v. EEE Auto Sales, Inc*., No. 1:10-cv-1407 (E.D. Va. Aug. 3, 2011) (ECF No. 109) (including **108 docket entries** prior to Memorandum Opinion and Order on attorneys' fees). By contrast, at the time the District Court awarded EZN its attorneys' fees and costs, there had been **176 more docket entries** than any case cited by Best.

Further, none of the cases cited by Best indicate that any significant written discovery was conducted. *See Walls*, 2013 U.S. Dist. LEXIS 57415, at *19 (noting that defendant failed to "meet any of her discovery obligations or to respond to any

… discovery requests); *Thyssenkrupp Safway, Inc. v. Tessa Structures, L.L.C*, 2011 U.S. Dist. LEXIS 71755, at *10 (E.D. Va. July 5, 2011) (noting that plaintiff "Safway did not propound discovery"). Likewise, no evidence exists that a single deposition was taken in any of the cases cited by Best. Finally, none of cases involved any appeals, much less the three consolidated appeals present in this case. In sum, none of the cases cited by Best are at all illustrative of what a reasonable award should be in this case.

Without any appropriate comparisons for this case, Best is left with simply its gut feeling that the fees awarded in this case are too much. But no more apt resource exists for disabusing that feeling than the invoices generated by Best's own outside counsel, Rees Broome. Rees Broome's invoices were the centerpiece of Best's own fee petition. Those invoices show that Best was paying as much as EZN – if not more – in attorneys' fees to Rees Broome. And these were fees incurred in pursuing losing claims.

Best produced to EZN only 7 months of invoices from Rees Broome, and the invoice for one of those months was heavily redacted. Nonetheless, as reflected in the table below, in these 7 months alone, Rees Broome billed Best $211,546.50 for 694.3 hours of work.

| Date | Hours | Fees |
|---|---|---|
| October 2010 | 54.9 | $ 14,991.00 |
| November 2010 | 26.9 | 7,930.00 |
| December 2010 | 113.5 | 33,974.00 |
| January 2011 | 142.6 | 46,115.00 |
| February 2011 | 125.4 | 42,585.00 |
| March 2011 | 183.6 | 52,513.50 |
| April 2011 | 47.4 | 13,438.00 |
| **TOTALS** | **694.3** | **$211,546.50** |

(SUPPAPP13-79.)

The fees and costs awarded to EZN, by contrast, cover 33 months, from June 2010 through March 2013 – nearly 5 times the period of time covered by Rees Broome's bills. They include substantial hours devoted to EZN's two fee petitions, and the successful defense of Best's petition. They include hundreds of hours successfully defending against Best's two appeals. They include 7 months of delay and asset-hiding by Best as EZN attempted to collect its hard-earned judgment. Had Rees Broom been required to participate in these endeavors as EZN's counsel did, its fees in this case would no doubt have been exponentially higher than the amount billed in the 7 months disclosed to EZN.

27

Best cannot discharge its burden of challenging the District Court's fee award simply by locating a few lower fee awards or expressing shock at the amount of EZN's legal fees. Best must show that the District Court abused its discretion in the amount it awarded *in this case*, given its substantive and procedural complexity, and longevity.

The District Court provided substantial justification for EZN's fee award by looking to fee awards in other similar cases. Best's own fee invoices provide perhaps even greater justification. The District Court's finding in this respect should be affirmed.

3.  **The District Court Correctly Found that No Further Reduction Was Necessary to EZN's Fees Because EZN Had Already Exercised Billing Judgment in Reducing Its Gross Fee Request.**

EZN did not score a sweeping victory in this case. It never alleges it did. EZN, however, did prevail on the core issue of who breached the Settlement Agreement. Despite EZN's victory on this fundamental issue, EZN reduced its fees associated with its first fee petition by $38,255.60, or over 7% of its gross fees in the case. (APP287.) This reduction accounted for EZN's fraud claim, which was dismissed on summary judgment, and its unsuccessful motion to compel. It also included many thousands of dollars in fees generated in litigation avoidance, for valuable work undertaken by non-core timekeepers, and for time spent by

associates at hearings handled by Mr. Lonas, even though none of these reductions were required. (*Id*.)

EZN's reduced the gross fees associated with its supplemental fee request by 11%. (APP987.) These reductions primarily represented hours spent on EZN's cross-appeal, although EZN also voluntarily made a number of other deductions in an exercise of sound billing judgment. EZN's reductions were supported by its expert, Sean F. Murphy. (APP985.) Because the District Court found these reductions reasonable, it did not see the necessity of making others.[9] (APP1127.)

Best argues that the outcome of the case required that EZN make deeper cuts into its fee request. However, prevailing law does not require that EZN make reductions for unsuccessful claims unless they are ***unrelated*** to claims on which EZN succeeded. *Robinson*, 560 F.3d at 244. Thus, EZN was not obligated to discount for its "letter of credit claim," as Best calls it. EZN's contention that Best breached the Settlement Agreement first by failing to obtain a performance bond, or a sufficient letter of credit, was part and parcel of EZN's successful defense of Best's breach of contract claim. Both this defense and Best's claim, therefore, were united by a common nucleus of facts defined by Best's performance under the Settlement Agreement.

_____

[9] Despite these reductions, Best attempts to argue that EZN still received 100% of the fees it incurred in this case. This is plainly wrong, as the invoices from EZN's attorneys demonstrate.

Moreover, even if additional time entries could have been allocated to some unsuccessful portion of EZN's Counterclaim, this is an issue that Best simply failed to raise this issue below. It has therefore waived its right to have this Court review it on appeal.

4. **None of Best's Attacks on the Reasonableness or the Necessity of the Work that Comprised EZN's Defense in This Case Demonstrates Any Abuse of Discretion by the District Court.**

Best did not structure its Opening Brief along the 12 *Johnson* factors that the District Court carefully analyzed in determining EZN's fee award. Thus, it is difficult for EZN to respond in an organized fashion to many of Best's arguments. Best, moreover, raises so many issues – many never raised below – that a point-by-point response would not be an efficient use of EZN's limited briefing space or this Court's valuable time. Nonetheless EZN wishes to the respond to the following points raised by Best not already addressed in this brief.

a. **The District Court did not abuse its discretion by compensating EZN for travel time at the attorneys' normal hourly rate.**

Best argues that EZN reaped a windfall by obtaining its full hourly rates for attorney travel time. (Best's Opening Brief at 51.) First, Best's contention is not properly before this Court because it never raised this issue below. Second, Best does not cite to any authority supporting the notion that the District Court abused its discretion by treating travel time exactly like any other attorney time billed to

30

the litigation effort.  In fact, courts in this Circuit have awarded fees for travel time at the full hourly rate.  *See e.g.*, *Hudson v. Pittsylvania County*, No. 4:11-CV-43, 2013 U.S. Dist. LEXIS 121930, at *20-21 (W.D. Va. Aug. 1, 2013) ("Based upon my knowledge and experience, it is reasonable for attorneys to bill their standard billing rate for necessary travel time to and from court hearings.  Consequently, I will not reduce Ms. Glenberg's billing rate for the hours spent on travel.").

Best's reliance on *Abusamhadaneh* is misplaced.  *Abusamhadaneh v. Taylor*, No. 1:11cv939, 2013 U.S. Dist. LEXIS 7451 (E.D. Va. Jan. 17, 2013).   In *Abusamhadaneh*, the Government challenged a fee request made by a plaintiff who prevailed on his claim under the Equal Access to Justice Act, in part because the plaintiff's counsel requested full hourly rates for travel time.  The District Court held that it was within its discretion to reduce the plaintiff's rate for travel, but the District Court made no such reduction, instead simply reducing the plaintiff's overall fee request by 10 percent to account for pervasive block billing.  Thus, *Abusamhadaneh* supports EZN's position, not Best's, because it holds that, even if Best had brought this issue to the District Court's attention, it had discretion not to reduce EZN's rates.

Best's own attorneys, of course, billed Best for travel time in precisely the same manner that EZN's attorneys billed EZN.  On February 15, 2011, Ms. Salen logged the following entry for her trip to take the deposition of Dr. Malcolm

Cowley in Richmond: "Travel to and take deposition of Dr. Cowley." (SUPPAPP17.) Ms. Salen billed this time as one 7-hour block at $350 per hour. (*Id.*)

Best, therefore, raises no factual or legal issue demonstrating that the District Court abused its discretion in awarding attorney travel time to EZN at the full hourly rate.

**b.    It was both reasonable and necessary for EZN's lawyers to communicate and collaborate during this lawsuit, and no reduction of EZN's fees is warranted for alleged duplication of effort.**

In its Opening Brief, Best also criticizes EZN's fee award on grounds that EZN's lawyers duplicated effort, therefore creating unnecessary fees. (Best's Opening Brief at 16.) First, Best never raised this issue in the District Court; therefore, it is not properly preserved for appeal. Second, Best's attacks on EZN's bills are wrong.

Best starts with the misguided notion that communication and collaboration among a team of lawyers must always equate to duplication. This is untrue. As the District of Columbia Circuit Court concluded, conferences among co-counsel are not only reasonable and necessary, but lend efficiency to the management of complex litigation. *See National Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337 (D.C. Cir. 1982) ("However, appellant challenges the allowance of hours spent by appellee's counsel conferring together about the case.

It was well within the District Court's discretion to allow this time on the theory that attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner.").

In this case, as EZN explained in its Reply Brief in Support of Its Motion for Supplemental Attorneys' Fees and Expenses, EZN's attorneys communicated to avoid duplication. (APP1061-62.) For example, Mr. Lonas and Mr. Hundley – the two primary MRC lawyers handling the case – often divided up portions of larger briefs that were required of EZN. (*Id*.) Once initial drafts were prepared, Mr. Lonas would wed the sections together and make the necessary revisions to create the most effective work product. (*Id*.) That revised draft would then be e-mailed for review and comment to Ms. Pollard, the senior-most member of the litigation team and the lawyer with the longest relationship with EZN. (*Id*.) Ms. Pollard's comments would then be incorporated into the final brief by either Mr. Lonas or Mr. Hundley. (*Id*.) Ms. Onder, the only paralegal on the team, would then locate and assemble the supporting materials for the brief, including deposition citations, discovery responses, or unpublished legal authority. This system thus called for contributions from all the core members of the litigation team that were best suited to their skills and billable rates. It did not, as Best charges, create inefficiency or duplication of effort.

33

In fact, this was precisely the way Best's outside lawyers operated, as is clear from Rees Broome's invoices. For example, Stephen Charnoff served as lead scrivener on Best's Opposition to EZN's Motion to Compel. (SUPPAPP31.) Mr. Charnoff researched the legal issues on March 4, 2011 and began drafting sections of Best's brief that day. (*Id.*) He then continued drafting Best's opposition on March 7 and 8. (*Id.*) He conferred with his colleague, Maureen Carr, about the opposition on March 8, then prepared a final version of the brief on March 8. (SUPPAPP32.) Mr. Charnoff continued revising the brief, even after preparing a "final version." (*Id.*) Ms. Salen, lead counsel for Best, then spent one hour on March 9 reviewing Mr. Charnoff's draft. (*Id.*) Ms. Carr finalized and e-filed the opposition later that day. (*Id.*)

At the same time, Best's attorneys were preparing Best's Motion for Summary Judgment. Ms. Salen apparently began this effort on March 4 by preparing a "Statement of Material Facts." (SUPPAPP30.) Mrs. Salen then continued drafting the summary judgment brief on March 10, when she billed 5.7 hours to this endeavor. That same day, she conferred with Ms. Carr on "next steps" with the brief, both lawyers billing for these internal conferences. (SUPPAPP32.) Ms. Salen continued drafting the brief, with Ms. Carr providing legal and factual research in support of the brief. (*Id.*) On March 11, Ms. Carr revised the motion, including "citations to deposition transcripts and other

34

documents." (*Id.*)  Ms. Salen finished her work on the summary judgment brief on March 14, at which point Mrs. Carr drafted, revised, finalized and e-filed the brief. (SUPPAPP33.)

There is no evidence that Best ever objected to any of these fees.  More important, these are precisely the charges that Best asked the District Court to order EZN to pay when Best filed its own fee petition.

Best does not simply allege, however, that EZN's lawyers duplicated effort. Best insinuates quite strongly that differences in MRC's and Ms. Pollard's invoices suggest that some of these entries are fraudulent.  Best's insinuation is not only wrong but offensive.

For example, Best contends that entries by MRC and Ms. Pollard on June 11, 2010 show not only duplication of effort but irreconcilable "discrepancies" in the billing records of counsel.  (Best's Opening Brief at 17.)  However, a review of the invoices shows this to be wrong.  (SVAPP8; SVAPP229.)  On that day, Mr. Lonas and Ms. Pollard discussed the hearing on Best's motion for temporary restraining order, which Best lost.  Mr. Lonas called Ms. Pollard on the trip back from the hearing to discuss the outcome.  That call lasted 0.3 of an hour.  Ms. Pollard, who has long served as counsel for EZN, then communicated with the client about the result of the hearing.  This is clear from Ms. Pollard's full time

35

entry, which Best did not provide to the Court: "Talk to counsel regarding hearing, and notify client." (SVAPP229) (emphasis added).

Best also suggests, in the table on the middle of page 49 of its Opening Brief, that Ms. Pollard charged 4.5 hours discussing Best's amended complaint with her co-counsel, but that MRC had no corresponding time entry for that day. This is flatly wrong. In fact, Ms. Pollard's 4.5 hours represent a multitude of different case-related tasks, as her full time entry indicates: "Review first amended complaint and forward with memo to client. Discussions with client, Alan Howard and co-counsel regarding amended claims. Review e-mails and discuss where Dewey LeBoeuf files should be stored. Prepare response to first amended complaint." (SVAPP230.) Mr. Lonas did converse with Ms. Pollard that day, by e-mail, as his time entry states: "E-mail exchange with S. Salen and C. Pollard re: Rule 26(f) conference." (SVAPP15.) Mr. Lonas billed 0.3 of an hour for these necessary communications. This difference does not reflect inflated billing by Ms. Pollard, as Best suggests. It merely shows that, on July 22, 2010, Mr. Lonas conferred briefly, by e-mail, with Ms. Pollard about the case; Ms. Pollard on the other hand, did substantially more.[10]

---

[10] Of course, it is quite possible that Mr. Lonas had other conversations with Ms. Pollard that day, but simply elected not to bill them. If so, this reflects sounds billing judgment, not an irreconcilable "discrepancy," as Best claims.

36

### c.     EZN's was not compensated for its lawyers and paralegals to accomplish purely administrative or clerical tasks.

Best also asserts that the District Court's award of attorneys' fees improperly included fees for "purely clerical tasks" performed by members of MRC's litigation team.  (Best's Opening Brief at 55.)  Best is wrong.

First, in the District Court, Best only criticized a handful of entries by Chris Pollard and Cathy Onder as "administrative."  (APP1031-32.)  Best now widens the net to include work by other paralegals, Vicki M. Douglas and Stacy Proffitt, and by EZN's lead counsel, Mr. Lonas.  Thus, to the extent this Court considers Best's argument at all, it should limit Best to the challenges it made in the District Court.

Second, even if this Court permits Best to broaden its attack, Best fails to show that an award of the fees in question was an abuse of discretion.  The United States Supreme Court recognized, nearly 25 years ago, that attorneys' fees available to a prevailing party include paralegal work.  *Missouri v. Jenkins*, 491 U.S. 274, 287-88 (1989).  The Supreme Court went further and defined several tasks "that paralegals are capable of carrying out, . . . under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate."  *Id.* at 288 n.10.  These compensable tasks include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial

37

data; checking legal citations; and drafting correspondence." *Id.*  Further, the District Court below has made clear than even so-called "clerical" work only commands a "lesser rate," not that it must be excluded from the fees to be recovered.  *Ebersole v. Kline-Perry*, No. 1:12cv26, 2012 U.S. Dist. LEXIS 138659, at *24-25 (E.D. Va. Sept. 26, 2012.)

All of the work criticized by Best as "clerical" falls within the definition of compensable paralegal work as defined by the Supreme Court in *Jenkins*.  This includes obtaining cases from PACER, performing investigative research online, and communicating with the District Court and the Court of Appeals.  It includes preparing and organizing materials for attorney review, for opposing counsel and the court.  It encompasses such quasi-legal tasks as arranging for depositions, preparing notices of deposition and notices of hearing, and drafting correspondence.  It also comprises preparing timelines, chronologies and indices; reviewing and organizing documents; and obtaining exhibits to motions and briefs.[11]  And, of course, EZN billed this paralegal work at $40 to $135 an hour, substantially below the rates commanded by the attorneys who worked on the case.

---

[11] Best contends that EZN's attorneys charged for "copying the materials, hole-punching, organizing and putting them in a binder" in an attempt to make the work performed by MRC's paralegals appear secretarial in nature.  (Best's Opening Brief at 57-58.)  Of course, no such time entries appear anywhere in MRC's invoices.

Best levels these criticisms at EZN apparently without consulting the Rees Broome invoices that formed the basis of Best's own fee petition. That fee petition was supported by a declaration from James Brady, now lead counsel for Best, that opined that all of Rees Broome's work "was reasonable and necessary to prosecute this case." (SUPPAPP10-12 ¶ 14.) This includes a time entry by Maureen Carr, a mid-level associate billing at $240 per hour, to "Draft/efile notice of hearing on motion to dismiss counterclaim" on October 30, 2010. (SUPPAPP59.) In fact, Rees Broome routinely billed Ms. Carr's hours for e-filing documents. (*See* SUPPAPP31-33; SUPPAPP35 (listing time entries on Nov. 11, 2010 and March 7, 11 and 30, 2011.) Rees Broome also billed time spent by Stephen D. Charnoff, currently listed as a shareholder on the firm's website, for drafting a notice of hearing on March 31, 2011, and e-filing a motion to compel the next day. (SUPPAPP35; SUPPAPP27.) Mr. Charnoff billed at a rate of $350 an hour. (*Id.*) Rees Broome also billed Best 5.8 hours of Ms. Carr's time on December 23, 2010 for apparently preparing a "document production." (SUPPAPP51.) Finally, Susan R. Salen, lead counsel for Best, billed her client approximately 10 hours, at $350.00 per hour, for "assembling" and preparing trial exhibits. (*See* SUPPAPP17-18 (listing time entries for Feb. 18, 19, 21, 22 and 23, 2011.) These rates were double -- and in some instances, nearly triple -- the rates charged by EZN's paralegals for the same work.

39

Best also finds fault with small time entries for Mr. Lonas preparing or revising notices of deposition. These were notices of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). That rule requires that the issuing party designate the topics on which the deponent must provide testimony – a task that requires insight into overall case strategy. Rees Broome's attorneys also billed for this work: Ms. Carr logged 0.6 of an hour on December 21, 2010 preparing such a notice for EZN, while Susan R. Salen, lead counsel for Best, charged 0.5 hour on December 15, 2010 and 1.45 hours on January 21, 2011 preparing such notices. (SUPPAPP51; SUPPAPP49; SUPPAPP45.)

Work assessed by Best as "clerical" or "administrative" in nature was appropriately billed as legal or paralegal work, as the task dictated. Best should certainly not be heard to complain that this work is part of EZN's fee petition since it clearly paid higher rates to its own attorneys for the same tasks. Without question, the District Court did not abuse its discretion in awarding a reasonable fee to EZN for this time.

> **d.    The District Court did not abuse its discretion by awarding fees for blocked but related time entries.**

Best also claims that a substantial portion of EZN's fee award must be reduced because some of Ms. Pollard's time entries were block billed. Again, Best is wrong.

In addition to Ms. Pollard's fee invoices, EZN submitted detailed affidavits from Ms. Pollard in support of both of EZN's fee petitions. (APP431-51; APP988-1003.) For EZN's supplemental fee petition alone, Ms. Pollard submitted a sixteen-page affidavit showing in painstaking detail the substance of the billable time included in her corresponding fee invoices. Thus, EZN does not rely solely on the fee invoices to establish the reasonableness of the hours expended by counsel in this litigation.

Best ignores these other supporting documents and argues that the practice of "grouping or lumping" results in "inadequate documentation." (Best's Opening Brief at 48-49.) Best's argument, of course, ignores the substance of the affidavits submitted by Ms. Pollard. This contention also ignores the substance of Ms. Pollard's fee invoices.

Although federal district courts have occasionally criticized the practice of "lumping," the issue is not whether the Court classifies timekeeping as "lumping" or "block billing," "but whether [the party] has satisfied its burden of providing the court with evidence from which the court can assess the reasonableness of the time requests." *Project Vote/Voting For American, Inc. v. Long*, No. 2:10cv75, 2012 U.S. Dist. LEXIS 119009, at *28 (E.D. Va. Aug. 22, 2012), attached in Addendum. "[C]ounsel, of course, is not required to record in great detail how each minute of time was expanded. But at least counsel should identify the general

subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Indeed, the "better practice is to prepare detailed summaries based on contemporaneous time records indicated the work performed by each attorney for whom fees are sought." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

This is exactly what EZN's lawyers have done in this case through the submission of Ms. Pollard's affidavits that accompany the fee invoices. These affidavits support and establish the reasonableness of the hours for which EZN seeks recovery.

Further, EZN's expert, Mr. Murphy, whose credentials Best has never disputed, specifically reviewed the "billing invoices of Moran Reeves & Conn and Christine Pollard" and opined that the "numbers of billers and the numbers of hours they worked is … appropriate for the efforts of EZN to prevail in the face of continuing unsuccessful opposition from Best at every stage and level of litigation in this matter." (APP985 ¶ 13.) In fact, the District Court's April 29, 2013 Memorandum Opinion found that the "809.6 hours" reflected on Ms. Pollard's fee invoices for the first fee petition "to be reasonable" under the Johnson factors. (APP1124.) Best has no basis to believe that the District Court was unable to determine the reasonableness of EZN's fees based on the documentation provided.

42

Finally, the Rees Broome's invoices do substantial disservice to Best's argument. Except for a few scattered entries, Rees Broome's timekeepers uniformly block billed their time. Thus, a typical entry by Ms. Carr reads as follows: "Draft responses to requests for production of documents; review documents produced by EZN; draft responses to requests for admission; draft letter to D. Lonas requesting that EZN supplement discovery responses; communicate with D. Lonas re: Best's discovery responses; review/revise answers to interrogatories; finalize/ service discovery responses." (SUPPAPP48.) Lead counsel for Best, Ms. Salen, billed the same way: "Exchange e-mails with counsel for EZN regarding motion to extend time to file Motion for Summary Judgment and depositions; telephone call MAR Reporting regarding cost of deposition transcripts; call with Hundley; call with Weingast." (SUPPAPP44.)

Best apparently never found fault with any of these invoices. Indeed, as pointed out earlier, Mr. Brady, Best's in-house counsel, blessed all of Rees Broome's work as "necessary and reasonable." (SUPPAPP12.)

Best fails to show that the District Court abused its discretion by awarding fees for Ms. Pollard's time spent on this case.

43

## V.     CONCLUSION

For the reasons stated herein, the Court should affirm the District Court's

May 3, 2013 Order in every respect and deny Best's Petition for Appeal.

Dated: September 23, 2013                    Respectfully submitted,

                                             /s/ C. Dewayne Lonas
                                             C. Dewayne Lonas (VSB No. 44298)
                                             Matthew J. Hundley (VSB No. 76865)
                                             *Counsel for Eckert & Ziegler*
                                                *Nuclitec GmbH*
                                             **MORAN REEVES & CONN PC**
                                             100 Shockoe Slip, 4th Floor
                                             Richmond, Virginia  23219
                                             Telephone:  804-421-6250
                                             Facsimile:  804-421-6251
                                             dlonas@mrcpclaw.com
                                             mhundley@mrcpclaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>9,567</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/ C. Dewayne Lonas</u>
C. Dewayne Lonas (VSB No. 44298)

Dated: September 23, 2013

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 23, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

James M. Brady
BEST MEDICAL INTERNATIONAL, INC.
7643 Fullerton Road
Springfield, Virginia 22153
Telephone:  (703) 451-2378
james@teambest.com

*Counsel for Appellants*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

VIENNA METRO LLC,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )    CASE NO.  1:10-cv-00502
                                     )            UNDER SEAL
PULTE HOME CORPORATION,              )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Vienna Metro LLC's ("Vienna Metro")

Motion for Attorneys' Fees and Expenses.  (Dkt. No. 206.)  This is a breach of contract case

involving a defendant that rarely conceded any issues throughout the lengthy process of

litigation.

There are four issues before the Court.  The first issue is whether Plaintiff Vienna

Metro's attorneys' fees represent a reasonable number of hours at a reasonable rate in litigating

its contract dispute against Defendant Pulte Home Corporation ("Pulte").  The second issue is

whether the Court should reduce the proposed amount of attorneys' fees where Vienna Metro

includes a reasonable cost reduction associated with its unsuccessful claims for damages.  The

third issue is whether Plaintiff's $439,111.09 in expenses related to this case are necessary and

reasonable.  The fourth issue is whether the Court should grant Plaintiff's full request for costs,

which include videotapes of depositions, postage and delivery charges incidental to depositions,

copies of exhibits to depositions, deposition costs of damages experts, pre-trial hearing transcript

costs, and the *pro hac vice* fees of Katherine A. Crytzer.

The Court grants Plaintiff's Motion for Attorneys' Fees and Expenses.  First, the Court

holds that Vienna Metro is entitled to its requested attorney's fees in the amount of

$4,137,345.00 because, in light of the *Johnson/Barber* factors, Vienna Metro has provided (1) a

reasonable number of hours spent working on its successful claim and (2) sufficient evidence as

to the reasonableness of its requested rates.  Second, the Court holds that it does not need to

reduce the proposed amount of attorneys' fees because Vienna Metro applied a reasonable cost

reduction for its unsuccessful claims for damages.  Third, the Court holds that Vienna Metro is

entitled to its requested costs in the amount of $439,111.09 because these expenditures were

necessary and reasonable.  Finally, the Court finds that Vienna Metro is entitled to the

$29,967.54 itemized in its Bill of Costs because this amount is reasonable, and Defendant does

not meet the burden of proving the impropriety of the costs alleged.

## I.     BACKGROUND

This case is about a construction company's breach of a multi-million dollar real estate

contract.  Plaintiff Vienna Metro and Defendant Pulte entered into a contract to develop

MetroWest.  On June 21, 2006, the parties executed the Declaration, which set forth the parties'

contractual obligations in developing the MetroWest project.  (Def.'s Mot. Summ. J. ¶ 2.)  The

Declaration bound Pulte to perform certain infrastructure work, including design, permitting,

bonding, and construction over the entire project site within eighteen months of the Declaration's

execution.  (Compl. ¶ 1; Def.'s Mot. Summ. J. ¶¶ 4, 8.)  Furthermore, the Declaration provided

that:

> "[i]f any party defaults . . . in the performance of any of its . . . obligations . . . and
> fails to cure such default within thirty (30) days after written notice (a 'Default
> Notice') from the [Non-Defaulting Party], then the Non-Defaulting Party . . . shall
> be entitled to all the remedies that are available at law or in equity, including,
> without limitation, specific performance . . . ."

(Declaration § 5.1.1.)  In December 2007 and January 2008, Vienna Metro sent Pulte default notices for failing to complete its required work by the appropriate date.  (*E.g.*, Def.'s Mot. Summ. J. ¶ 8.)

On May 14, 2010, Plaintiff filed a complaint in this Court.  (Compl. at 17.)  In addition to a claim for specific performance, Plaintiff alleged that Pulte breached the Parties' contract, and that it was entitled to monetary damages for real estate taxes, lost interest, and lost return on equity investment.  (*See generally*, Pl.'s Opp'n Def.'s Mot. Summ. J.)  Alternatively, Plaintiff sought monetary damages for default interest and wasted costs.  (*See generally id.*)

On February 11, 2011, the Parties filed cross-motions for summary judgment.  (Dkt. Nos. 85-86.)  On March 29, 2011, the Court granted Plaintiff's Motion for Partial Summary Judgment and determined that (1) Pulte's affirmative defenses to breach of contract failed as a matter of law, and (2) Pulte materially breached the contract.  (Mar. 29, 2011 Order at 7-12.)  The Court further granted in part Defendant's Motion for Summary Judgment, holding that Vienna Metro could not recover for breach of contract because it could not prove damages.  (*Id.* at 12.)  The Court held that Vienna Metro "is entitled to attorney's fees as a result of the breach of contract. . . . According to the Declaration, the Non-Defaulting party is entitled to 'recovery of reasonable legal fees and costs of collection' against the Defaulting Party." (*Id.* at 21.)

On May 6, 2011, the Court conducted a four-day nonjury trial.  On May 25, 2011, the Court issued its ruling, holding that "(1) specific performance is an adequate remedy, (2) the Parties contractually agreed to this remedy, and (3) the balance of equities falls in Plaintiff's favor."  (Mem. Op. & Final J. Order at 20.)

On June 6, 2011 Vienna Metro filed this Motion for Attorney's Fees and Costs.  (Dkt. No. 206.)  Vienna Metro calculated its attorneys' fees at $4,804,200.  (Vienna Metro's Mem.

Supp. Mot. Attorneys' Fees & Expenses at 1) ("Pl.'s Mot. Attorneys' Fees & Expenses".)

Vienna Metro then reduced its counsel's hourly rates by five percent to account for the billing

rates of other top firms in Northern Virginia, thus yielding $4,563,990 in attorneys' fees. (*Id.* at

2.) Thereafter, Vienna Metro added $33,060 for contract attorneys' fees, thus producing a

lodestar figure of $4,597,050. (*Id.*) Finally, Vienna Metro subtracted ten percent of the lodestar

figure because of its unsuccessful claim for damages, which the Court rejected on Defendant's

Motion for Summary Judgment. (*Id.*; Mar. 29, 2011 Order at 12.) Therefore, Vienna Metro

ultimately requests attorneys' fees in the amount of $4,137,345. (Pl.'s Mot. Attorneys' Fees and

Expenses at 2.) Vienna Metro also requests a $439,111.09 reimbursement for expenses related

to the following: scanning, printing, copying, electronic storage, computer database research,

technology support, electronic discovery vendors, scanning and imaging vendors, prior Pulte

reimbursements, and liability experts. (*Id.*) Therefore, Vienna Metro requests a total of

$4,576,456.09 in attorneys' fees and costs. (*Id.*)

Plaintiff has submitted two expert declarations from Messrs. Craig Reilly and Sean

Murphy, attorneys who practice litigation in Northern Virginia and in the Eastern District of

Virginia, who confirm that Plaintiff's counsel's[1] rates are reasonable and comparable to those at

comparable law firms in Northern Virginia. (*Id.* at 3-4.) This Motion is now before the Court.

## II.    STANDARD OF REVIEW

Traditionally, under the "American Rule," parties are responsible for their attorneys' fees.

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). However, an

---

[1] Plaintiff's counsel are employed by Washington D.C. law firm Kirkland & Ellis LLP ("Kirkland"). Messrs. Murphy and Reilly opined about Kirkland's rates, comparing them to top firms in Northern Virginia.

4

exception to this rule is when attorneys' fees are provided by statute or a fee shifting provision in a contract. *Textron Fin. Corp. v. AIC of Manassas, Inc.*, No. 1:09cv1202, 2010 WL 2928789, at *3 (E.D. Va. 2010). Another exception to the requirement that attorneys' fees be proved at trial "is where [a] contract provides for recovery of attorneys' fees by the prevailing party." *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). To determine the appropriate amount of attorney's fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). In determining the reasonableness of the number of hours and rate, the district court should be guided by the following twelve *Johnson/Barber* factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Id.* at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)) (explaining that the Fourth Circuit has adopted the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Second, the court then "subtracts the fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Lastly, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the

plaintiff." *Id.* (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)) (alteration in original).

## III.    ANALYSIS

The Court grants Vienna Metro's Motion for Attorneys' Fees and Costs in the total amount requested of $4,576,456.09.  The Court finds that $4,137,345 in attorneys' fees is appropriate because, in light of the *Johnson/Barber* factors, Vienna Metro has provided sufficient documentation of  (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Moreover, the Court also holds that it does not need to apply a separate reduction for Vienna Metro's unsuccessful damages claim because Plaintiff has reasonably excluded this claim from its request for fees.  The Court also awards $439,111.09 in costs because this amount is reasonable.  Finally, the Court holds that Vienna Metro is entitled to the $29,967.54 in its Bill of Costs because Defendant does not meet the burden of proving the impropriety of the costs alleged.  Each issue will be discussed in turn.

### A.  Vienna Metro's Lodestar Figure is Reasonable

The Court holds that $4,137,345 in attorneys' fees is appropriate because, in light of the *Johnson/Barber* factors, Vienna Metro has provided sufficient documentation of (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Each issue will be discussed in turn.

#### 1.  *Vienna Metro Has Provided a Reasonable Amount of Hours Spent on its Successful Claim*

Vienna Metro has provided sufficient evidence demonstrating  a reasonable amount of hours spent on its successful claim because the relevant *Johnson/Barber* factors weigh in Vienna Metro's favor.  The first step in establishing whether attorneys' fees are reasonable is to

6

"determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 244 (4th Cir. 2009). In determining the reasonableness of the number of hours and rate, the district court should be guided by the twelve *Johnson/Barber* factors listed above. *Id.* at 243-44. A court is not obligated to consider each and every factor individually, but rather, the "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244 (citing *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007)). Moreover, some of the twelve factors will frequently overlap. *See, e.g., Nahigian v. Juno-Loudoun, LLC*, No. 1:09cv725, 2010 WL 4623895, at *10 (E.D. Va. Nov. 5, 2010) (analyzing the second, third, and ninth factors together).

The attorney fee applicant is charged with the duty of "submit[ting] evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). Specific evidence that is "sufficient to verify the prevailing market rates [includes] affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

The Court holds that the first and eighth *Johnson/Barber* factors establish that Vienna

Metro has provided sufficient evidence supporting its request for a reasonable number of hours

for its attorneys' work in its successful claims.  Each factor will be discussed in turn.

### a.   Time and Labor Expended

First, the Court holds that Vienna Metro's proposed lodestar figure includes a reasonable

number of hours because the hours billed were a direct result of Pulte's actions.  The first

*Johnson/Barber* factor, time and labor expended, weighs in favor of Vienna Metro.  "The party

seeking an award of fees should submit evidence supporting the hours worked and rates

claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Where the documentation of hours

is inadequate, the district court may reduce the award accordingly." *Id.*

The Court holds that the amount of hours is reasonable in light of the circumstances

because Vienna Metro has submitted sufficient evidence documenting the many hours that it

invested in litigating this matter, and the high number of hours is justified because of

Defendant's failure to cooperate before and during the litigation process.  First, Vienna Metro

sent three separate default notices to Pulte, and Pulte failed to cooperate despite its eventual

admission that it "failed to complete all of its work within eighteen months after the [E]ffective

[D]ate." (Mem. Order 5.)  Second, Pulte listed thirteen affirmative defenses for breaching the

Declaration, even though it knew that it had made a business decision to breach its obligations.

(Mem. Op. & Final J. Order at 22.)  Had Pulte admitted that it breached the Declaration because

of the potential $30,000,000 savings, Vienna Metro's attorneys' fees and costs would have been

greatly reduced.  Third, Pulte's discovery filings were broad and inconvenient because they

consisted of over 39,000 records and were served three months after the close of discovery.

(Clare Decl. ¶¶ 40, 45.)  These inconvenient discovery filings forced Vienna Metro to expand its

8

litigation team in preparation for trial. (*Id.* at ¶ 46.) Fourth, Vienna Metro successfully moved *in limine* on six categories of evidence. (Apr. 14, 2011 Order.) Finally, Pulte's method of trying this case further expanded the amount of time and labor utilized by Plaintiff's litigation team. For example, Pulte (1) submitted 1,061 potential exhibits at trial; (2) listed more than 140 potential witnesses for trial; and (3) issued fourteen trial subpoenas. Therefore, Pulte's litigation approach forced Vienna Metro to expend unnecessary amounts of time and labor preparing to cross-examine many witnesses who were not called to testify and to study over 1,000 trial exhibits that were not introduced into evidence.

The Court rejects Defendant's objections to the number of hours Kirkland has requested. Defendant attempts to refute Kirkland's claim that it invested 2,121.75 hours in this case during only one month because this amount is unreasonably high for "preparing for the equivalent of a two-day bench trial." (Def.'s Opp'n Mot. Attorneys' Fees and Expenses at 10.) As stated above, Defendant overlooks the fact that Plaintiff had to prepare for (1) a four-day trial; (2) a dozen witnesses subpoenaed by Defendant; (3) successful briefing of six motions *in limine*; and (4) over 1,000 trial exhibits listed in Pulte's pretrial disclosures. The Court finds that Plaintiff's litigation team expended a reasonable amount of time and labor because the hours were a direct result of Pulte's actions.

### b. *Amount in Controversy and Results Obtained*

The Court holds that the amount in controversy and results obtained do not require reducing the attorneys' fees and costs because Plaintiff has demonstrated reasons supporting their claim for the amount in controversy and Plaintiff achieved a substantial measure of success litigating these claims. The eighth *Johnson/Barber* factor is "the amount in controversy and the results obtained." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.

9

2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). At the outset, it is important to note that this litigation involved a $100 million dollar development at the Vienna Metro Station, one of the most prime locations under development in Northern Virginia. This litigation concerned Pulte's business judgment to breach the parties' joint development agreement, holding the MetroWest commercial development in virtual limbo and abeyance for four years while Pulte pursued its own aims. Pulte claims that Vienna Metro's relative success in this litigation is limited because it did not prevail on its damages claim and only prevailed on its claim for specific performance. (Def.'s Opp'n Mot. Attorneys' Fees & Expenses at 26.) Pulte's understates the significance of MetroWest's success in this matter.

Defendant's argument fails because Plaintiff succeeded on its claim for specific performance after extensive discovery and comprehensive motions practice. Defendant overlooks that (1) Vienna Metro successfully moved for summary judgment on eight of Pulte's affirmative defenses; (2) Defendant's other affirmative defenses failed at trial; (3) Plaintiff presented evidence at a four-day trial; (4) Plaintiff prepared to cross-examine over a dozen witnesses who did not testify and studied over 1000 trial exhibits that were not introduced into evidence; and (5) the Court adopted a substantial amount of Plaintiff's proposed Specific Performance Order. These are only a few of the obstacles Vienna Metro faced in this case and in attempting to persuade the Court to grant a unique remedy like specific performance. Because Vienna Metro was successful in this present action when the Court granted specific performance, the amount of hours submitted by Plaintiff are reasonable despite Plaintiffs' unsuccessful claim for damages. Accordingly, the Court holds that Plaintiff has demonstrated that the billed hours it included in its request are reasonable and pertain to its successful claim.

### 2. *Vienna Metro has Submitted a Reasonable Rate for its Fees*

The Court holds that Plaintiff's proposed lodestar figure also includes a reasonable rate because (1) two expert declarations demonstrate the reasonableness of the rates in comparison to Northern Virginia rates for comparable work and (2) the relevant *Johnson/Barber* factors weigh in Vienna Metro's favor.  Each issue will be discussed in turn.

#### a. *Mr. Murphy and Mr. Reilly's Declarations Demonstrate the Reasonableness of Vienna Metro's Rates*

The Court holds that Plaintiff has provided sufficient evidence regarding the reasonableness of its rates because Mr. Murphy and Mr. Reilly's declarations establish that each attorney is familiar with the work of the lead attorneys in this case and that Vienna Metro's requested rates are reasonable according to the prevailing market rate in Northern Virginia.  "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which he seeks an award."  *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).  Specific evidence that is "sufficient to verify the prevailing market rates [includes] affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).

Vienna Metro has submitted the declarations of Messrs. Craig C. Reilly and Sean F. Murphy, two experts who are familiar with this case and practice in the Eastern District of Virginia.  (Murphy Decl. ¶ 3; Reilly Decl. ¶ 3.)  Sean F. Murphy has litigated contract and tort claims in commercial cases, fiduciary disputes, patent infringement cases, and government contract actions in over seventy-five cases before the Court.  (Murphy Decl. ¶ 3.)  He is also currently the President-elect of the Northern Virginia Chapter of the Federal Bar Association and

11

has taught sessions on "Ethics and Professionalism in Discovery." (*Id.* ¶ 4.)  Craig C. Reilly has

appeared before the court over one-hundred times and has over twenty-five years of experience

litigating in many legal areas, including contracts, real estate, and commercial law.  (Reilly Decl.

¶ 5; *id.* at Ex. 1.)   Moreover, Mr. Reilly surveyed the rates offered by Northern Virginia firms

capable of handling this type of complex litigation and compared Kirkland's rates offered in this

case.  (Reilly Decl. ¶ 12.)  Mr. Reilly concluded that, after applying the five percent discount that

Kirkland deducted in this case, the firm's rates fall "well within the applicable prevailing rate

ranges." (*Id.* ¶ 17.)  Mr. Reilly submits the following findings:

2010 Range of Hourly Rates in Northern Virginia

| Paralegal | 1-3 [years of experience] | 4-7 [years of experience] | 8-10 [years of experience] | 11-19 [years of experience] | 20+ [years of experience] |
|---|---|---|---|---|---|
| $120-340 | $250-415 | $350-515 | $415-570 | $520-675 | $505-810 |

2011 Range of Hourly Rates in Northern Virginia

| Paralegal | 1-3 [years of experience] | 4-7 [years of experience] | 8-10 [years of experience] | 11-19 [years of experience] | 20+ [years of experience] |
|---|---|---|---|---|---|
| $130-350 | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

Kirkland & Ellis LLP Timekeepers' Hourly Rates

| [Attorney] | Experience (in years) | 2010 Rate Actual | 2010 Rate 5% Discount | 2011 Rate Actual | 2011 Rate 5% Discount |
|---|---|---|---|---|---|
| Jeff Willian | 25 | $685 | $651 | $725 | $689 |
| Tom Clare | 16 | $625 | $594 | $700 | $665 |
| Julie Posteraro | 7 | $525 | $499 | $550 | $532 |
| Rebecca Koch | 6 | $495 | $470 | $550 | $523 |

12

| Elizabeth Locke | 6 | $495 | $470 | $550 | $523 |
|---|---|---|---|---|---|
| Kate O'Scannlain | 6 | $495 | $470 | $560 | $523 |
| Katie Crytzer | 2 | $295 | $280 | $385 | $366 |
| Kim Chervenak | Sr. Legal Asst. (23 years) | $270 | $257 | $290 | $276 |
| Jennifer Shedlosky | Legal Assist. (1 year) | $155 | $147 | $165 | $157 |

(*Id.* at 17.)  Mr. Murphy and Mr. Reilly have concluded that Kirkland's hourly rates are reasonable and coincide with the prevailing market rates offered by Northern Virginia firms capable of handling "a case of this magnitude and complexity."  (Murphy Decl. ¶ 10; Reilly Decl. ¶ 11.)

The Court finds Mr. Murphy and Mr. Reilly's Declarations satisfactory in establishing the reasonableness of the market rate in the relevant community of Northern Virginia because (1) Mr. Reilly's Declaration demonstrates his knowledge and experience with attorney fee rates for similar services in Northern Virginia, and (2) Mr. Murphy has shown his ethical expertise and experience litigating similar matters before the Court.  Moreover, Vienna Metro's fees are reasonable because Plaintiff has voluntarily reduced its attorneys' hourly rates by five percent.  Accordingly, Plaintiff has provided sufficient evidence regarding the reasonableness of its rates because Mr. Murphy and Mr. Reilly's declarations establish that Vienna Metro's requested rates are reasonable according to the prevailing market rate in Northern Virginia.

13

>    *b.  Vienna Metro's Submitted Hours Are Reasonable in Light of the Twelve Johnson/Barber Factors*

The Court holds that Vienna Metro's requested fees are reasonable because the second, third, fifth, ninth, and eleventh *Johnson/Barber* factors weigh in favor of Plaintiff.  These factors will be discussed in turn.

>    *i.  The Novelty and Difficulty of the Questions Raised*

The Court holds that the second *Johnson/Barber* factor weighs in favor of Vienna Metro because this case involved a complex real estate contract and lengthy litigation.  The second *Johnson/Barber* factor is the "novelty and difficulty of the questions raised." *Robinson*, 560 F.3d at 243.  The Court finds that this factor supports the reasonableness of Kirkland's rates because this case involved a complex real-estate contract and a four-day nonjury trial.  According to Mr. Murphy and Mr. Reilly, few firms are capable of handling this type of case.  Accordingly, the second *Johnson/Barber* factor weighs in favor of Plaintiff.

>    *ii.  The Skill Required to Perform the Legal Services Rendered*

The Court holds that the third *Johnson/Barber* factor also weighs in favor of Vienna Metro because this case required attorneys with particular skills in litigation.  The third *Johnson/Barber* factor is the "skill required to perform the legal services rendered." *Id.*  The Court finds that this factor supports the reasonableness of Kirkland's rates because Kirkland is one of the skilled firms capable of rendering the type of legal services involved in this case.  Vienna Metro's lead counsel, Thomas A. Clare, P.C. and Jeffrey L. Willian, P.C., have litigated for a combined period of over forty years.  (Pl.'s Mot. Attorneys' Fees & Expenses at 13.)  This experience was particularly helpful in a case involving a complex real estate contract and a four-day nonjury trial.  Accordingly, the Court finds that the third *Johnson/Barber* factor weighs in favor of Plaintiff.

14

### iii.  The Customary Fee for Like Work

The Court holds that the fifth *Johnson/Barber* factor also weighs in favor of Plaintiff

because Mr. Reilly's survey demonstrates that a law firm similarly competent in complex real

estate litigation charges comparable rates.  The fifth *Johnson/Barber* factor is "the customary fee

for like work."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The Court finds that this

factor supports the reasonableness of Kirkland's rates because Mr. Murphy and Mr. Reilly's

Declarations demonstrate that Plaintiff's attorneys' fees are reasonable and comparable to the

prevailing market rates in Northern Virginia.  Moreover, Vienna Metro decreased its attorneys'

hourly rates by five percent in recognition that Washington, D.C. firms' hourly rates are

sometimes higher than the prevailing rates in Northern Virginia.  (Pl.'s Mot. Attorneys' Fees &

Expenses at 17.)  Accordingly, the Court finds that the fifth *Johnson/Barber* factor weighs in

favor of Plaintiff.

### iv.  The Experience, Reputation, and Ability of the Attorney

The Court holds that the ninth *Johnson/Barber* factor also weighs in favor of Plaintiff

because Plaintiff's litigation staff is experienced and reputable.  The ninth *Johnson/Barber* factor

is "the experience, reputation and ability of the attorney."  *Robinson v. Equifax Info. Servs., LLC*,

560 F.3d 235, 243 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th

Cir. 1978).  The Court finds Kirkland's fees reasonable under this factor because, as stated

above, Plaintiff's head litigators have a combined experience of over forty years handling

complex real estate litigation.  Moreover, the Declarations of Mr. Murphy and Mr. Reilly have

highlighted Kirkland's reputation and ability to handle these types of cases.  Accordingly, the

Court finds that the ninth *Johnson/Barber* factor weighs in favor of Plaintiff.

v. *The Nature and Length of the Professional Relationship
between Attorney and Client.*

The Court holds that the eleventh *Johnson/Barber* factor also weighs in favor of Plaintiff

because Kirkland has a longstanding relationship with Vienna Metro.  The eleventh

*Johnson/Barber* factor is "the nature and length of the professional relationship between attorney

and client." *Robinson*, 560 F.3d at 243.  The Court holds that Vienna Metro's fees are

reasonable in light of its relationship with Kirkland.  Vienna Metro is an affiliate of Clark Realty

Capital.  (Pl.'s Mot. Attorneys' Fees & Expenses at 13.)  Kirkland first represented Clark in 2002

and has handled many of Clark's significant litigation matters since that date.  (*Id.*)  Therefore,

the Court finds that the nature and length of the professional relationship between these parties

weighs in favor of the reasonableness of Vienna Metro's rates.

Accordingly, Plaintiff's lodestar calculation is reasonable because, in light of the

*Johnson/Barber* factors, Vienna Metro has provided (1) a reasonable number of hours spent

working on its successful claim and (2) sufficient evidence as to the reasonableness of its

requested rates.

**B.  The Court Does Not Have to Reduce the Award Because Vienna Metro Has
Already Applied a Reasonable Deduction for its Unsuccessful Claim for
Damages**

The Court finds that a reduction is not needed for unsuccessful and unrelated claims

because Vienna Metro has excluded such claims from its request.  Once a court has determined

the reasonableness of the lodestar figure, "the 'court . . . should subtract fees for hours spent on

unsuccessful claims unrelated to successful ones.'" *Robinson v. Equifax Info. Servs., LLC*, 560

F.3d 235, 245 (4th Cir. 2008) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir.

2002)).  When successful and unsuccessful claims are related, "[m]uch of counsel's time will be

devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

16

a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This occurs when

separate claims contain a "common core of facts." *Id.*

      Here, the Court finds that all claims in this action were unified by a common core of facts

pertaining to Pulte's breach of the Declaration. The hours spent on Vienna Metro's successful

claim for specific performance are thus difficult to isolate because of this claim's relation to the

claim for damages. Vienna Metro applied a ten percent reduction for its unsuccessful claim for

damages. (Pl.'s Mem. Attorneys' Fees 2.) In doing so, it relied on Judge Cacheris' opinion in

*Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, 730 F. Supp. 2d 513 (E.D.

Va. 2010), where the Court applied a ten percent reduction to account for the plaintiff's failure to

collect monetary damages despite prevailing on its injunctive goals. *Id.* at 529. In *Signature*

*Flight*, the plaintiff alleged five counts: (1) declaratory judgment, (2) breach of contract, (3)

intentional interference with contract, (4) accounting and disgorgement, and (5) permanent

injunctive relief. *Id.* at 516. The parties went to trial, despite their initial suggestion that they

would attempt to settle the case. *Id.* at 517. The Court found in favor of defendant as to the

claim for breach of contract because plaintiff could not prove damages. *Id.* Defendant also

prevailed on the claim for accounting and disgorgement, but lost on plaintiff's request for

declaratory judgment and permanent injunction, and on its own counterclaims for declaratory

judgment. *Id.* The Court noted "that [p]laintiff . . . did not recover damages for its breach of

contract claim based on its failure to prove the amount of damages with reasonable certainty and

that [p]laintiff did not win the relief of accounting and disgorgement." *Id.* at 519. However, the

court recognized plaintiff succeeded because it "established that [d]efendant ha[d] breached . . . ,

won all remaining claims it brought against [d]efendant with the exception of accounting and

disgogrgement, and . . . . successfully defended against all affirmative defenses." *Id.* The Court

ultimately awarded $1,130,843 in attorneys' fees after it applied a ten-percent reduction from

plaintiff's final lodestar amount. *Id.* at 528. The Court noted that establishing breach was

essential for both the declaratory relief and injunctive claims and, even though plaintiff did not

recover $4,167,910 in damages connected to defendant's breach, it had a significant amount of

success in the litigation. *Id.* at 528-29.

     The Court is persuaded by Plaintiff's comparison of the present case to *Signature Flight*

for three reasons. First, as in *Signature Flight*, Plaintiff's recovery was limited by its failure to

recover damages. Second, in both cases the plaintiff prevailed on all of the affirmative defenses

alleged by their adversary. Third, in both cases the plaintiffs alleged claims "involving a

common core of facts" because they had to prove breach in order to earn declaratory or

injunctive relief. *See id.* at 528. Accordingly, the Court finds that Plaintiff's ten-percent lodestar

reduction is reasonable.

     Defendant argues that a ten percent reduction is insufficient and that a forty-percent

lodestar reduction is more appropriate. First, Defendant's reliance on *Nahigian v. Juno-*

*Loudoun, LLC*, No. 1:09cv725, 2010 WL 4623895 (E.D. Va. Nov. 5, 2010) is misplaced. In that

case, Judge Cacheris reduced the lodestar amount by forty percent after he recognized that

> [i]n the instant case, the unsuccessful claims were fraud and [Virginia Consumer
> Protection Act] claims against Defendant and Ritz and ILFSDA claims against
> Ritz. Defendant argues that the fraud and ILFSDA claims are distinctly different
> claims that are based on different facts and legal theories. . . . Defendant points
> out that a sizeable portion of the requested fee was accumulated before Plaintiffs
> amended their complaint to add the ILFSDA claims. . . . Plaintiffs' successful
> ILFSDA claim was based on faulty disclosure and not on fraud, and its legal
> elements were different from those in its fraud and VCPA claims.

*Id.* at *14. Defendant ignores that our case is different because Plaintiff was required to prove

that Defendant breached the contract to prevail on its claim for specific performance or damages.

18

Therefore, irrespective of Plaintiff's claim for damages, Plaintiff would have had to prove that Defendant breached the Declaration.

Moreover, Defendant's reliance on *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667 (E.D. Va. 2004), is also misplaced. In *Lilienthal*, Judge Smith reduced a lodestar calculation by forty percent after she noted that the plaintiffs had initially alleged constitutional violations, sought an injunction, and requested compensatory and punitive damages. *Id.* at 675. Plaintiffs' success in *Lilienthal* was "less than total" because they settled the case and, in doing so, significantly departed from their "long-entrenched position[]." *Id.* This case is different because Plaintiff only failed in its claim for damages and had to endure a long process that included a four-day trial before earning the remedy of specific performance.

Finally, Defendant's comparison to *Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-491, 2009 WL 3423848 (E.D. Va. Oct. 16, 2009) lacks merit. In *Quantum Systems*, the Court reduced a lodestar calculation by forty percent after entering a final judgment of $69,600, an amount much less than the plaintiff's original demands in excess of $1,400,000. *Id.* at 1. Moreover, *Quantum Systems* also involved an unsuccessful fraud claim, a contrast to the present case. *Id.*

None of these cases involved the factual scenario from our case: (1) a defendant who was going to present 140 witnesses; (2) a defendant who threatened to introduce more than 1,000 potential trial exhibits; (3) a prevailing party that successfully filed six motions *in limine*; and (4) a dispute over a complex real estate agreement. Therefore, the Court finds that a reduction is not needed for Plaintiff's failed damages claim because Plaintiff has already appropriately considered this claim in its request for attorneys' fees.

### C. Vienna Metro's Expenses Are Reasonable

The Court holds that Vienna Metro's total expenses of $439,111.09 are reasonable under the circumstances. "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978).

Here, Defendant objects to Kirkland's (1) scanning, printing and copying; (2) electronic data storage; (3) computer database research; and (4) use of an electronic discovery vendor. (Def.'s Opp'n Mot. Attorneys' Fees & Expenses 29.) Defendant posits that these expenses were unreasonable and that the Court should apply a deduction between forty percent of the requests for expenses and the $353,780.42 total of these categories of expenditures. However, these expenditures are reasonable and necessary in such a multi-million dollar dispute because they provide efficient means of producing the documents required in complex real estate litigation. Accordingly, the Court holds that $439,111.09 is a reasonable amount under the circumstances.

### D. Vienna Metro is Entitled to the $29,967.54 in its Bill of Costs

Plaintiff is entitled to the $29,967.54 in taxable costs because Defendant does not meet the burden of proving the impropriety of the costs alleged. Under the Federal Rules of Civil Procedure, "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Therefore, the rule creates a presumption that the Court will award costs to the prevailing party. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994). Title 28 of the United States Code further enumerates the following items which a court may tax as "costs" under Rule 54:

1) Fees of the clerk and marshal;

2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

20

3) Fees and disbursements for printing and witnesses;

4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

5) Docket fees under section 1923 of Title 28; and

6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006).  "Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance." *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998).  *Pro hac vice* fees fall within the first category of "fees of the Clerk." *Synergistic Int'l L.L.C. v. Korman*, No. 2:05cv49, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007).  Moreover, "costs of a deposition are taxable when a deposition is used at trial, or 'when the taking of a deposition is reasonably necessary at the time of its taking.'" *Cofield*, 179 F.R.D. at 517.  A deposition is necessary if it is "relevant and material for the preparation in the litigation." *Ford v. Zalco Realty Inc.*, 708 F. Supp. 2d 558, 562 (E.D. Va. 2010).  A deposition is not required to be used at trial in order to qualify under 28 U.S.C. § 1920(2).  *Cofield*, 179 F.R.D. at 518.

Defendant argues that the Court should exclude the following costs from Plaintiff's Bill of Costs:

| | |
|---|---|
| Videotapes of depositions | $10,848.75 |
| Postage/delivery charges incidental to depositions | $791.40 |
| Copies of Exhibits to depositions | $805.00 |
| Deposition costs of damages experts | $2,657.48 |
| Pre-trial hearing transcript costs | $237.65 |
| *Pro hac vice* fees of Katherine A. Crytzer | $50.00 |
| **Total exclusions** | **$15,390.28** |

21

(Def.'s Objections Vienna Metro's Bill of Costs 1.)  First, the Court finds that the *pro hac vice* fees of Katherine A. Crytzer are appropriately included in Vienna Metro's Bill of Costs because they are fees of the clerk under 28 U.S.C. § 1920, and Defendant fails to meet its burden of demonstrating why this fee should be excluded.  Second, the Court finds that the (1) videotapes of depositions, (2) postage and delivery charges incidental to depositions, (3) copies of exhibits to depositions, (4) deposition costs of damages experts, and (5) pre-trial hearing transcript costs should also be included in Vienna Metro's Bill of Costs because these costs are incident to the depositions that were necessarily obtained for use in this case, and Defendant has failed to meet its burden of proving that Plaintiff should not be entitled to these costs.  Accordingly, the Court finds that Vienna Metro is entitled to the $29,967.54 itemized in its Bill of Costs because this amount is reasonable and Defendant does not meet the burden of proving the impropriety of the costs alleged.

## IV.    CONCLUSION

For all of the above reasons, the Court grants Plaintiff's Motion for Attorneys' Fees and Expenses.  First, the Court holds that Vienna Metro is entitled to its requested attorney's fees in the amount of $4,137,345.00 because, in light of the *Johnson/Barber* factors, Vienna Metro has provided (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Second, the Court also holds that it does not need to reduce the proposed amount of attorneys' fees because Vienna Metro applied a reasonable cost reduction for its unsuccessful claims for damages.  Third, the Court holds that Vienna Metro is entitled to its requested costs in the amount of $439,111.09 because this amount is reasonable in light of the circumstances.  Finally, the Court holds that Vienna Metro is entitled to the $29,967.54 itemized in its Bill of Costs because this amount is

reasonable, and Defendant does not meet the burden of proving the impropriety of the costs alleged.

Accordingly, it is hereby

ORDERED that Plaintiff Vienna Metro's Motion for Attorneys' Fees and Costs is GRANTED.  Defendant Pulte is liable to Vienna Metro for attorneys' fees and costs in the total amount of $4,576,456.09.  It is further

ORDERED that Plaintiff's Motion for Leave to File an Amended Bill of Costs (Dkt. No. 243) is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this 24th day of August, 2011.

Alexandria, Virginia                                _____/s/_____

                                                    Gerald Bruce Lee

                                                    United States District Judge



PROJECT VOTE/VOTING FOR AMERICA, INC., Plaintiff, v. ELISA LONG, in her Official Capacity as General Registrar of Norfolk, Virginia, and DONALD PALMER, in his Official Capacity as Secretary, State Board of Elections, Defendants.

CIVIL No. 2:10cv75

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION

*887 F. Supp. 2d 704; 2012 U.S. Dist. LEXIS 119009*

August 22, 2012, Decided
August 22, 2012, Filed

**SUBSEQUENT HISTORY:** Motion denied by *Project Vote/Voting for Am., Inc. v. Long, 2012 U.S. Dist. LEXIS 119012 (E.D. Va., Aug. 22, 2012)*

**PRIOR HISTORY:** *Project Vote / Voting for Am., Inc. v. Long, 682 F.3d 331, 2012 U.S. App. LEXIS 12175 (4th Cir. Va., 2012)*

**COUNSEL:** [**1] For Project Vote/Voting for America, Inc., Plaintiff: Augustine Martin Ripa, Jason Gassan Idilbi, Ryan Morland Malone, LEAD ATTORNEYS, Douglas Harry Hallward-Driemeier, PRO HAC VICE, Ropes & Gray LLP, Washington, DC; Brian Williams Mellor, PRO HAC VICE, Project Vote, Washington, DC; Chhaya Malik Bhalotra, PRO HAC VICE, The Advantage Project, Washington, DC; David O. Stewart, PRO HAC VICE, Ropes & Gray, LLP, Washington, DC; Teresa James, PRO HAC VICE, Project Vote, Inc., Washington, DC.

For Elisa Long, in Her Official Capacity as General Registrar of Norfolk, VA, Defendant: Jeff Wayne Rosen, Pender & Coward PC, Virginia Beach, VA.

For Donald Palmer, in his Official Capacity as Secretary, State Board of Elections, Defendant: Joshua Noah Lief, LEAD ATTORNEY, Office of the Attorney General (Richmond), Richmond, VA; Jeff Wayne Rosen, Pender & Coward PC, Virginia Beach, VA.

**JUDGES:** REBECCA BEACH SMITH, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** REBECCA BEACH SMITH

**OPINION**

[*707]  **OPINION AND ORDER**

The court lifted its stay of this case on July 20, 2012, which stay had been issued by Order of August 1, 2011. The court then directed the parties to file responses concerning the Consent Order entered by the court on August 10, [**2] 2011, staying consideration of Project Vote/Voting for America, Inc.'s ("Project Vote") August 3, 2011, Motion To Recover Attorneys' Fees and Costs ("Motion for Attorneys' Fees"). Project Vote filed its response ("Project Vote's Response") on July 23, 2012, requesting that the court lift the stay of its Motion for Attorneys' Fees and award a total of $349,317.05 in fees and $657.00 in costs. Defendants filed a Joint Motion for Extension of Time, also on July 23, 2012, requesting additional time to respond to Project Vote's motion. The court lifted its stay of the Motion for Attorney's Fees on July 26, 2012, and set new deadlines for Defendants' response and any reply by Project Vote. Defendants filed their Response in Opposition on August 3, 2012, and Project Vote filed its Reply on August 10, 2012. The matter is now ripe for review.

**I. Factual and Procedural History**

The relevant factual history is set forth in detail in the court's October 29, 2010, [*708] Opinion, and need not be repeated in full herein. See *Project Vote/Voting for Am., Inc. v. Long, 752 F. Supp. 2d 697, 698-701 (E.D. Va. 2010)*. In brief review, Project Vote

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

and Advancement Project, a national civil and voting rights organization [**3] with which Project Vote works, sought to inspect and obtain copies of

> the completed voter registration appli- cations of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general election, and also other documents, such as documents identifying the reasons the applications were rejected.

Compl. ¶ 15 (internal quotation marks omitted). This request was made pursuant to the National Voter Regis- tration Act's ("NVRA") Public Disclosure Provision, *42 U.S.C. § 1973gg-6(i)(1)* (hereinafter referred to as the "Public Disclosure Provision"). The Defendants did not permit Project Vote to inspect or copy these records (collectively referred to as the "Requested Records"), purportedly because *Virginia Code § 24.2-444* prohibited their disclosure, Compl. ¶ 17, and the Public Disclosure Provision did not require that they be made available for inspection and photocopying. Id. ¶ 22.

In the Complaint, Project Vote alleged that the NVRA's Public Disclosure Provision required that the Requested Records be available to the public for inspec- tion because they are records "'concerning the [**4] implementation of programs or activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" Id. ¶ 29 (quoting *42 U.S.C. § 1973gg-6(i)(1)*). Additionally, to the extent that the Virginia statute limited the availability of the Re- quested Records to the public for inspection and photo- copying, Project Vote argued it was superseded by the NVRA, pursuant to the *Supremacy Clause of the United States Constitution.* Therefore, Project Vote asked the court to: 1) declare that Defendants were in violation of the NVRA; 2) declare that the NVRA preempted *Virgin- ia Code § 24.2-444*, and any other Virginia law or regu- lation stating the same; 3) "[p]ermanently enjoin De- fendants from refusing to permit access to any requesting party for copy and/or inspection of voter registration applications and related records, as sought by Project Vote in this matter"; and 4) award Project Vote the costs incurred in pursuing this action, as authorized by *42 U.S.C. § 1973gg-9(c).* Id. at 11.

The court issued its Opinion granting in part Project Vote's Motion for Summary Judgment on July 20, 2011. See *Project Vote/Voting for Am., Inc. v. Long, 813 F. Supp. 2d 738 (E.D. Va. 2011).* [**5] The court found "that the NVRA's Public Disclosure Provision, *42 U.S.C.*

*§ 1973gg-6(i)(1),* grants the plaintiff access to completed voter registration applications with the voters' SSNs re- dacted for inspection and photocopying." *Id. at 743.* The court issued a permanent injunction requiring disclosure of completed voter registration applications, but denied Project Vote's Motion for Summary Judgment insofar as Project Vote requested retrospective relief. *Id. at 744-45.* The court stayed its judgment on August 1, 2011, pend- ing the outcome of Defendant's appeal of its decision. On June 15, 2012, the United States Court of Appeals for the Fourth Circuit affirmed this court's opinion. See *Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331 (4th Cir. 2012).* The Fourth Circuit's mandate issued on July 9, 2012.

## II. Legal Standards

Pursuant to *42 U.S.C. § 1973gg-9(c),* "[i]n a civil ac- tion under this section the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." Courts apply the same standards [*709] applicable to other federal civil rights fee shifting statutes when considering an award under this section. See, e.g., *Project Vote v. Blackwell, No. 1:06cv1628, 2009 U.S. Dist. LEXIS 34571, at *15 & n.7 (N.D. Ohio Mar. 31, 2009)* [**6] ; *Nat'l Coalition for Students with Disabilities v. Bush, 173 F. Supp. 2d 1272, 1276 (N.D. Fl. 2001).* As such, a prevailing plaintiff "should ordinarily recover an attor- ney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)* (quoting S. Rep. No. 94-1011, at 4 (1976)). The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Id. at 437.*

The decision to award attorneys' fees, and the extent of those fees, "rests, of course, within the sound discre- tion of the trial judge." *Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)* (Ellis, J.) (internal quotation omitted). In determining a reasonable attorneys' fee, the proper first step is to calculate the lodestar amount, which results from multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Pennsylvania v. Del. Valley Citizens' Coun- cil for Clean Air, 478 U.S. 546, 564, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)* (quoting *Blum v. Stenson, 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).* [**7] When making this calculation, the court must ex- clude any hours that are "excessive, redundant, or other- wise unnecessary," as such hours are not reasonably ex- pended on the litigation. *Hensley, 461 U.S. at 434.* This process requires the use of the same "billing judgment" that guides a lawyer in private practice in billing his cli- ent. Id.

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 81 of 88

Page 3

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

A properly calculated lodestar figure is presumed to be a reasonable fee. See *Del. Valley Citizens' Council for Clean Air, 478 U.S. at 565*. However, the court's discretion to award fees necessarily "encompasses the ability to depart from the lodestar in appropriate circumstances." *Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629 (4th Cir. 1995)*. The court may adjust a fee upward or downward from the lodestar based on the twelve factors identified in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)*, [1] as well as other considerations. *Hensley, 461 U.S. at 434*.

> [1] The twelve factors identified in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance [**8] of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson, 488 F.2d at 717-19*.

### III. Analysis

Project Vote seeks an award of attorneys' fees in the amount of $349,317.05 and costs and expenses in the amount of $657.00. See Project Vote's Resp. 4. Defendants object to many aspects of Project Vote's request, but their arguments can be summarized into three main contentions: (1) the hourly rates cited by Project Vote are not reasonable in the relevant legal community; (2) Project Vote's request contains unreasonable or duplicative fee requests; and (3) Project Vote's documentation is insufficient for the court to ascertain the number of hours reasonable expended on the litigation. See Resp. Opp'n 2-15. Defendants do not object to an [*710] award of fees in this case, nor do they contest whether Project Vote was the prevailing party in the litigation. [**9] As such, an award of attorneys' fees and expenses is appropriate in this case. The court will determine the amount of the award after examining each of Defendants' objections to Project Vote's proposed lodestar calculation in turn.

### A. Reasonable Hourly Rate

In Project Vote's Response, as well as its August 3, 2011, Memorandum of Law in Support of Plaintiff's Motion to Recover Attorneys' Fees ("Memorandum in Support"), Project Vote argues that the Laffey Matrix, which reports prevailing market rates for attorneys in Washington, D.C., provides a guideline for reasonable attorneys' fees in this case. See Project Vote's Resp. 4; Mem. Supp. 9-11. In contrast, Defendants argue that Project Vote has not produced sufficient evidence in support of its fee request, and that a reasonable hourly rate should be calculated by looking at the local legal market, rather than the Laffey Matrix. See Resp. Opp'n 4-9.

The hourly rate requested by the prevailing party must be reasonable. See *Rum Creek Coal Sales, Inc., v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994)* (citing *Hensley, 461 U.S. at 433*). Courts ordinarily look to the "prevailing market rates" charged by lawyers of similar capabilities and experience [**10] "in the relevant community." *Blum, 465 U.S. at 895-96*. Prevailing parties bear the burden of demonstrating that their requests fall within the prevailing market rates, which can be accomplished through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine "actual rates which counsel can command in the market." *Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987)*. Affidavits from the prevailing party alone are not sufficient. See *Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)*. The relevant community for determining the market rate is ordinarily the district where the case was tried. *Rum Creek, 31 F.3d at 175*. However, rates in other localities can be considered "[i]n circumstances where it is reasonable to retain attorneys from other communities." Id. Such circumstances are present "when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Id. at 179* (quoting *National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir. 1988))*.

Here, Project [**11] Vote submitted affidavits from its own attorneys, as well as the Laffey Matrix, in support of its requested rates, which are as follows:

**Table 1: Project Vote's Requested Hourly Rates**

| Timekeeper | Position | Hourly Rate 6/1/09 - 5/31/10 | Hourly Rate 6/1/10 - 5/31/11 | Hourly Rate 6/1/11 - 5/31/12 |
|---|---|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | Partner | $569.00 | $589.00 | $609.00 |

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 82 of 88

Page 4

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

| Timekeeper | Position | Hourly Rate 6/1/09 - 5/31/10 | Hourly Rate 6/1/10 - 5/31/11 | Hourly Rate 6/1/11 - 5/31/12 |
|---|---|---|---|---|
| Stewart, David Ropes & Gray | Counsel | $686.00 | $709.00 | $734.00 |
| Malone, Ryan Ropes & Gray | Associate | $505.00 | $522.00 | $540.00 |
| Ripa, Augustine Ropes & Gray | Associate | $285.00 | $294.00 | $374.00 |
| Idilbi, Jason Ropes & Gray | Associate | $285.00 | $294.00 | $374.00 |
| Beauregard, Sheryl Ropes & Gray | Paralegal | $155.00 | $161.00 | $166.00 |
| Antzoulatos, Sophia Ropes & Gray | Paralegal | $155.00 | $161.00 | $166.00 |
| Sheffield, Yolanda Project Vote | Attorney | $349.00 | $361.00 | $374.00 |
| Mellor, Brian Project Vote | Attorney | $686.00 | $709.00 | $734.00 |

[*711]  Project Vote Resp. Ex. E. The Laffey Matrix was established in *Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983)*, and is frequently used by the United States District Court for the District of Columbia, and other courts, as a "useful starting point" for determining the prevailing hourly rates for attorneys in Washington, D.C. See *Grissom v. Mills Corp., 549 F.3d 313, 322 (4th Cir. 2008)*.  [**12] Notably, Project Vote did not submit any other affidavits concerning hourly rates in the Eastern District of Virginia. Project Vote argued it "acted reasonably by retaining counsel in Washington, D.C., whose office was located in close proximity to theirs, who had specific civil rights and constitutional law expertise, and who were willing to take on a case of first impression." Mem. Supp. 10. In its Reply, Project Vote made the additional argument, not found in its first two filings or the supporting declaration from its senior counsel, Brian Mellor, that Project Vote's relationship with counsel, Ropes & Gray, in other cases factored into its choice to use the firm. See Reply 3.

In turn, Defendants argue that the Laffey Matrix is irrelevant in assessing reasonable fees in this case, as the relevant legal market is the Eastern District of Virginia, not Washington, D.C. See Resp. Opp'n 6-9. Defendants argue that Project Vote has not made any showing that competent counsel could not be retained for this case from within the jurisdiction, or that choosing counsel from Ropes & Gray in Washington, D.C., constituted a reasonable decision. Further, in addition to the affidavits of Defendants'  [**13] attorneys generally concerning their roles/participation in the case, see Resp. Opp'n Exs. 2 & 3, Defendants provide specific evidence, through an affidavit from trial attorney Robert L. Samuel, a partner based in a local office of a large Virginia law firm with multiple offices throughout the Eastern District of Virginia, and who himself has over thirty (30) years of continuous practice in the courts of southeastern Virginia, including practice in this District and the Fourth Circuit Court of Appeals. See Resp. Opp'n Ex. 1 ¶¶ 2-4. [2] Mr. Samuel represents that the prevailing market rates within the District are as follows:

**Table 2: Defendants' Evidence of Reasonable Hourly Rates**

| Timekeeper | Position | Experience | Hourly Rate |
|---|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | Partner | 18 years (Partner for 2) | $275-300 |
| Stewart, David Ropes & Gray | Counsel | 34 years (Partner for 23) | $350-400 |
| Malone, Ryan Ropes & Gray | Associate | 10 years | $275-300 |
| Ripa, Augustine Ropes & Gray | Associate | 4 years | $180-$225 |
| Idilbi, Jason Ropes & Gray | Associate | 4 years | $180-$225 |
| Sheffield, Yolanda Project Vote | Attorney | 7 years | $180-$225 |
| Mellor, Brian Project Vote | Attorney | 29 years | $350-400 |

See Resp. Opp'n Ex. 1 ¶ 11. [3]

2  Mr. Samuel's credentials are set forth in full [**14] in his affidavit. See Resp. Opp'n Ex. 1 ¶¶ 2-6; infra note 3.

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 83 of 88

Page 5

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

3 Mr. Samuel stated that his own hourly billing rate ranges between $285.00 and $395.00 an hour. Resp. Opp'n Ex. 1 ¶ 8. Neither Mr. Samuel's billing rates or his credentials are challenged by Project Vote, nor is his opinion of the reasonable prevailing hourly market rates within the Eastern District of Virginia, as set forth in the table above. See id. Ex. 1 ¶ 11. Instead, Project Vote's evidence and arguments are based on the grounds discussed supra at 9-10. No countervailing affidavits from any attorneys, outside of those involved in this case, were submitted by Project Vote to support the reasonable prevailing hourly market rates in this District. [*712] See Project Vote Resp. Ex. E; supra at 9-10.

In reviewing the evidence from the parties, the court agrees with Defendants that Project Vote's requested hourly rates do not represent the prevailing market rate in the relevant community of the Eastern District of Virginia. Project Vote has failed to set forth specific evidence that the hourly rates it seeks coincide with local prevailing market rates; indeed, Project Vote has submitted no evidence at all on market rates within this [**15] District. Further, Project Vote's evidence in the form of the Laffey Matrix is insufficient as a reliable indicator of reasonable rates for a case proceeding outside of Washington, D.C. Cf. Grissom, 549 F.3d at 323 ("Moreover, the Laffey Matrix is also insufficient to carry Plaintiff's burden of proof [for a case in Reston, Virginia.]"). [4] The court's determination thus turns on whether Project Vote's choice to retain counsel from outside the District was "reasonable," and counsel should be awarded Washington, D.C., hourly rates.

4 Reston, Virginia, is located in northern Virginia within the Alexandria Division of this court, which geographic area is contiguous with Washington, D.C.

Brian Mellor of Project Vote cited Ropes & Gray's proximity to its office, constitutional and civil rights expertise, and willingness to take a case of first impression as the three reasons justifying the decision to retain counsel in Washington, D.C. Mem. Supp. 10. However, Project Vote has made no showing that it was unable to find local counsel -- charging prevailing market rates --competent and willing to handle this case. See Rum Creek, 31 F.3d at 179; National Wildlife, 859 F.2d at 317. Project Vote argues [**16] in its Reply that such proof is not required by Rum Creek and National Wildlife. See Reply 3. Such an argument misses the point; Project Vote, in applying for a fee, has "the burden to make out the reasonableness of [its] hourly rate with specific evidence." Newport News Shipbuilding & Dry Dock Co. v. Holiday, 591 F.3d 219, 230 n.12 (4th Cir.

2009). The Fourth Circuit has confirmed that the first step in assessing the reasonableness of retaining non-local counsel is asking "if extrajurisdictional counsel rendered services that were truly available in the visited market." See id. at 229. Project Vote's idle speculation that the case "was likely to be politically distasteful for local counsel" does not satisfy its burden. Reply 4. [5] Regardless of [*713] the form of the proof, Project Vote has not produced any specific evidence from which the court can conclude that local counsel with the requisite skills did not exist within the Eastern District of Virginia, or if such counsel existed that they could not, or would not, have taken the case. Project Vote has thus failed to make a satisfactory showing that the choice to retain counsel from outside the District is reasonable.

5 The court notes that [**17] the Eastern District of Virginia encompasses a far broader range of localities other than the City of Norfolk and the surrounding localities within the Norfolk Division of the court. Further, Project Vote's comparison of this case to Rum Creek is misplaced. Counsel in Rum Creek, based in Richmond, Virginia, requested a "substantial portion of the fees" for appellate work occurring before the Fourth Circuit in Richmond. Rum Creek 31 F.3d at 179. Moreover, the political considerations and the many complex legal and constitutional issues in Rum Creek far exceeded what was at issue in this case. See id. at 172-74, 179 (discussing the high profile nature of the suit, brought against a governor and the police "in the middle of a wellpublicized [sic] coal miners' strike"). The profile and proceedings of the case at bar simply do not rise to the level of Rum Creek.

As such, the court finds that reasonable hourly rates for this case are those charged by comparable counsel within the Eastern District of Virginia. [6] Because Project Vote has not put forward its own evidence of rates within the District, or challenged Defendants' evidence, the court adopts the following hourly rates, based on the [**18] high-end [7] of the ranges attested to by Mr. Samuel:

6 See infra note 7.
7 The court finds, based on the evidence presented and its own over thirty (30) years of practice and judicial experience within the Eastern District of Virginia and the Fourth Circuit, that the ranges reflect market rates within the District, and additionally that selection of the high-end comports with the Johnson factors. See discussion infra Part IV.

**Table 3: Court's Finding of Reasonable Hourly Rates**

Appeal: 13-1708     Doc: 23     Filed: 09/23/2013     Pg: 84 of 88

Page 6

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

| Timekeeper | Position | Reasonable Hourly Rate |
|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | Partner | $300 |
| Stewart, David Ropes & Gray | Counsel | $400 |
| Malone, Ryan Ropes & Gray | Associate | $300 |
| Ripa, Augustine Ropes & Gray | Associate | $225 |
| Idilbi, Jason Ropes & Gray | Associate | $225 |
| Beauregard, Sheryl Ropes & Gray | Paralegal | $100 [8] |
| Antzoulatos, Sophia Ropes & Gray | Paralegal | $100 [9] |
| Sheffield, Yolanda Project Vote | Attorney | $225 |
| Mellor, Brian Project Vote | Attorney | $400 |

8   Mr. Samuel did not provide an estimate of prevailing market rates for paralegals within the District, but the court finds that $100 an hour, which represents a comparable reduction from Project Vote's initial request and comports with the court's experience concerning local hourly rates, is appropriate.

9   See  [**19] supra note 8.

## B. Unreasonable and Duplicative Fee Requests

Defendants next argue that Project Vote's fee request includes numerous entries that are "excessive, redundant, or otherwise unnecessary," and represent overstaffing and duplicative billing. See Resp. Opp'n 10 (quoting *Hensley, 461 U.S. at 434*). Defendants argue that Project Vote's attorneys, who took the case pro bono, "seem[] to have used this case as a training exercise, without proper billing discretion as to the amount of hours expended." Id. at 12. Defendants note that only one attorney represented Defendants at almost all proceedings. Id. at 11 n.2; id. Ex. 2 ¶ 5; id. Ex. 4 ¶ 5. Defendants also submit as evidence Mr. Samuel's affidavit, in which he states "[t]here is a great deal of duplication and overstaffing" [*714]  in Project Vote's fee request. Resp. Opp'n Ex. 1. ¶ 12.

"The court must necessarily exclude any hours that are . . . not reasonably expended on the litigation. *Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 670 (4th Cir. 2004)*. "[The Fourth Circuit has] been sensitive to the need to avoid use of multiple counsel for task where such use is not justified by the contributions of each attorney." *Rum Creek, 31 F.3d at 180*.  [**20] As such, the court will "award fees for the time of one attorney when an issue does not require the attention of multiple lawyers." *Cox v. Reliance Std. Life Ins. Co., 179 F. Supp. 2d 630, 636 (E.D. Va. 2001)* (Brinkema, J.).

## 1. Hearing on Motion to Dismiss

Chronologically, Defendant's first specific objection on this ground is to Project Vote's billing related to the July 30, 2010, hearing on Defendant's Motion to Dismiss, found in Phase 3 of Exhibit E to Project Vote's Motion for Attorney Fees. See Resp. Opp'n 11 n.2. Project Vote had three attorneys attend the motion hearing in Norfolk, Virginia. [10] The court agrees with Defendants' contention that billing for attendance by three attorneys, including two similarly experienced associates, and the accompanying travel required from counsel's Washington, D.C. office, is duplicative and does not represent the type of "billing judgment" of private practice. See *Hensley, 461 U.S. at 434*. The court expects that the presence of two attorneys would have been more than sufficient to handle oral argument; [11] as such, the court reduces Augustine Ripa's time by 14.50 hours in Phase 3.

10   The entries related to travel to and from, and attendance at,  [**21] the motion hearing on July 30, 2010, are summed as follows: Augustine Ripa billed 14.5 hours; Jason Idilbi billed 14 hours; and Ryan Malone billed 24 hours. See Mot. Attorneys' Fees Ex. E at 11-12. By contrast, Defendants each had only one attorney attending all hearings before this court. See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3 ¶4.

11   To be clear, with respect to this Part III.B.1, as well as with respect to infra Part III.B.3, the court did not reduce any time spent preparing in advance for the relevant hearings, but only time expended on the days traveling and attending the hearings.

## 2. Rule 26(f) Telephonic Conference

Defendants next point to the time entries entered by three of Project Vote's attorneys, found in Phase 4 of Exhibit E to Project Vote's Motion for Attorney Fees, concerning participation in the *Federal Rule of Civil Procedure 26(f)* Telephonic Conference. [12] See Resp.

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 85 of 88

Page 7

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

Opp'n 11. The court agrees with Defendants' contention that the participation of three attorneys for such a routine pre-trial matter is duplicative. As such, the court reduces Augustine Ripa's time by 1.75 hours and Jason Idilbi's time by 0.75 hours in Phase 4.

> 12   The entries related to attendance of the call [**22] on November 22, 2010, are summed as follows: Augustine Ripa billed 1.75 hours; Jason Idilbi billed .75 hours; and Ryan Malone billed 3 hours, including the call and other tasks. See Mot. Attorneys' Fees Ex. E at 14-15. By contrast, Defendants each had only one attorney participating in the *Rule 26(f)* Telephonic Conference. See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3 ¶ 4.

**3. *Rule 16(b)* Scheduling Conference**

Defendant's next object to Project Vote's billing related to the *Federal Rule of Civil Procedure 16(b)* Scheduling Conference. See Resp. Opp'n 11. Project Vote had three attorneys attend the *Rule 16(b)* Conference in Norfolk, Virginia. [13] [*715] Once again, the court agrees with Defendants' contention that the participation of three attorneys for such a routine, administrative pre-trial matter is duplicative, especially in light of the travel time required from counsel's Washington, D.C., office. As such, the court further reduces Augustine Ripa's time by 21.50 hours and Jason Idilbi's time by 20 hours in Phase 4.

> 13   The entries related to travel to and from, and attendance at, the Scheduling Conference on November 30, 2010, are summed as follows: Augustine Ripa billed 21.50 hours; Jason Idilbi billed [**23] 20 hours; and Ryan Malone billed 21 hours. See Mot. Attorneys' Fees Ex. E at 14-16. By contrast, Defendants each had only one attorney participating in the *Rule 16(b)* Scheduling Conference. See Resp. Opp'n. Ex. 2 ¶ 5; id. Ex. 3 ¶ 4.

**4. Fourth Circuit Oral Argument**

Defendant's final specific objection [14] on the grounds of duplicative billing concerns Project Vote's billing for the May 17, 2012, hearing and argument before the Fourth Circuit. See Resp. Opp'n 11 & n.2. Project Vote had two attorneys conduct extensive preparation for oral arguments on appeal, separate and apart from counsel's work on the appellate briefing. [15] Defendants' again cite Mr. Samuel's affidavit as evidence of the unreasonableness of this preparation. See Resp. Opp'n Ex. 1 ¶ 12; see also id. ¶ 3 (setting forth Mr. Samuel's appellate experience). [16] Project Vote in turn says such preparation by a junior associate is preferred, and that the time sought is

already discounted as it "is not seeking fees for hours billed by first and second year associates who worked on the appeal." [17] Reply 8. Unlike Defendants' other specific objections, the court does not think extensive preparation by two attorneys for oral argument [**24] on appeal is categorically duplicative, nor does the court find that Mr. Malone's preparation was excessive in and of itself. However, the court agrees that the extent of preparation of Ms. Ripa, "who did not conduct oral argument," exceeds reasonableness and ordinary billing discretion. As such, the court reduces Augustine Ripa's time by 20 percent, or 18.3 hours, in Phase 6. [18]

> 14   Defendants do briefly mention the court's hearing on the Motion for Summary Judgment and Status Conference, held on June 10, 2011; however, the court does not find the attendance of two attorneys to be excessive. But see discussion infra Part III.B.5 (discussing travel billing).
> 15   Augustine Ripa billed entries between April 17, 2012, and May 17, 2012, related to preparation for, and attendance at, oral argument before the Fourth Circuit, totaling 91.7 hours. See Project Vote's Resp. Ex. C at 3. Moreover, Ms. Ripa's April 17, 2012, entry of 5.0 hours related to preparation of the appeal also describes administrative, and not legal, preparatory work. Ryan Malone billed entries between May 5, 2012, and May 17, 2012, totaling 76.8 hours. See id. at 4.
> 16   See supra note 2.
> 17   The court has not, however, been provided [**25] any records showing the tasks or amount of time Project Vote excluded from its fee request.
> 18   Such a reduction credits Ms. Ripa with a comparable number of preparatory hours as Mr. Malone, who actually conducted oral argument before the Fourth Circuit.

**5. Travel Billing**

Defendants' final objection concerning the unreasonableness of Project Vote's fee request relates to attorney travel. Defendants argue that the decision to charge "full rate for hours spent traveling to and from Washington, D.C. . . . further demonstrates Plaintiff's counsel's 'apparent absence of billing judgment.'" Resp. Opp'n 12 (citing *Burston v. Virginia, 595 F. Supp. 644, 651 (E.D. Va. 1984)* (Merhige, J.)). Defendants cite several cases for the proposition that "plaintiffs should not recover the same fee for travel time as they recover for active legal work." *Rosenberger v. Rector and Visitors of Univ. of Va., No. 91-0036-C, 1996 U.S. Dist. LEXIS 13799, at *20 (W.D. Va. Sept. 17, 1996).* Defendants argue that the appropriate hourly rate for attorney travel time is one

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 86 of 88

Page 8

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

fifth of an attorney's regular billing rate, citing *Sun Publ'g Co. v. Mecklenburg News, Inc.*, 594 F. Supp. 1512, 1520 (E.D. Va. 1984). [**26] Resp. Opp'n 13.

[*716] The court agrees with Defendants that counsel should not recover their full market rate for travel from their offices in Washington, D.C., to Norfolk and Richmond, and that failure to reduce this time indicates a lack of billing judgment. Cf. *Sandbeck v. Reyes*, No. 1:11cv0761, 2012 U.S. Dist. LEXIS 54068, at *8 n.2 (E.D. Va. Apr. 17, 2012) (Anderson, J.) ("The reduction of the hourly rate for travel time from $350.00 to $100.00 is indicative of plaintiff's good faith efforts to apply for a reasonable amount of fees and costs."). The court does not necessarily agree with Defendants that an 80 percent reduction from typical billing rates is always required; however, such an argument is academic in this case, as the court cannot determine with any accuracy the amount of time that Project Vote's counsel actually spent traveling. In the logs submitted by Project Vote, almost all travel entries are combined with other, legal tasks. See, e.g., Mot. Attorneys' Fees Ex. E at 11 (describing a 6.0 hour July 29, 2010, entry for Jason Idilbi as "[f]inalize preparation for departure to hearing, traveled to Norfolk; attended team strategy discussions to prepare for hearing"); id. Ex. [**27] E at 12 (describing a 14.50 hour entry on the same day for Ryan Malone as "[t]ravel from Washington to Norfolk, prepare for the hearing"). These generalized entries combining tasks are simply not sufficient, proper documentation of travel time. As a result, the court will consider the billed travel time when assessing the reduction the court applies due to insufficient documentation. See discussion infra Part III.C.

## C. Insufficient Documentation of Fees

Defendants' remaining objections to Project Vote's fee request focus on the documentation provided to the court. Defendants characterize Project Vote's evidence as providing the court with "no way . . . to accurately determine the reasonableness of the time expended." Resp. Opp'n 15. Specifically, Defendants, and Mr. Samuel in his affidavit, point to counsel's practice of "lumping" multiple tasks into the same time entry. See id. at 14; id. Ex. 1 ¶ 12. Project Vote, in turn, argues that "block billing" is not prohibited by binding authority, and that the provided entries are sufficiently specific for the court. Reply 8.

While perhaps "block billing" is not prohibited, it simply does not provide the court with a sufficient breakdown to [**28] meet Project Vote's burden to support its fee request in specific instances. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Guidry*, 442 F. Supp. 2d at 294. Courts

may reduce a fee award when "lumping" prevents an accurate assessment of the reasonableness of the fee request by either identifying hours that are not sufficiently documented or "by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." See id. Thus, the issue is not whether the court classifies Project Vote's timekeeping as demonstrating either "lumping" or "block billing," but whether Project Vote has satisfied its burden of providing the court with evidence from which the court can assess the reasonableness of the time requests.

In reviewing the time logs, the court did not find a single instance in which a timekeeper recorded multiple entries for a single day; instead, only the total amount of time for each day is reported, with no breakdown of how that time was spent among [**29] often as many as four or five distinct tasks. See, e.g., Mot. Attorneys' Fees [*717] Ex. E at 15 (November 22, 2010, entry for Ryan Malone: "Attend 26(f) conference; begin plan for summary judgment motion; research local rules and privacy issues; meet with team regarding strategy."). The court's concern is heightened by the repeated practice of multiple attorneys reporting time for the same task. [19] The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time. Instead, in light of the inexact documentation and the resulting inability of the court to properly assess the reasonableness of the time requested, as well the concerns about the reasonableness of travel billing set forth supra in Part III.B.5, the court will apply a fixed percentage reduction of 10 percent to the fee award in this case. Such reduction will be taken after accounting for the specific hourly reductions the court discussed supra in Parts III.B.1 through III.B.4.

---

19   Compare Mot. Attorneys' Fees Ex. E at 3 (Jason Idilbi records "[d]rafted first draft of complaint" on December 9, 2009), with id. at 1 (Augustine Ripa [**30] records "draft and revise complaint" each day from December 7-10, 2009). Tasks within projects can obviously be divided, but due to the lack of specificity in billing, the court is unable to assess whether these and similar entries are a result of efficient division, or instead duplicative or otherwise unreasonable. The court notes this is just one example, and similar overlapping entries are found for drafting of the Response to Defendants' Motion to Dismiss, preparing for the hearing on the Motion to Dismiss, and other tasks. See id. Ex. E.

## IV. Johnson Factors

Appeal: 13-1708    Doc: 23    Filed: 09/23/2013    Pg: 87 of 88

Page 9

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

After arriving at the lodestar figure, the district court still must assess "whether that figure must be adjusted, upward or downward, on the basis of the circumstances in the case, including the Johnson factors." *Guidry, 442 F. Supp. 2d at 294-95*. The court will not belabor these factors [20] in light of the lengthy analysis above, which addressed, among others, the time and labor required to litigate the suit and the customary fee for such services. However, the remaining *Johnson* factors applicable in this case weigh in favor of a fully compensatory award to Project Vote. Courts repeatedly emphasize that the result of the litigation [**31] is one of the most important factors, see, e.g., *Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007)* (considering "the extent of the relief obtained . . . particularly important when calculating reasonable fees"), and it is incontrovertible that Project Vote prevailed and obtained a permanent injunction in the underlying suit. Additionally, interpretation of the NRVA's requirement to disclose voter registration forms was an issue of first impression, which weighs in favor of full compensation. See *Johnson, 488 F.2d at 718*. The court has taken into account these considerations and all of the Johnson factors, and finds that the full fee requested by Project Vote, after applying the adjustments to the reasonable hourly billing rates and billing times the court detailed supra in Part III when calculating the lodestar figure, is appropriate in this case.

20   See supra note 1 (listing factors).

The full details of the court's calculations adjusting Project Vote's requested attorneys' fee award are set out in Appendix A, which is attached hereto and made a part of this Opinion and Order. After reducing the hourly rate, as detailed supra in Part III.A, and making the adjustments [**32] to the billable time, as detailed supra in Parts III.B and III.C, the court **FINDS** that a total attorneys' fee award of $184, 223.25 is reasonable in this case.

## V. Costs

Project Vote also requests $657.00 in costs. Litigation expenses are recoverable under the statute, see *42 U.S.C. § 1973gg-9(c)*, and Defendants have noted no objection [*718] to Project Vote's request. The court agrees with Project Vote that its request is "very limited," and finds that $657.00 in costs is reasonable in this case.

## VI. Conclusion

For the foregoing reasons, the court **GRANTS** Project Vote's Motion for Attorneys' Fees, and awards Project Vote $184,223.25 in attorneys' fees and $657.00 in costs. The Clerk **SHALL** forward a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/ Rebecca Beach Smith

REBECCA BEACH SMITH

CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 22, 2012

**Appendix A: Court's Calculation of Attorneys' Fees**

| Timekeeper | Total Reported Hours | Duplicative Hours | Adjusted Hours | Total Hours After 10% Reduction | Hourly Rate | Total Fee Award |
|---|---|---|---|---|---|---|
| Hallward-Driemeier, Doug Ropes & Gray | 17.25 | 0 | 17.25 | 15.525 | $300 | $4,657.50 |
| Stewart, David Ropes & Gray | 0.50 | 0 | 0.50 | 0.45 | $400 | $180.00 |
| Malone, Ryan Ropes & Gray | 253.00 | 0 | 253.00 | 227.7 | $300 | $68,310.00 |
| Ripa, Augustine Ropes & Gray | 413.25 | (56.05) | 357.20 | 321.48 | $225 | $72,333.00 |
| Idilbi, Jason Ropes & Gray | 149.25 | (20.75) | 128.50 | 115.65 | $225 | $26,021.25 |
| Beauregard, Sheryl Ropes & Gray | 52.50 | 0 | 52.50 | 47.25 | $100 | $4,725.00 |
| Antzoulatos, Sophia Ropes & Gray | 21.75 | 0 | 21.75 | 19.575 | $100 | $1,957.50 |
| Sheffield, Yolanda Project Vote | 18.80 | 0 | 18.80 | 16.92 | $225 | $3,807.00 |
| Mellor, Brian Project Vote | 6.20 | 0 | 6.20 | 5.58 | $400 | $2,232.00 |

887 F. Supp. 2d 704, *; 2012 U.S. Dist. LEXIS 119009, **

| Timekeeper | Total Reported Hours | Duplicative Hours | Adjusted Hours | Total Hours After 10% Reduction | Hourly Rate | Total Fee Award |
|---|---|---|---|---|---|---|
| Total: | 932.50 | (76.80) | 855.7 | 770.13 | | $184,223.25 |